# United States District Court
## Southern District of Ohio
### Western Division at Dayton

Judge Thomas Rose

Magistrate Judge

-----------------------------------------------------------------

NICHOLAS ALAHVERDIAN,                    :
         Plaintiff,                     :
                             :

         v.                             :

THE STATE OF OHIO;                       :
CITY OF DAYTON, OHIO;                     :
DAYTON MUNICIPAL COURT;                   :
DAYTON MUNICIPAL COURT                    :
PROBATION SERVICES;                       :
CARL SIMS HENDERSON, JD;                  :
KYM M. DEMINT;                            :
DEIRDRE LOGAN, JD;                        :
STEPHANIE L. COOK, JD;                    :
ANDREW D. SEXTON, JD;                     :
JENNIFER LYNN ALFARO                      :
  (a.k.a. JENNIFER L. OSBORNE);         :
DONA DEVOISE-PIERCE                       :
  (a.k.a. DONA PIERCE);                 :
WARREN COUNTY MONTGOMERY COUNTY           :
COMMUNITY COLLEGE DISTRICT;               :
SINCLAIR COMMUNITY COLLEGE;               :
STEVEN LEE JOHNSON;                       :
CHARLES J. GIFT;                          :
KENNETH QUATMAN;                          :
SEAN MILLER;                              :
TOM HUPP;                                 :
LAUREN CIMPERMAN, PSY.D.;                 :
DAVID ROUSH & ASSOCIATES, LLC;            :
DAVID HENRY ROUSH, PSY.D.;                :
LAW OFFICE OF THE PUBLIC DEFENDER;        :
D.K. RUDY WEHNER, JD;                     :
JULIE BETH DUBEL, JD;                     :
LAWRENCE JOSEPH GREGER, JD;               :
KEITH ANTHONY FRICKER, JD;                :
RICHARD MICHAEL DEWINE, JD; and           :
MONTGOMERY COUNTY SHERIFF                 :
PHIL PLUMMER,                             :
         Defendants.                    :

-----------------------------------------------------------------

Sharon L. Ovington

Civil Action No.

  3:13-cv-113
_____

CIVIL COMPLAINT

JURY TRIAL DEMAND
ENDORSED HEREON

*Nicholas Alahverdian v. State of Ohio, et al. - Complaint*      *April 15, 2013*

## COMPLAINT

Plaintiff Nicholas Alahverdian (hereinafter referred to as "Plaintiff"), appearing *pro se*, brings this action to obtain redress for the deprivation and conspiracy to deprive Plaintiff of his federally protected rights as hereafter alleged, and for intentional infliction of emotional distress, and for defamation, and for other causes of action to be conveyed to this Honorable Court.

## INTRODUCTION

1. This is a civil action for damages and injunctive relief under 18 U.S.C. § 241, 18 U.S.C. § 1961, 42 U.S.C. § 1981, 42 U.S.C. § 1983, 42 U.S.C. § 1985, 42 U.S.C. § 1988, and the common law of the State of Ohio to redress the deprivation under color of state law rights secured by the United States Constitution and the Constitution of the State of Ohio. More specifically, these claims arise from episodes of misconduct which resulted in charges brought and maintained against an innocent United States citizen over a period of five years.

2. From January 2008 to November 2012, Defendants, individually and in concert, maliciously conspired to and did bring charges of sexual imposition and public indecency against the

*Nicholas Alahverdian v. State of Ohio, et al. - Complaint*     *April 15, 2013*

Plaintiff. These charges[1] were brought against the Plaintiff in the Dayton Municipal Court. Defendants knew that these charges were completely and utterly unsupported by probable cause, and a total fabrication by a mentally troubled individual[2] whose claims, time and again, were contradicted by physical evidence, documentary evidence, other witnesses, and even the accuser herself. In their rush to accuse, Defendants willfully ignored and were deliberately indifferent to overwhelming evidence of Plaintiff's actual innocence.

3. Instead, Defendants used the accuser's inconsistent and demonstrably false allegations to charge Plaintiff at the expense of his innocence. With a complainant and others clamoring for charges to be pressed, but with no evidence that Plaintiff had actually committed a crime, Defendants set about to fabricate such evidence. And, when the "facts" in the complainant's own written statement and verbal testimony (given under oath) contradicted each other, Defendants conspired to conceal this exculpatory evidence in order to charge and convict the Plaintiff on "facts" they knew to be untrue. Defendants knew that these "facts" threatened to

---

[1] The case number assigned by the Dayton Municipal Court is 08-CRB-1799 and is captioned *State of Ohio v. Nicholas E. Rossi*. "Nicholas E. Rossi" was the name of the Plaintiff in January 2008. The Plaintiff was born "Nicholas Alahverdian" in 1987 and his last name was changed to "Rossi" in 1996 when his stepfather adopted him. The Plaintiff legally reverted to using the last name "Alahverdian" in 2010.

[2] This individual's name is Mary Jane Grebinski (a.k.a Mary Jane Elizabeth Grebinski) and is hereinafter referred to as "complainant."

*Nicholas Alahverdian v. State of Ohio, et al. - Complaint*     *April 15, 2013*

expose the truth by reaffirming that the complainant was lying and that no crime had occurred. Defendants' actions evidence a reckless and callous disregard for and deliberate indifference to Plaintiff's constitutional rights and Defendant's responsibilities to the criminal justice system.

4. As a result of Defendants' actions, Plaintiff has suffered deprivations of the rights guaranteed to him under the Fourth, Sixth, and Fourteenth Amendments to the Constitution of the United States; he has suffered economic, emotional, and physical harm; he has suffered irreparable harm to his reputations; and he has incurred thousands of dollars in legal fees defending himself against criminal prosecutions that the Defendants knew were baseless.

5. Moreover, because the Defendants' policies, customs, practices, and supervisory misconduct raises a substantial risk of irreparable injury to other persons in the City of Dayton, Plaintiff seeks the entry of an Order and Permanent Injunction, as set forth in further detail below, to protect all persons and to prevent such misconduct from ever happening again.

6. Furthermore, this is also an action against Defendants Lauren Cimperman, Psy.D.; David Roush & Associates LLC; and David Henry Roush, Psy.D. for negligence and medical malpractice in

connection with psychological "care" imposed on the Plaintiff by the City of Dayton. These claims are brought pursuant to Ohio Rev. Code 2305.113 et seq. (Medical malpractice actions), Ohio Administrative Code 4732-17 et seq.(O.R.C. 4732.06 et seq., 4732.17 et seq.), and Ohio Adm. Code 4732-17-01(J)(2) for damages for personal injuries caused by the Defendant's negligence, fraud, misrepresentation, and deception.

<u>Parties</u>

**A. The Plaintiff**

7.   Plaintiff Nicholas Alahverdian is a citizen of the Commonwealth of Massachusetts but is forced to reside in the State of Ohio.

8.   In January of 2008, Plaintiff Alahverdian (then known as Rossi, the name of his adoptive father) registered for classes at Sinclair Community College and was falsely charged with sexual imposition and public indecency.

9.   Until September 16, 2012, the Plaintiff was an undergraduate degree candidate at Harvard University, one of the leading academic universities in the world. Plaintiff was administratively withdrawn from Harvard upon receipt of a letter from his Dean because officers of the City of Dayton Municipal Court contacted the Harvard University Police Department and informed them of the

*Nicholas Alahverdian v. State of Ohio, et al. - Complaint*      *April 15, 2013*

convictions. Plaintiff turned himself into the Harvard University Police Department on November 9, 2012 when he discovered there was a nationwide warrant issued by Defendant Carl Sims Henderson for two misdemeanor charges. Plaintiff waived extradition and was transported to Ohio by Sinclair Police officers Lieutenant William Hill and Lieutenant Dennis Leavitt.

**B. The Defendants**

**1. The State of Ohio**

10. The State of Ohio is a governmental entity doing business in the United States of America. Defendant State of Ohio is a state government that maintains its principal place of business at the Ohio State House in Columbus, Ohio. The State may be served by serving the Office of the Ohio Attorney General at 30 East Broad Street, 14th Floor, Columbus, Ohio 43215.

11. Defendant State of Ohio is referred to herein as "the State" or "the State of Ohio."

**2. The City Defendants**

**a. The City of Dayton**

12. Defendant City of Dayton is a municipal corporation formed under the laws of the State of Ohio. The City of Dayton is a governmental entity doing business in both the State of

*Nicholas Alahverdian v. State of Ohio, et al. - Complaint*      April 15, 2013

Ohio and the United States of America. Defendant City of Dayton is a municipal government domiciled in Montgomery County, Ohio. Upon information and belief, the City of Dayton has purchased liability insurance and/or participates in a municipal risk-pooling scheme sufficient to waive its immunity against civil liability. The office where Defendant City of Dayton primarily conducts its business is 101 West Third Street, Dayton, Ohio 45402.

13. Defendant City of Dayton is referred to herein as "the City" or "the City of Dayton."

### b. The Dayton Municipal Court Defendants

14. Defendant City of Dayton operates the Dayton Municipal Court (hereinafter referred to as "the Trial Court") which is the city department having authority granted under O.R.C. 1901.01 et seq. to form a tribunal presided over by elected judges in civil and criminal cases. The office where Defendant Dayton Municipal Court primarily conducts its business is 301 West Third Street, Dayton, Ohio 45402.

15. Defendant Dayton Municipal Court Probation Services (hereinafter referred to as "Dayton Probation" or "Probation") is the city department having authority to supervise probationers referred by the Dayton Municipal Court. The office where Defendant Dayton Municipal Court

*Nicholas Alahverdian v. State of Ohio, et al. - Complaint*          April 15, 2013

Probation Services primarily conducts its business is 335
West Third Street, Dayton, Ohio 45402.

16.   Defendant Carl Sims Henderson is and was, at all times
relevant to this action, the administrative judge for the
Dayton Municipal Court and the presiding judge in the trial
court case, *State of Ohio v. Nicholas E. Rossi*. He is sued
individually and in his official capacity. Upon information
and belief, Henderson is, and has been at all times
relevant to this action, a citizen and resident of Ohio.

17.   Defendant Kym M. DeMint is and was, at all times relevant
to this action, a Deputy Bailiff for the Dayton Municipal
Court, specifically assigned to Defendant Carl Sims
Henderson's courtroom. Defendant DeMint was present for all
hearings pertaining to *State of Ohio v. Nicholas E. Rossi*.
She is sued individually and in her official capacity. Upon
information and belief, DeMint is, and has been at all
times relevant to this action, a citizen and resident of
Ohio.

18.   Defendants Dayton Municipal Court, Dayton Municipal Court
Probation Services, Carl Sims Henderson, and Kym M. Demint
are referred to collectively herein as the "Dayton
Municipal Court Defendants."

## c. The City Attorney Defendants

19.   Defendant Deirdre Logan was, at all times relevant to this action, the chief prosecutor for the City of Dayton. She is sued individually and in her official capacity. Upon information and belief, Logan is, and has been at all times relevant to this action, a citizen and resident of Ohio.

20.   Defendant Stephanie L. Cook is and was, at all times relevant to this action, a prosecutor for the City of Dayton. She is sued individually and in her official capacity. Upon information and belief, Cook is, and has been at all times relevant to this action, a citizen and resident of Ohio.

21.   Defendant Andrew D. Sexton is and was, at all times relevant to this action, a prosecutor for the City of Dayton. He is sued individually and in his official capacity. Upon information and belief, Sexton is, and has been at all times relevant to this action, a citizen and resident of Ohio.

22.   Defendants Deirdre Logan, Stephanie L. Cook, and Andrew D. Sexton are referred to collectively herein as "the City Attorney Defendants."

### d. The Dayton Probation Defendants[3]

---

[3] In this complaint, when the term "City Defendants" is used, it does not apply to the Dayton Probation Defendants unless the term "Dayton Probation Defendants" is explicitly stated (i.e. "The City Defendants and Dayton Probation Defendants")

23.  Defendant Jennifer Lynn Alfaro (also known as "Jennifer Osborne") is and was, at all times relevant to this action, a probation officer for the City of Dayton. She is sued individually and in her official capacity. Upon information and belief, Alfaro (a.k.a. "Osborne") is, and has been at all times relevant to this action, a citizen and resident of Ohio.

24.  Defendant Dona DeVoise-Pierce (also known as "Dona Pierce") is and was, at all times relevant to this action, a supervisory probation officer for the City of Dayton and the direct supervisor to Defendant Jennifer Lynn Alfaro. She is sued individually and in her official capacity. Upon information and belief, DeVoise-Pierce (a.k.a. "Pierce") is, and has been at all times relevant to this action, a citizen and resident of Ohio.

25.  Defendants Jennifer Lynn Alfaro (a.k.a "Jennifer Osborne") and Dona DeVoise-Pierce (a.k.a. "Dona Pierce") are collectively referred to herein as "the Dayton Probation Defendants."

26.  All of the Defendants from the City of Dayton, Dayton Municipal Court, the City Attorney, and the Dayton Probation groups are collectively referred to herein as "the City Defendants."

*Nicholas Alahverdian v. State of Ohio, et al. - Complaint*      April 15, 2013

### 3. The Sinclair Community College Defendants

#### a. The College and its Officials as Defendants

27.  Defendant Warren County Montgomery County Community College District[4] is a political subdivision of the State of Ohio and a body corporate with all the powers of a corporation, existence, with power to sue and be sued, to incur debts, liabilities, and obligations, to exercise the right of eminent domain and of taxation and assessment as provided in O.R.C. sections 3353.01 et seq., "to issue bonds, and to do all acts necessary and proper for the carrying out of the purposes for which the district was created and for executing the powers with which it is invested."[5]

28.  Defendant Sinclair Community College is a public institution of higher education created pursuant to Chapter 3354 of the O.R.C. Sinclair is operated by Defendant WCMCCCD. Defendant Sinclair operates Sinclair Police, which is the department having law enforcement authority in the political subdivision of Sinclair Community College.

29.  Defendant Steven Lee Johnson is the President of Sinclair Community College. He is sued individually and in his official capacity. Upon information and belief, Johnson is,

---

[4] Warren County Montgomery County Community College District will hereinafter be referred to as "WCMCCCD."

[5] O.R.C. 3354.03

*Nicholas Alahverdian v. State of Ohio, et al. - Complaint*      *April 15, 2013*

and has been at all times relevant to this action, a
citizen and resident of Ohio.

### b. The Sinclair Police Defendants

30.   Defendant Charles J. Gift is and was, at all times relevant
to this action, the Chief of Sinclair Police. Upon
information and belief, Gift served in a supervisory and/or
policymaking role for the Sinclair Police Department. Upon
information and belief, Gift is, and has been at all times
relevant to this action, a citizen and resident of Ohio.

31.   Defendant Kenneth Quatman was, at all times relevant to
this action, a police officer employed by the Sinclair
Police Department. Upon information and belief, Quatman is,
and has been at all times relevant to this action, a
citizen and resident of Ohio.

32.   Defendant Sean Miller was, at all times relevant to this
action, a police officer employed by the Sinclair Police
Department, until he resigned from the Department due to
misconduct. He now renovates houses in Seattle, Washington.
Upon information and belief, Miller is, and has been at all
times relevant to this action, a citizen and resident of
Ohio.

33.   Defendant Tom Hupp was, at all times relevant to this
action, a police officer employed by the Sinclair Police

*Nicholas Alahverdian v. State of Ohio, et al. - Complaint*    *April 15, 2013*

Department. Upon information and belief, Hupp is, and has been at all times relevant to this action, a citizen and resident of Ohio.

34. Defendants WCMCCCD, Sinclair Community College, Steven Lee Johnson, Charles J. Gift, Kenneth Quatman, Sean Miller, and Tom Hupp are collectively referred to herein as "the Sinclair Defendants."

### 4. The Psychologist Defendants

35. Defendant Lauren M. Cimperman, Psy.D. was, at all times relevant to this action, a student psychologist attending Wright State University's School of Professional Psychology, who conducted pre-sentencing investigation psychological exams for the Dayton Municipal Court. Cimperman's Ohio psychologist credential number is 6736. Upon information and belief, Cimperman is currently a resident of Fort Worth, Texas, and was, at all times relevant to this action, a citizen and resident of Ohio.

36. Defendant David Roush & Associates, LLC[6] is a domestic for-profit limited liability corporation based at 2378 National Road, Fairborn, Ohio, 45324.

37. Defendant David Henry Roush, Psy.D. was, and at all times relevant to this action, a psychologist who conducted a

---

[6] The Ohio Secretary of State has custody of the business records for David H. Roush, Psy.D. and Associates, LLC, and has issued certificate number 2133017 to the aforesaid business entity.

psychological assessment of the Plaintiff. Roush's Ohio
psychologist credential number is 5807. Upon information
and belief, Roush is and was, at all times relevant to this
action, a citizen and resident of Ohio.

38.   Defendants Lauren Cimperman, Psy.D.; David Roush &
Associates, LLC; and David Henry Roush, Psy.D. are
collectively referred to herein as "the Psychologist
Defendants."

### 5. The Attorney Defendants

39.   Defendant Law Office of the Public Defender is and was, at
all times relevant to this action, a law office that
provides legal services to impoverished clients. The
primary office of The Law Office of the Public Defender is
117 South Main Street, 4th Floor, Riebold Building, Dayton,
Ohio 45422.

40.   Defendant D.K. Rudy Wehner is and was, at all times
relevant to this action, the Public Defender for The Law
Office of the Public Defender. Upon information and belief,
Wehner is and was, at all times relevant to this action, a
citizen and resident of Ohio.

41.   Defendant Julie Dubel is and was, at all times relevant to
this action, a lawyer for The Law Office of the Public
Defender. Dubel's attorney registration number is 0037172.

Upon information and belief, Dubel is and was, at all times relevant to this action, a citizen and resident of Ohio.

42. Defendant Lawrence Joseph Greger is and was, at all times relevant to this action, an attorney at law based in Dayton, Ohio. Greger's attorney registration number is 0002592. Upon information and belief, Greger is and was, at all times relevant to this action, a citizen and resident of Ohio.

43. Defendant Keith Anthony Fricker is and was, at all times relevant to this action, an attorney at law based in Dayton, Ohio. Fricker's attorney registration number is 0037355. Upon information and belief, Fricker is and was, at all times relevant to this action, a citizen and resident of Ohio.

44. Defendants Law Office of the Public Defender, D.K. Rudy Wehner, Julie Beth Dubel, Lawrence Joseph Greger, and Keith Anthony Fricker are collectively referred to herein as "the Attorney Defendants."

**6. Ohio Attorney General Richard Michael "Mike" DeWine**

45. Defendant Richard Michael "Mike" DeWine heads the Office of the Ohio Attorney General and is the chief legal officer of the State of Ohio. The agency is responsible for enforcement of criminal laws. Mr. DeWine has ultimate

*Nicholas Alahverdian v. State of Ohio, et al. - Complaint*        *April 15, 2013*

authority for supervising all of the operations and

functions of the Office of the Ohio Attorney General. The

Office includes, upon information and belief, the Ohio Sex

Offender Registry and multiple websites[7] containing a

searchable database of individuals convicted of sex

offenses in the State of Ohio. Defendant DeWine is the

highest-ranking law enforcement officer in the State of

Ohio. He is sued in his official capacity. Defendant DeWine

is referred to herein as "Defendant DeWine" or "the

Attorney General." The Office of the Ohio Attorney General

is located at 30 East Broad Street, 14th Floor, Columbus,

Ohio 43215.

### 7. Montgomery County Sheriff Phil Plummer

46.   Defendant Montgomery County Sheriff Phil Plummer is head of

the Department having law enforcement authority in the

County of Montgomery, in the State of Ohio. The Department

includes, upon information and belief, the Montgomery

_____

[7] At www.communitynotification.com, an official website of the Ohio Attorney General,
it states that "[t]he Attorney General's Office of Ohio maintains a Sex Offender
Registry as a public service tool. Individuals listed on this registry have been
convicted of a sexual offense that requires them to meet a number of mandates
including annual registration with law enforcement. This registry is designed to
increase community safety and awareness. This information is meant to educate you
about offenders in your County. It has not been made available for you to take action
against any individual. Any action against an offender which is determined to be a
violation of law will subject the violator to arrest and prosecution. Please report
all information on offenders directly to our office."

*Nicholas Alahverdian v. State of Ohio, et al. - Complaint*     *April 15, 2013*

County Sex Offender Registry and multiple websites[8]
containing a searchable database of individuals convicted
of sex offenses in the State of Ohio. He is sued in his
official capacity. Defendant Plummer is referred to herein
as "Defendant Plummer" or "the Montgomery County Sheriff."
The office where Defendant Montgomery County Sheriff Phil
Plummer primarily conducts its business is 345 West Second
Street, Dayton, Ohio 45422.

<u>JURISDICTION AND VENUE</u>

47.  This Honorable Court has jurisdiction over this action
     pursuant to 28 U.S.C. §§ 1331 and 1343. This action is also
     brought pursuant to 42 U.S.C. § 1983 to redress violations
     of the United States Constitution, the Constitution of the
     State of Ohio, federal statuary entitlements, state
     statuary entitlements, and common law.

48.  Venue is proper here pursuant to 28 U.S.C. § 1391 (b). The
     claims arise in this district.

_____

[8] At http://sheriffalerts.com/cap_main.php?office=55170, an official website of
Montgomery County Sheriff Phil Plummer, it states that "[t]he Montgomery County Ohio
Sheriff's Office maintains a Sex Offender Registry as a public service tool.
Individuals listed on this registry have been convicted of a sexual offense that
requires them to meet a number of mandates including annual registration with law
enforcement. This registry is designed to increase community safety and awareness.
This information is meant to educate you about offenders in Montgomery County. It has
not been made available for you to take action against any individual. Any action
against an offender which is determined to be a violation of law will subject the
violator to arrest and prosecution. Please report all information on offenders
directly to our office."

*Nicholas Alahverdian v. State of Ohio, et al. – Complaint*          *April 15, 2013*

49.   In addition, this Honorable Court has supplemental
      jurisdiction under 28 U.S.C. § 1367 over any claims based
      upon state law.

<u>FACTUAL ALLEGATIONS</u>

**A. The First Interaction Between the Plaintiff and the**
   **Sinclair Police Department**

50.   In approximately mid-January, 2008, Plaintiff arrived at
      the Sinclair Community College Bookstore to purchase books
      for his courses.

51.   Plaintiff began to realize the extraordinarily long lines
      at the bookstore, and asked an employee of the bookstore to
      speak to a manager regarding the lengthy wait for
      purchasing course books.

52.   Plaintiff was shown to the manager's office. Plaintiff
      expressed his concern with the length of time that it took
      to purchase items at the bookstore.

53.   At some point, a Sinclair Community College police officer,
      Defendant Tom Hupp, arrived at the scene. He escorted the
      Plaintiff back to the Sinclair Police Department for
      questioning. Plaintiff continuously asked Hupp why he was
      being held in the police offices, and after minutes of
      ignoring Plaintiff, Hupp flagrantly and boisterously began

*Nicholas Alahverdian v. State of Ohio, et al. - Complaint*      *April 15, 2013*

screaming at the Plaintiff, asking him if he thought he was "better than other students," *inter alia*.

54. Plaintiff began to respond and tried to help Hupp understand that he was simply trying to help come up with ideas for a faster system for checking out so students would not be late for classes. Hupp continued to yell and interrupt the Plaintiff.

55. Hupp ended the conversation by saying "Everyone in this department is going to know your name. Watch your step. You're lucky you're not getting charged with disorderly conduct." The Plaintiff then left the Sinclair Police offices.

**B. The Second Interaction between Sinclair Police and the Plaintiff**

**1. The Lunch Date at Sinclair**

56. A few weeks later, the Plaintiff scheduled a date on www.myspace.com with a girl named Mary Grebinski (the "complainant"). He did not show up at that date.

57. The complainant emailed Plaintiff again and tried to set up a lunch date. The Plaintiff, new to Ohio and not knowing many people, agreed to show up at the Sinclair cafeteria for lunch.

*Nicholas Alahverdian v. State of Ohio, et al. – Complaint*        *April 15, 2013*

58.    On January 30, 2008, Plaintiff brought a classmate and a
       member of his church to the lunch date (they were never
       interviewed as witnesses because the Defendants knew that
       they would attest to complainant Mary Grebinski's overt
       sexuality and blatant promiscuity), and the complainant
       brought two of her friends (one of whom she bragged about
       "turning gay" because "no guy can handle[her]"). The
       complainant was outlandishly flirtatious, showing nude
       pictures of herself to the Plaintiff and others, rubbing
       her leg against his, making sexual jokes, and making those
       at the table feel uncomfortable with her boorish demeanor
       and lack of social skills. The complainant also bragged
       about being drunk at the lunch table.

                **2. Walking to Class and Kissing in the Hallway**

59.    The complainant asked the Plaintiff to walk her to class,
       to which he agreed. She began to hold his hand as they
       walked to the building that her classroom was in. As they
       arrived at the building, the Plaintiff and complainant
       began to kiss.

60.    After about fifteen minutes, the Plaintiff left the
       complainant and walked to the Library to meet the friend
       from church that had lunch with the Plaintiff and
       complainant.

*Nicholas Alahverdian v. State of Ohio, et al. - Complaint*      April 15, 2013

### 3. Sinclair Police Confront the Plaintiff

61.  A few hours later, Defendants Miller and Quatman approached
     Plaintiff as he was sitting and studying in the Library
     with one of his friends from that lunch, where,
     coincidentally, they were talking about the strange
     behavior of the complainant. They asked the Plaintiff to go
     with them to the police offices to answer a few questions.
     Plaintiff arrived at the police offices and was taken into
     an interrogation room. Plaintiff was never read his Miranda
     Rights. Plaintiff spoke with Defendant Miller and then
     spoke with Defendant Quatman. Miller and Quatman were
     asking the Plaintiff specific questions about specific
     conduct, including questions about sexual contact with the
     complainant, Grebinski. The conduct included masturbating
     in a hallway. The Plaintiff denied any involvement in any
     such activity. The extent of what had occurred was a
     consensual kiss, and Plaintiff articulated that to Miller
     and Quatman. Plaintiff asked Defendants Miller and Quatman
     if he could submit a written statement, but Plaintiff was
     told that "a written statement from [him] [was] not
     necessary."

62.  The Plaintiff was released from the police station and was
     able to return to his studies. A few days later, however, a

call came from Lieutenant William Hill of Sinclair Police,
informing the Plaintiff that "no charges were going to be
filed." Plaintiff ended the call.

63.  Plaintiff, in February 2008, was served with a summons for
two misdemeanor charges - sexual imposition (O.R.C.
2907.07) and public indecency (id. 2907.09).

**C. The Court Proceedings**

64.  The Plaintiff entered a plea of not guilty on February 21,
2008. He met Defendant Julie Dubel, who was appointed as
his counsel.

65.  The Plaintiff demanded that his attorney put him on the
trial docket and also demanded a jury trial.

66.  On March 31, 2008, a bench trial was held by Defendant
Henderson and prosecuted by Defendant Cook. Defendant Dubel
refused to put the Plaintiff on the stand to allow him to
testify in his own defense. Defendant Henderson told the
Plaintiff to "shut up!" or "shhhhh!" each time Plaintiff
tried to address the Court to inform the Court of his
desire, ability, and constitutional right to speak in his
own defense.

67.  Upon information and belief, Defendants Dayton Municipal
Court, Henderson, Logan, Cook, and Dubel were aware of the
Plaintiff's demand for a jury trial and his demand to

testify in his own defense, yet willfully ignored and/or were deliberately indifferent to the Plaintiff's demand for a jury trial and/or a demand to testify in his own defense in a rush to convict an innocent United States citizen protected by the Constitution.

68. Upon information and belief, Defendants Henderson and Logan were aware of the many lies and contradictions in the complainant's testimony and written statement. For example, the complainant wrote in her statement that the lunch was not planned and that the Plaintiff showed up on an impromptu basis. In her trial testimony, she admitted to perjuring herself and also admitted that the lunch was planned.

69. The complainant also stated that she did not kiss him at all, and then went on to switch her answer four times during her time on the stand. She also claimed that she "did not remember what [she] told the police" and that "she only wrote down the important stuff." The complainant further testified that semen was "all over the wall" and that the police took pictures.

70. The complainant would continue to reverse herself and make additional claims that she did not initially make in order to exaggerate her story.

71.  Defendant Quatman testified and stated that the Plaintiff
     agreed with everything that the complainant said (which is
     wholly untrue as Plaintiff did not do so), with the
     exception of who the aggressor of the "sexual conduct" was.
     Defendant Quatman also stated that he was employed by the
     Dayton Police Department for 14 years, but failed to
     indicate that he had been fired from that department.

72.  Upon information and belief, Defendant Quatman was aware of
     the Plaintiff's actual innocence and the Plaintiff's denial
     of sexual misconduct, yet willfully ignored and/or was
     deliberately indifferent to this evidence demonstrating
     Plaintiff's innocence.

73.  Furthermore, Quatman testified that the Plaintiff admitted
     to ejaculating. Plaintiff made no mention of ejaculating at
     all. Quatman further testified that he did not see any
     semen in the hallway and did not have any pictures. Quatman
     found nothing to corroborate any sexual imposition and/or
     public indecency claim, but did find abundant evidence to
     further confirm that the complainant was lying.

74.  Upon information and belief, Defendant Quatman was aware
     that the Plaintiff did not admit to ejaculating, nor did
     Plaintiff admit to any sexual contact whatsoever, yet
     willfully ignored and/or was deliberately indifferent or

*Nicholas Alahverdian v. State of Ohio, et al. – Complaint*     *April 15, 2013*

grossly negligent with respect to this evidence
demonstrating the Plaintiff's innocence.

75.   Defendant Dubel even concluded her closing argument by
stating, in open court, that "maybe we should look at
public indecency charges on both parties parts."

76.   Upon information and belief, Defendant Dubel, knew that the
Plaintiff did not admit to any type of sexual contact
whatsoever, yet willfully ignored and/or was deliberately
indifferent or grossly negligent with respect to the
aforesaid indicating Plaintiff's evidence.

77.   Thus, indicative of the aforesaid, Dubel failed to conduct
*any* discovery, interview the Plaintiff, ask for a written
statement to be submitted, investigate the claims, and was
recklessly and negligently represented Plaintiff.

78.   Henderson continued to instruct Plaintiff to "shut up" or
"shhhhh" each time Plaintiff attempted to assert his right
to a jury trial or to testify in his own defense.

79.   The bench trial concluded and the Plaintiff, without a jury
trial and/or the ability to testify in his own defense, was
found guilty by Defendant Henderson.

    **D. Pre-sentencing Investigation and Lauren Cimperman, Psy.D.**

80.   The Plaintiff was sentenced to 90 days in jail, 90 days
suspended as well as community service and 3 years of

*Nicholas Alahverdian v. State of Ohio, et al. - Complaint*      *April 15, 2013*

probation. He was also ordered to undergo a psychological assessment by Wright State psychology student Defendant Lauren Cimperman.

81.   Cimperman conducted an assessment that included gross overstatements of the Plaintiff's conditions, and also authored a psychological report on those conditions as if she was a credentialed professional when she was, in fact, not a credentialed psychologist. Furthermore, she falsely represented to the Plaintiff that she did not know what he had been charged with and would not find out. Cimperman also reported that the Plaintiff self-reported being diagnosed with conduct disorder and oppositional defiant disorder, when the Plaintiff reported no such diagnoses. Cimperman further distorted the psychological evaluation by falsely stating in her report that the Plaintiff had been admitted to psychiatric institutions more than 30 times.

**E. Appeals**

82.   The Plaintiff filed three appeals in connection with this single case. The first, where he was represented by Michael R. Booher, involved ineffective assistance of counsel and lack of corroborating evidence to satisfy the corroboration requirement in O.R.C. 2907.06(b). This appeal elicited a

*Nicholas Alahverdian v. State of Ohio, et al. – Complaint*      April 15, 2013

strong dissent from the presiding judge of the Second Court
of Appeals of the State of Ohio.

83. The second appeal was handled by Defendant Lawrence Joseph
Greger. Defendant Greger was instructed by the Plaintiff to
take the appeal from the Second Appellate District and
elevate it to the Supreme Court of Ohio for review.

84. Upon information and belief, Defendant Greger was aware of
the Plaintiff's demand to appeal the majority opinion of
the Second Appellate District to the Ohio Supreme Court,
yet willfully ignored and/or was deliberately indifferent
or grossly negligent with respect to this demand.

85. Defendant Greger instead focused on a blog written by the
complainant in an effort to have it submitted as new
evidence. An appeal was filed to admonish the trial court
to provide the opportunity for an evidentiary hearing.

86. An evidentiary hearing was held in February 2010. The
Plaintiff, the complainant, Charles Lane, and a computer
forensic expert, Doug Rodderick, all testified during this
evidentiary hearing. The new evidence was rendered
"fabricated and/or unauthentic." Defendant Dubel did not
give the electronic file to Defendant Greger, instead, a
copy of a copy of a copy was used, which caused the blog
image to be blurry and incomprehensible.

*Nicholas Alahverdian v. State of Ohio, et al. - Complaint*     *April 15, 2013*

87.   After the second appeal was complete, Plaintiff began
      calling lawmakers at the Ohio State House to inform them of
      Henderson's misconduct and the vague trap of O.R.C. 2907.06
      and its corroboration requirement. Plaintiff also called
      the Ohio Bar. A day later, Greger called the Plaintiff and
      informed him that Henderson was becoming irate due to the
      Plaintiff's activism.

88.   Mark J. Babb, an attorney of Fairborn, Ohio, represented
      the Plaintiff in his third and final appeal before the
      Second District Court of Appeals to have the blog be
      admitted as newly discovered evidence. The opinion affirmed
      the judgment of the trial court.

   **F. Enter Attorney Keith Fricker**

89.   Defendant Fricker was hired by the Plaintiff to represent
      him in his absence, as being absent from Harvard classes is
      cause for dismissal from the University. The Plaintiff had
      already registered as a sex offender, notified probation in
      Massachusetts, and began work on community service.
      Defendant Fricker told the Plaintiff that he spoke with
      Defendant Henderson and that it was not necessary for him
      to travel to Ohio for the hearing.

90.   At the hearing, Fricker lied and told Defendant Henderson
      that the Plaintiff was "making jokes about extradition" and

*Nicholas Alahverdian v. State of Ohio, et al. - Complaint*          *April 15, 2013*

did not represent the Plaintiff in good faith. Defendant Henderson put a nationwide warrant out for the Plaintiff's arrest due to two misdemeanor charges.

### G. **Plaintiff Turns Himself In To Harvard University Police**

91. Plaintiff called the Harvard University Police Department about returning to campus to speak with his Dean about potential readmission to the University, and also asked about how the Police learned of the arrest. Before terminating the call, the Plaintiff asked if there was a warrant out. The Harvard police officer said that the Plaintiff would need to come down to the station to see if an active warrant was out. Plaintiff then immediately went to the Harvard Police Department and turned himself in.

92. Plaintiff waived extradition and was transported to Ohio by Sinclair Police Lieutenants William Hill and Dennis Leavitt, in a marked Sinclair Police vehicle and was admitted to the Montgomery County Jail.

93. While the Plaintiff was in jail, a news story broke about the Plaintiff, as a high-profile youth advocate in Rhode Island and Harvard student who was now in jail. Defendant Andrew Sexton told the press that the Plaintiff had "not registered" as a sex offender, which was wholly untrue.

### H. **Back in Ohio**

*Nicholas Alahverdian v. State of Ohio, et al. - Complaint*      *April 15, 2013*

94.   Before a Dayton Municipal Court magistrate judge and later
      on November 26, 2012 (the re-sentencing hearing) Defendant
      Henderson, the Plaintiff explained that he was not a flight
      risk because he did indeed turn himself in and he did
      register as a sex offender in the Commonwealth of
      Massachusetts. Both the magistrate judge and Defendant
      Henderson ignored the Plaintiff's statements despite
      evidence corroborating the Plaintiff's statements.

95.   Upon information and belief, Defendants Sexton and
      Henderson were aware of the facts including the sex
      offender registration and surrender to the Harvard Police,
      yet willfully ignored and/or were deliberately indifferent
      or grossly negligent with respect to these facts indicating
      Plaintiff's efforts to cooperate in an effort to justify
      the restriction against allowing the Plaintiff to return to
      Massachusetts.

96.   Defendant Alfaro (a.k.a. "Osborne"), on the contrary, told
      the Plaintiff that he would be able to return to
      Massachusetts so long as he returned to Ohio once a month
      for his probation appointments. However, Defendant Pierce
      stated in open court that returning to Massachusetts was
      not an option because Defendant Dayton Probation wanted to
      monitor the Plaintiff's "treatment."

*Nicholas Alahverdian v. State of Ohio, et al. - Complaint*        *April 15, 2013*

97.  Plaintiff appealed before Defendant Henderson, along with
     his foster parents Charlie and Sharon Lane,[9] in trying to
     convey to Henderson that his friends, schooling, family,
     resources, and support network were all in New England.
     Additionally, the Plaintiff's health insurance only covered
     him in his state of residence, and not in Ohio. Still,
     Henderson denied Plaintiff's request to be able to return
     home.

98.  Plaintiff was ordered to remain in Ohio, complete community
     service, and go to "sex addicts anonymous" classes. The
     trial court found the therapy and life skills portions of
     the original sentence as moot.

99.  Plaintiff met with Defendant Alfaro on each of the
     scheduled appointments from December 2012 to January 2013.
     At a probation appointment in January 2013, Alfaro gave the
     Plaintiff a business card with the name of Defendant Roush.
     Alfaro instructed Plaintiff to call Roush to set up an
     appointment.

100. Plaintiff called Roush as instructed, but was surprised to
     learn that Roush was going to conduct a "psychosexual
     assessment." The Plaintiff remembered what Defendant Judge
     Henderson ordered (the classes) but went to the Roush

_____

[9] The Lanes were Plaintiff's foster parents in 2006. They moved to Ohio in 2007.
Charles Lane was the Plaintiff's ecclesiastical leader in Rhode Island.

*Nicholas Alahverdian v. State of Ohio, et al. – Complaint*     *April 15, 2013*

assessment appointments because Roush falsely represented
that the assessment was to determine whether "individual,
group, or inpatient therapy [was] needed."

101. The appointments with Roush became increasingly
uncomfortable. Roush was told several times by the
Plaintiff that he did not feel comfortable with most of the
questions being asked by Roush as well as the questions on
the test. Plaintiff noticed that the testing and questions
were geared toward child molesters, incest offenders, and
incredibly mentally ill sex offenders.

102. At the second Roush appointment, Plaintiff was asked to
talk about the "thirteen pornographic videos" that were
allegedly mentioned in the police report dating back to
January 2008. Roush said that this was in his notes from
the last session. Plaintiff was utterly stunned and asked
Roush for more information. Roush stated that at the first
appointment,[10] Plaintiff "informed" Roush that in connection
with the "offense" in January 2008, Plaintiff watched 13
pornographic videos to the point of ejaculation. Plaintiff,
shocked and abhorred, fervently denied ever saying anything
about 13 videos of *anything* and that the Sinclair police
report and hundreds of pages of appellate and trial files

---

[10] The first appointment consisted of a 600+ question test known as the Minnesota
Multi-phasic Personality Inventory. The appointment did not include any type of verbal
assessment administered by Roush on this particular day.

would verify that not even *one* video with any type of
content was viewed in connection with this false
allegation. Plaintiff concluded that Roush was trying to
elicit information through deception, in violation of the
Ohio Code of Professional Responsibility for Psychologists.
Roush apologized but said "In the 20 years I've been doing
this, I've never misattributed a quote to anyone and I take
copious notes." Roush was being deceptive and became
increasingly volatile and flagrant due to Plaintiff's
unwillingness to be controlled by Roush.

103. At the conclusion of the Roush appointments, Roush
instructed Plaintiff to take a polygraph examination
because of the differences between Plaintiff's account and
complainant Grebinski's account of January 30, 2008. This
polygraph was to be performed by Carl Reeder of Reeder
Forensic Services. Plaintiff was told by Roush that Reeder
expected a payment of $350.00 for the polygraph test.
Plaintiff explained to Roush that he did not have the money
to pay for Roush's appointments (Roush demanded $650.00)
and/or the polygraph test (at a rate of $350, total=
$1,000.00) because Plaintiff is disabled, on Supplemental
Security Income, and cannot work due to a degenerative,
debilitating spinal disease known as ankylosing

*Nicholas Alahverdian v. State of Ohio, et al. - Complaint*     April 15, 2013

spondylitis, as well as depression and post-traumatic stress disorder.

104. Roush called Alfaro and reported that Plaintiff was "not cooperating with treatment." At this point, Alfaro called the Plaintiff. Alfaro stated that if Plaintiff could not pay Roush or Reeder, Plaintiff risked being brought before Defendant Henderson due to a violation of probation. Plaintiff reminded Alfaro of Henderson's order of probation, community service, and "sex addicts classes," but Alfaro ended the conversation by stating that most likely, a violation report would be filed.

105. Plaintiff received a call from Roush in March 2013 where he demanded payment. Plaintiff informed Roush that he had no money and was not able to pay Roush. Roush then threatened to sue the Plaintiff, and also stated that the Plaintiff risked being placed in jail due to his "non-compliance" with "treatment." Plaintiff informed Roush that there was no court order issued by Henderson for "treatment" and, in fact, the court had ruled "treatment" as moot. Roush once again reiterated his threat of having an attorney sue the Plaintiff for an "assessment" that was not court ordered or medically/psychologically necessary.

*Nicholas Alahverdian v. State of Ohio, et al. – Complaint*     *April 15, 2013*

106. That same day, Alfaro again called Plaintiff and threatened
     Plaintiff with incarceration. Alfaro also told Plaintiff
     that he would not be able to approve a "travel pass" so
     that he could fulfill his federal magistrate judge-ordered
     presence at the United States District Court for the
     District of Rhode Island[11] on April 18th, 2013.

107. As Plaintiff was increasingly worried about Alfaro's
     complete disregard for his medical conditions and his
     federal court-ordered attendance at hearings, the Plaintiff
     initiated communication with the chief probation officer of
     Dayton Municipal Court Probation Services, Joel Zeugner.
     Zeugner fervently apologized for Alfaro's conduct, and
     indicated that some of Alfaro's positions and ultimatums
     were false. These positions include:

     a. Plaintiff could not return to his state of residence,
        the Commonwealth of Massachusetts;[12]

     b. Plaintiff could not travel to Rhode Island for a
        settlement conference before a U.S. magistrate judge
        (where his presence was court ordered);[13]

---

[11] Note: Plaintiff has a case pending in the United States District Court for the
District of Rhode Island before Judge John J. McConnell. The case is captioned
*Alahverdian v. Rhode Island Department of Children, Youth and Families, et al.* The
case number is 1:11-cv-00075.

[12] Zeugner stated that this could be easily handled through the Interstate Compact.

[13] Zeugner stated that the Plaintiff would, without question, be able to attend the
settlement conference at the U.S. District Court for the District of Rhode Island.
However, Zeugner did somewhat conclude that an additional reason to attend the
settlement conference was for Defendant Roush's financial gain.

*Nicholas Alahverdian v. State of Ohio, et al. - Complaint*    *April 15, 2013*

    c. Needing a "travel pass"[14] issued by the Dayton

       Municipal Court Probation Services Department in one's

       possession to travel;[15]

    d. Harassing the Plaintiff's fiancée about where she was

       working, her financial status, if she was looking for

       work, and many other intrusive and unreasonable

       questions;

    e. A polygraph test is not required because it is

       unreasonable, unnecessary, and the court did not order

       any such test; and

    f. Defendant Alfaro was unreasonable in stating that

       Plaintiff would have his probation revoked based on an

       inability to pay for "treatment" or a polygraph.

108. Plaintiff brings this action due to an outrageous and

    blatant disregard for basic constitutional rights: the

    right to a trial by jury, the right to testify in one's own

    defense, and the right to be free from cruel and unusual

    punishment. Plaintiff was injured on January 30, 2008 and

    the injury has continued until the present time. Plaintiff

    is being forced to live in Ohio, far from Harvard

---

[14] Defendant Alfaro had previously represented to Plaintiff (indicative of her desire for totalitarian control) that a "travel pass" was necessary for Plaintiff to return to Massachusetts to retrieve his property, even though Defendant Henderson already granted leave for Plaintiff to do so. Defendant DeVoise-Pierce also falsely represented on several occasions that a "travel pass" was mandatory.

[15] Zeugner categorically stated that a "travel pass" was not necessary and that Alfaro overstepped her boundaries.

University, his friends, an active U.S. District Court
case, and the little family he has left. Plaintiff also
suffered the loss of Harvard. An incredibly obvious
miscarriage of justice has taken place, and this civil
action is the Plaintiff's last chance at asserting his
desire for justice so that the truth of his innocence may
be illuminated.

<u>CAUSE OF ACTION 1: MALICIOUS PROSECUTION AND SEIZURE IN</u>

<u>VIOLATION OF 42 U.S.C. § 1983</u>

<u>(Against City of Dayton, Sinclair Community College,</u>

<u>Logan, Cook, Sexton, Gift, Quatman, and Hupp)</u>

109. Plaintiff hereby incorporates the foregoing paragraphs.

110. City of Dayton, Sinclair Community College, Logan, Cook,
Sexton, Gift, Quatman, and Hupp are "persons" as the
nomenclature is used in the text of 42 U.S.C. § 1983.

111. Under color of state law, City of Dayton, Sinclair
Community College, Logan, Cook, Sexton, Gift, Quatman, and
Hupp, acting individually and in concert, initiated and
continued criminal prosecution against the Plaintiff on
charges of sexual imposition and public indecency.

112. There was no probably cause for the criminal prosecution of
the Plaintiff.

*Nicholas Alahverdian v. State of Ohio, et al. - Complaint*     April 15, 2013

113.  City of Dayton, Sinclair Community College, Logan, Cook, Sexton, Gift, Quatman, and Hupp's actions were malicious and evidenced a reckless and callous disregard for, and deliberate indifference to, Plaintiff's constitutional rights.

114.  As a result of this wrongful prosecution, the Plaintiff was seized and deprived of his rights under the fourth and Fourteenth Amendments to the United States Constitution.

115.  As a direct and foreseeable consequence of these deprivations, the Plaintiff has suffered economic loss, physical harm, emotional trauma, loss of liberty, loss of privacy, loss of education, and irreparable harm to his reputation.

116.  As a further consequence of these deprivations, the Plaintiff was required to retain counsel to represent him in the criminal proceedings pursued against him, and incurred expenses associated with defending against the unlawful criminal proceedings initiated and sustained by the Defendants.

<u>CAUSE OF ACTION 2:</u>

<u>CONCEALMENT OF EVIDENCE IN</u>

<u>VIOLATION OF 42 U.S.C. § 1983</u>

*Nicholas Alahverdian v. State of Ohio, et al. - Complaint*     April 15, 2013

<u>(Against City of Dayton, Logan, Cook, Sexton, WCMCCCD, Sinclair
Community College, Johnson, Gift, Miller, and Quatman)</u>

117. Plaintiff hereby incorporates the foregoing paragraphs.

118. City of Dayton, Logan, Cook, Sexton, WCMCCCD, Sinclair
Community College, Johnson, Gift, Miller, and Quatman are
"persons" as the nomenclature is used in the text of 42
U.S.C. § 1983.

119. Under color of law, City of Dayton, Logan, Cook, Sexton,
WCMCCCD, Sinclair Community College, Johnson, Gift, Miller,
and Quatman, acting individually and in concert, concealed
evidence of Plaintiff's actual innocence.

120. Under color of law, City of Dayton, Logan, Cook, Sexton,
WCMCCCD, Sinclair Community College, Johnson, Gift, Miller,
Quatman, Hupp, Law Office of the Public Defender, Wehner,
and Dubel, acting individually and in concert, concealed
evidence of Quatman's termination and firing by the City of
Dayton Police Department.

121. Under color of law, City of Dayton, Logan, Cook, Sexton,
WCMCCCD, Sinclair Community College, Johnson, Gift, Miller,
Quatman, Hupp, Law Office of the Public Defender, Wehner,
and Dubel each had a responsibility to either disclose,
request, or acquire exculpatory or impeaching information
and evidence that was material to innocence or to the

*Nicholas Alahverdian v. State of Ohio, et al. - Complaint*        *April 15, 2013*

punishment of the Plaintiff. The United States Supreme

Court has ruled that suppression by the prosecution of

evidence favorable to a defendant who has requested it

violates due process. The prosecutor must disclose evidence

or information that would enable the defense to more

effectively impeach the credibility of government witnesses

(i.e., Quatman). Because of *Brady v. Maryland*, 373 U.S. 83,

87 (1963), prosecutors (i.e., Logan, Cook, and Sexton) are

required to notify defendants and their attorneys whenever

a law enforcement official (Quatman) involved in their case

has a sustained record for knowingly lying in an official

capacity.

122. Quatman was terminated as a police officer of the City of

Dayton in August 2004 because he was charged with "failing

to be an actual resident of [...] Dayton, [...] in

violation of the Dayton City Charter, [and] misusing a city

vehicle and abusing sick leave privileges."[16] Quatman was

found guilty of all charges and was discharged from his

position as a police officer.[17] "The discharge order

notified Quatman that he had ten days to file an appeal to

---

[16] *Dayton v. Fraternal Order of Police, 2006-Ohio-3854*

[17] *Ibid*

*Nicholas Alahverdian v. State of Ohio, et al. - Complaint*          *April 15, 2013*

the Civil Service Board. Quatman did not file an

appeal[.]"[18]

123. City of Dayton, Logan, Cook, Sexton, WCMCCCD, Sinclair

Community College, Johnson, Gift, Miller, and Quatman

withheld this information to conceal and obfuscate

Quatman's lack of credibility from the Plaintiff and the

trial court.

124. City of Dayton, Logan, Cook, Sexton, WCMCCCD, Sinclair

Community College, Johnson, Gift, Miller, and Quatman

knowingly and intentionally concealed critical exculpatory

evidence to which the Plaintiff was entitled under the

Fourteenth Amendment to the U.S. Constitution and Ohio law.

125. In addition, City of Dayton, Logan, Cook, Sexton, WCMCCCD,

Sinclair Community College, Johnson, Gift, Miller, and

Quatman intentionally withheld notes and memorializations

of the report taken on January 30, 2008.

126. City of Dayton, Logan, Cook, Sexton, WCMCCCD, Sinclair

Community College, Johnson, Gift, Miller, and Quatman's

actions evidenced a reckless and callous disregard for, and

deliberate indifference to, Plaintiff's constitutional

rights.

---

[18] *Ibid.*

*Nicholas Alahverdian v. State of Ohio, et al. - Complaint*       *April 15, 2013*

127. As a result of these Defendants' conduct, Plaintiff was deprived of his rights under the Fourth and Fourteenth Amendments to the United States Constitution.

128. As a direct and foreseeable consequence of these deprivations, Plaintiff has suffered economic loss, physical harm, emotional trauma, loss of liberty, loss of privacy, loss of education, and irreparable harm to his reputations.

129. As a further consequence of these deprivations, Plaintiff was required to retain counsel to represent him in criminal proceedings pursued against him, and incurred expenses associated with defending against the criminal proceedings initiated and sustained by Defendants.

<u>CAUSE OF ACTION 3:</u>

<u>FABRICATION OF FALSE EVIDENCE IN VIOLATION OF 42 U.S.C. § 1983</u>

<u>(Against Hupp, Quatman and Miller</u>

<u>in their individual capacities)</u>

130. Plaintiff hereby incorporates the foregoing paragraphs.

131. Hupp, Quatman and Miller are "persons" as the nomenclature is used in the text of 42 U.S.C. § 1983.

132. Acting under color of law, Hupp, Miller and Quatman, individually and in concert, conspired to produce a false and misleading set of notes that they understood and agreed

would be falsely misrepresented as the notes taken during an interview with the Plaintiff and would be used in the criminal proceedings instituted against the Plaintiff.

133. Under color of law, Hupp, Miller, and Quatman, acting individually and in concert, abused their authority and positions as law enforcement officers to only interview witnesses that were supportive of the complainant and not interview any witnesses that were supportive of the Plaintiff.

134. Under color of law, Hupp, Miller, and Quatman, acting individually and in concert, abused their authority and positions as law enforcement officers to take photographs of the area where there was allegedly "semen all over the wall" but fail to disclose those photographs when they would have proven that no ejaculation occurred.

135. As a result of Defendants' conduct, the Plaintiff was deprived of his rights under the Fourth and Fourteenth Amendments to the United States Constitution.

136. As a direct and foreseeable consequence of these deprivations, Plaintiff has suffered economic loss, physical harm, emotional trauma, loss of liberty, loss of privacy, loss of education, and irreparable harm to his reputation.

*Nicholas Alahverdian v. State of Ohio, et al. - Complaint*      *April 15, 2013*

137. As a further consequence of these deprivations, Plaintiff
     was required to retain counsel to represent him in the
     criminal proceedings pursued against him, and incurred
     expenses associated with defending against the unlawful
     criminal proceedings initiated and sustained by Defendants.

<u>CAUSE OF ACTION 4:</u>

<u>MAKING FALSE PUBLIC STATEMENTS IN VIOLATION OF 42 U.S.C. § 1983</u>

(Against Sexton)

138. Plaintiff hereby incorporates the foregoing paragraphs.

139. Sexton is a "person" as the nomenclature is used in the
     text of 42 U.S.C. § 1983.

140. In November of 2012, Sexton made various public statements
     that were of and concerning the Plaintiff and the
     investigation and prosecution of the complainant's
     allegations.

141. Sexton made these public statements under color of law on
     November 14, 2012.

142. In his public statement, Sexton said, *inter alia*, "We are
     concerned about the fact that he has not registered."

143. Even in lieu of the Plaintiff's actual innocence, the
     Plaintiff did register with the Commonwealth of
     Massachusetts on July 1, 2012.

144. Sexton's false statements were published through the local and national media, and on the internet, conveying these false statements to an audience of hundreds of millions of people.

145. Sexton's false statements were intended to inflame the Ohio, Rhode Island, and Massachusetts communities against the Plaintiff and to compromise the fairness of subsequent judicial proceedings.

146. Sexton's actions evidence a reckless and callous disregard for, and deliberate indifference to, Plaintiff's constitutional rights.

147. As a result of Sexton's false public statements, Plaintiff was seized and deprived of his rights under the Fourth and Fourteenth Amendments to the United States Constitution.

148. As a direct and foreseeable consequence of these deprivations, Plaintiff has suffered economic loss, physical harm, emotional trauma, loss of liberty, loss of privacy, loss of education, and irreparable harm to his reputations.

149. As a further consequence of these deprivations, Plaintiff was required to retain counsel to represent him in the criminal proceedings pursued against him, and incurred

*Nicholas Alahverdian v. State of Ohio, et al. - Complaint*        *April 15, 2013*

expenses associated with defending against the unlawful

criminal proceedings initiated and sustained by Defendants.

<u>CAUSE OF ACTION 5: VIOLATIONS OF 42 U.S.C. § 1983</u>

<u>(*MONELL V. DEP'T OF SOCIAL SERVS.*, 436 U.S. 658 (1977))</u>

<u>(Against the City Defendants and the</u>

<u>Sinclair Community College Defendants)</u>

150. Plaintiff hereby incorporates the foregoing paragraphs.

151. City Defendants and the Sinclair Defendants, are "persons"

as the nomenclature is used in the text of 42 U.S.C. §

1983.

152. By January 2008, the Sinclair Defendants had a policy,

custom, or practice of failing to properly discipline,

supervise, and train police officers, including Gift,

Quatman, Miller, and Hupp. The Sinclair Defendants failed

to ensure that its police officers would:

 a. conduct constitutionally adequate procedures;

 b. obtain probable cause to ensure that suspects would

    not be falsely arrested and maliciously prosecuted;

 c. disclose to prosecutors material information favorable

    to criminal defendants;

 d. disclose all material information, even if favorable

    to a suspect, as imposed by *Brady*; and

 e. never fabricate inculpatory evidence.

*Nicholas Alahverdian v. State of Ohio, et al. - Complaint*        *April 15, 2013*

153. These policies, customs, and practices led Sinclair police officers to believe that misconduct would be tolerated and that allegations of abuse of constitutional rights would not be investigated.

154. The policies, customs, and practices of the Sinclair Police Department articulated herein were the unseen force behind Plaintiff's arrest and prosecution.

   **A. Officials with Final Policymaking Authority for Sinclair Community College Police Approved the Unconstitutional Conduct of Their Subordinates**

155. Upon information and belief, the City Defendants and Sinclair Community College Defendants and other officials in the City of Dayton having final policymaking authority for Sinclair Police had contemporaneous knowledge through the chain of command that Logan, Cook, Gift, Quatman, and Miller were conducting manipulative identification procedures that violated constitutional standards, not interviewing witnesses who had information about Plaintiff's innocence, concealing evidence of Plaintiff's innocence, concealing evidence of corruption in the Dayton Municipal Court Probation Services department, forbidding the Plaintiff from authoring a written statement, failing to record Quatman and Miller's interview with the

Plaintiff, concealing Quatman's termination from the Dayton Police Department, fabricating false evidence, and making false public statements regarding the Plaintiff.

156. It would have plainly obvious to a reasonable policymaker that such conduct would lead to deprivations of Plaintiff's constitutional rights.

157. Upon information and belief, the City Defendants and the Sinclair Community College Defendants nevertheless agreed to, approved, and ratified this unconstitutional conduct by Quatman, Miller, and others.

158. As a direct and foreseeable consequence of these policy decisions, Plaintiff was deprived of his rights under the Fourth and Fourteenth Amendments to the United States Constitution.

**B. Sinclair Police had an Established Policy or Custom Permitting Officers to Publish Premature Conclusions of Criminality and Guilt**

159. Quatman, acting in his official capacity as a police officer of Sinclair Police, pursuant to established custom or policy, and with the acquiescence or approval of City Defendants and Sinclair Defendants, falsely authored a police report stating that the Plaintiff unequivocally and categorically admitted to having sexual contact with the

*Nicholas Alahverdian v. State of Ohio, et al. - Complaint*      *April 15, 2013*

complainant and expressed Sinclair Police Department's official conclusion that the complainant's allegations were substantiated by the "verbal statement" of the Plaintiff.

160. Quatman and Miller, acting pursuant to established customs or policies of the Sinclair Police Department, with the acquiescence or approval of City Defendants, Sinclair Community College Defendants, and other policymaking officials in the Sinclair Police Department, forbid a written statement from the Plaintiff to be entered into the police record or the court docket.

161. As a direct and foreseeable consequence of the custom or policy allowing Sinclair Police officials to publish premature official conclusions and false admissions of criminality and guilt, the Plaintiff was deprived of his rights under the Fourth and Fourteenth Amendments to the United States Constitution.

   **C. Sinclair Police Had an Established Policy or Custom Targeting Sinclair Students for Harassment Through Selective and Improper Enforcement of the Criminal Laws**

162. Upon information and belief, the City Defendants, Sinclair Defendants, and other officials in the City of Dayton and the Sinclair Police established a policy or custom

*Nicholas Alahverdian v. State of Ohio, et al. - Complaint*     April 15, 2013

encouraging Sinclair Police officers to target Sinclair students for selective enforcement of the criminal laws.

163. It would have been plainly obvious to a reasonable policymaker that such conduct would lead to deprivations of Plaintiff's constitutional rights. Indeed, upon information and belief, the City and Sinclair Defendants were aware that they had attempted to effectuate this policy by engaging in selective and malicious prosecution, excessive use of force, manufacturing of false evidence, and filing of false police reports against Sinclair students, yet they consistently failed to take adequate or meaningful steps to discipline those who utilized these tactics, correct the behavior, or terminate the employment of those who would perpetuate this behavior.

164. As a direct and foreseeable consequence of this policy decision, Plaintiff was deprived of his rights under the Fourth and Fourteenth Amendments to the United States Constitution.

**D. Officials with Final Policymaking Authority Failed to Exercise Adequate Supervisory Responsibility over Defendants Quatman and Miller**

165. Upon information and belief, Quatman, Miller, and other officials with final policymaking authority in the Sinclair

*Nicholas Alahverdian v. State of Ohio, et al. - Complaint*     *April 15, 2013*

Police and the City of Dayton agreed that the Sinclair
Police would direct the investigation into the allegations
of sexual imposition and public indecency made by
complainant Mary Grebinski.

166. Before and after Sinclair Police decided to conduct their
investigation, the City Defendants and Sinclair Defendants
and other officials with final policymaking authority at
Sinclair and in the City of Dayton had actual or
constructive knowledge that Quatman and Miller were not
detectives and did not have the experience or training to
direct a complex criminal investigation; that they were
collaborating with Defendant Hupp to render vengeance
against Plaintiff's earlier dispute with Hupp; that Quatman
had a history of unstable, dishonest, and untrustworthy
behavior; that Quatman and Miller forbade the Plaintiff
from speaking in a recorded interview and/or giving him the
opportunity to author a written statement, and that Quatman
and Miller had made verbal and written statements
committing the investigation to a determinate, albeit false
and unjust, outcome.

167. In these circumstances, adequate scrutiny of Quatman's
character, conduct, and background would have made it
plainly obvious to a reasonable policymaker that the

*Nicholas Alahverdian v. State of Ohio, et al. - Complaint*     *April 15, 2013*

decision to permit him to conduct this investigation would
lead to deprivations of Plaintiffs' constitutional rights.

168. After Quatman was allowed to direct the investigation, the
City Defendants and Sinclair Defendants and other officials
with final policymaking authority in the City of Dayton and
Sinclair Community College had actual or constructive
knowledge that Quatman had authorized and/or personally
engaged in decisions from which it would have been plainly
obvious to a reasonable supervisory official that
violations of Plaintiff's constitutional rights inevitably
would occur, including the deviation from due process, the
conspiracy to fabricate and conceal evidence during the
January 30, 2008 evidence, the complete disregard of
defense witnesses, and the subsequent slanderous and
libelous public statement made by Defendant Sexton.
Nevertheless, the City Defendants, Sinclair Defendants and
other officials in the City of Dayton and the Sinclair
Police Department took no corrective action and instead
continued to permit Quatman to conduct the Sinclair Police
investigation, knowing or with reckless disregard or
deliberate indifference to the likelihood that the decision
would result in further violations of Plaintiff's
constitutional rights.

169. As a direct and foreseeable consequence of this policy
     decision, Plaintiff was deprived of his rights under the
     Fourth and Fourteenth Amendments to the United States
     Constitution.

   **E. After Being Given Final Policymaking Authority over the
   Sinclair Police Investigation, City of Dayton Defendants
   and Sinclair Defendants Directed Officers to Engage in
   Constitutional Violations**

170. The Sinclair Defendants and City Defendants and other
     officials with final policymaking authority in the City of
     Dayton and the Sinclair Police Department agreed that
     Quatman would direct the Sinclair Police investigation into
     the allegations of sexual imposition and public indecency
     made by complainant Mary Grebinski.

171. By agreeing that Quatman would direct the investigation,
     and by instructing Sinclair Police personnel to continue
     the investigation into the false allegations, the Sinclair
     Defendants, the City of Dayton Defendants, and the Sinclair
     Police Department delegated to Quatman final policymaking
     authority over the investigative procedures implemented by
     the Sinclair Police Department and the Sinclair Police
     personnel involved in the investigation.

172. Acting in this capacity, Quatman used his delegated authority to implement a series of investigative policies and actions that included, among other things, the manufacturing of a false and misleading police report, the suppression of exculpatory evidence, the evidence of his firing from the Dayton Police Department due to his continued dishonesty and lack of integrity, and the lack of interviewing all witnesses.

173. Quatman implemented these policies and actions with knowledge or deliberate indifference to the likelihood that they would result in violations of Plaintiff's constitutional rights.

174. Upon information and belief, the City Defendants, the Sinclair Defendants, and other officials in the City of Dayton and the Sinclair Police nevertheless ratified these investigative policies and actions implemented by Quatman.

175. As a direct and foreseeable consequence of these investigative policies and actions, Plaintiff was deprived of his rights under the Fourth and Fourteenth Amendments to the United States Constitution.

\* \* \*

176. As a direct and foreseeable consequence of each of the foregoing constitutional deprivations caused by

*Nicholas Alahverdian v. State of Ohio, et al. – Complaint*      *April 15, 2013*

policymaking officials, customs and practices, and policies in the City of Dayton and the Sinclair Police Department, Plaintiff has suffered economic loss, physical harm, emotional trauma, loss of liberty, loss of privacy, loss of education, and irreparable harm to his reputation.

177. As a further consequence of these deprivations, Plaintiff was required to retain counsel to represent him in the criminal proceedings pursued against him, and incurred expenses associated with defending against the unlawful criminal proceedings initiated and sustained by Defendants.

<u>CAUSE OF ACTION 6: SUPERVISORY</u>

<u>VIOLATIONS OF 42 U.S.C. § 1983</u>

(Against the City Defendants and Sinclair Defendants in their individual capacities)

178. Plaintiff hereby incorporates the foregoing paragraphs.

179. City Defendants and the Sinclair Community College Defendants, are "persons" as the nomenclature is used in the text of 42 U.S.C. § 1983.

**A. The City Defendants' and Sinclair Defendants' Failure to Supervise the Investigation Resulted in Violations of Plaintiff's Constitutional Rights**

180. In January 2008, Quatman, with the acquiescence or approval of the City Defendants and Sinclair Defendants, assumed

direct responsibility for the police investigation into allegations of sexual imposition and public indecency made by Mary Grebinski.

181. During the course of the investigation, City Defendants and Sinclair Defendants, individually and in concert, engaged in a number of investigative abuses, including not interviewing all witnesses and/or defense witnesses, manufacturing of false evidence, suppression of exculpatory evidence, and manipulation of witness identification procedures.

182. The City Defendants and Sinclair Defendants knew, or should have known, about these abuses and failed to take meaningful preventative or remedial action.

183. The City Defendants and Sinclair Defendants' actions evidenced a reckless and callous disregard for, and deliberate indifference to, Plaintiff's constitutional rights.

184. As a direct and foreseeable consequence of these acts and omissions, Plaintiff was deprived of his rights under the Fourth and Fourteenth Amendments to the United States Constitution.

185. As a direct and foreseeable consequence of these deprivations, Plaintiff has suffered economic loss,

*Nicholas Alahverdian v. State of Ohio, et al. - Complaint*     *April 15, 2013*

physical harm, emotional trauma, loss of liberty, loss of
privacy, loss of education, and irreparable harm to his
reputations.

186. As a further consequence of these deprivations, Plaintiff
was required to retain counsel to represent him in the
criminal proceedings pursued against him, and incurred
expenses associated with defending against the unlawful
criminal proceedings initiated and sustained by Defendants.

**B. The City Defendants and Sinclair Defendants' Failure to
Control and Supervise Quatman, Miller, and Hupp Led to
Violations of Plaintiff's Constitutional Rights.**

187. Upon information and belief, by January 2008, Quatman had a
demonstrated history of dishonesty, lack of integrity,
lying in the course of official police business, ultimately
leading to being fired by the Dayton Police Department, but
continued this behavior at the Sinclair Police Department.
Other officers at Sinclair Police had a demonstrated
history of antagonism against students at Sinclair
Community College, marked by numerous incidents of
excessive use of force, malicious prosecution, and
manufacturing of evidence.

188. The City Defendants and Sinclair Defendants knew or should
have known about Quatman's history and the history of the

other officers, but failed to take meaningful remedial action.

189. In light of Quatman's history, the City Defendants and Sinclair Defendants acted recklessly or with deliberate indifference when they put him in a position to lead the investigation into complainant Mary Grebinski's allegations.

190. The City Defendants and Sinclair Defendants' actions evidenced a reckless and callous disregard for, and deliberate indifference to, Plaintiff's constitutional rights.

191. As a direct and foreseeable consequence of these acts and omissions, Plaintiff was deprived of his rights under the Fourth and Fourteenth Amendments to the United States Constitution.

192. As a direct and foreseeable consequence of these deprivations, Plaintiff has suffered economic loss, physical harm, emotional trauma, loss of liberty, loss of privacy, loss of education, and irreparable harm to his reputations.

193. As a further consequence of these deprivations, Plaintiff was required to retain counsel to represent him in the criminal proceedings pursued against him, and incurred

*Nicholas Alahverdian v. State of Ohio, et al. - Complaint*     *April 15, 2013*

expenses associated with defending against the unlawful

criminal proceedings initiated and sustained by Defendants.

**C. The Sinclair Defendants' Failures to Train, Control, and Supervise Gift Led to Violations of Plaintiff's Constitutional Rights**

194. In January 2008, Gift was the Chief of Police and official

spokesperson of the Sinclair Police Department.

195. Prior to placing him in this role, and during the pendency

of his tenure in that role, the Sinclair Defendants

demonstrated reckless or callous indifference to the rights

of potential criminal suspects by failing to provide Gift

with adequate training regarding the legal and

constitutional dimensions of his position.

196. Under Gift's tenure, multiple lawsuits have been filed

against Gift and the Sinclair Police due to numerous

allegations of constitutional violations, including free

speech and excessive force, *inter alia.*

197. The Sinclair Defendants and Defendant Gift demonstrated

reckless or callous indifference to the rights of potential

criminal suspects by failing to take meaningful action to

correct this conduct.

198. In January 2008, Gift, acting in his role as Chief for the

Sinclair Police Department approved a fabricated police

*Nicholas Alahverdian v. State of Ohio, et al. – Complaint*     April 15, 2013

report expressing the Department's official (yet unsubstantiated and corroborated) conclusion that Mary Grebinski was the victim of sexual imposition and public indecency allegedly perpetrated by the Plaintiff. In addition, Gift unlawfully approved Quatman's fabricated, unsubstantiated, and uncorroborated statement in the report that Plaintiff confessed to involvement in the alleged assault on complainant Mary Grebinski.

199. The Sinclair Defendants and Defendant Gift knew or should have known about the approval of these fabricated and perjured statements, but demonstrated reckless disregard or deliberate indifference by failing to take prompt and meaningful preventative or remedial action.

200. To the contrary, Gift allowed Quatman to author a perjured written statement regarding an alleged confession made by the Plaintiff, which he, in fact, never made.

201. Defendant Gift and the Sinclair Defendants' actions of omission and commission evidenced a reckless and callous disregard for, and deliberate indifference to, Plaintiff's constitutional rights.

202. As a direct and foreseeable consequence of the Sinclair Defendants' failures to train and supervise Gift, Plaintiff

*Nicholas Alahverdian v. State of Ohio, et al. - Complaint*        *April 15, 2013*

was deprived of his rights under the Fourth and Fourteenth Amendments to the United States Constitution.

203. As a direct and foreseeable consequence of these deprivations, Plaintiff suffered economic loss, physical harm, emotional trauma, loss of liberty, loss of privacy, loss of education, and irreparable harm to his reputation.

204. As a further consequence of these deprivations, Plaintiff was required to retain counsel to represent him in the criminal proceedings pursued against him, and incurred expenses associated with defending against the unlawful criminal proceedings initiated and sustained by Defendants.

CAUSE OF ACTION 7: CONSPIRACY

IN VIOLATION OF 42 U.S.C. § 1983

(Against City Defendants and Sinclair Defendants

in their official and individual capacities;)

205. Plaintiff hereby incorporates the foregoing paragraphs.

206. City Defendants and the Sinclair Community College Defendants, are "persons" as the nomenclature is used in the text of 42 U.S.C. § 1983.

207. Under color of state law, Defendants conspired and entered into express and/or implied agreements, understandings, or meetings of the minds among themselves to deprive Plaintiff of his constitutional right by charging and prosecuting the

Plaintiff on charges of sexual imposition and public
indecency, which these Defendants knew were not supported
by probable cause.

208. City Defendants and Sinclair Defendants willfully
participated in this illegal objective by various means,
with the intent to further some purpose of the conspiracy,
including, for example:

a. publishing false and inflammatory public statements
regarding Plaintiff;

b. manufacturing and approving the phony "confession"
allegedly made by the Plaintiff in his interview;

c. entering into the aforementioned photograph conspiracy to
fabricate and conceal the fact that no evidence of
masturbation or ejaculation was found;

d. disregarding and failing to interview alibi and other
defense witnesses;

e. agreeing to make false and materially incomplete
statements before the Dayton Municipal Court and in
police reports;

f. fabricating additional false evidence during and after
the January 30, 2008 interview, such as Quatman's "case
notes" that were possessed by Defendants Cook and Logan,
and Quatman's "interview" of Plaintiff; and

*Nicholas Alahverdian v. State of Ohio, et al. - Complaint*      *April 15, 2013*

g. making false statements to the Dayton Municipal Court and the Plaintiff's defense counsel in an effort to conceal the unlawful conspiracy.

209. City Defendants and Sinclair Defendants' actions evidenced a reckless and callous disregard for, and deliberate indifference to, Plaintiff's constitutional rights.

210. As a direct and foreseeable consequence of this conspiracy, Plaintiff was deprived of his rights under the Fourth and Fourteenth Amendments to the United States Constitution.

211. As a direct and foreseeable consequence of these deprivations, Plaintiff has suffered economic loss, physical harm, emotional trauma, loss of liberty, loss of privacy, loss of education, and irreparable harm to his reputation.

212. As a further consequence of these deprivations, Plaintiff was required to retain counsel to represent him in the criminal proceedings pursued against him, and incurred expenses associated with defending against the unlawful criminal proceedings initiated and sustained by Defendants.

<u>CAUSE OF ACTION 8: CONSPIRACY IN VIOLATION</u>

<u>OF 42 U.S.C. § 1985(2) (OBSTRUCTION OF JUSTICE)</u>

<u>(Against City Defendants and Sinclair Defendants</u>

<u>in their Official and Individual Capacities)</u>

213. Plaintiff hereby incorporates the foregoing paragraphs.

214. City Defendants and the Sinclair Community College Defendants, are "persons" as the nomenclature is used in the text of 42 U.S.C. § 1983.

215. Under color of state law, the City Defendants and Sinclair Defendants conspired and entered into express and/or implied agreements, understandings, or meetings of the minds among themselves for the purpose of impeding, hindering, obstructing and defeating the due course of justice in the State of Ohio, with the intent to deny Plaintiff the equal protection of the law.

216. The actions of the City Defendants and the Sinclair Defendants evidenced a reckless and callous disregard for, and deliberate indifference to, Plaintiff's constitutional rights.

217. As a direct and foreseeable consequence of this conspiracy, Plaintiff was deprived of his rights under the Fourth and Fourteenth Amendments to the United States Constitution.

218. As a direct and foreseeable consequence of these deprivations, Plaintiff has suffered economic loss, physical harm, emotional trauma, loss of liberty, loss of privacy, loss of education, and irreparable harm to his reputation.

*Nicholas Alahverdian v. State of Ohio, et al. - Complaint*      *April 15, 2013*

219. As a further consequence of these deprivations, Plaintiff was required to retain counsel to represent him in the criminal proceedings pursued against him, and incurred expenses associated with defending against the unlawful criminal proceedings initiated and sustained by Defendants.

CAUSE OF ACTION 9: CONSPIRACY IN

VIOLATION OF 42 U.S.C. § 1985(2) (WITNESS TAMPERING)

(Against City Defendants and Sinclair Defendants

in their individual and official capacities)

220. Plaintiff hereby incorporates the foregoing paragraphs.

221. City Defendants and the Sinclair Community College Defendants, are "persons" as the nomenclature is used in the text of 42 U.S.C. § 1985.

222. Under color of state law, the City Defendants and the Sinclair Defendants conspired and entered into express and/or implied agreements, understandings, or meetings of the minds among themselves for the purpose of deterring alibi and other defense witnesses by failing to interview, contact and/or call them, thereby preventing them from attending the Dayton Municipal Court and testifying freely, fully, and truthfully to matters that these Defendants knew were, or would be, pending therein.

*Nicholas Alahverdian v. State of Ohio, et al. - Complaint*     *April 15, 2013*

223. The City Defendants and Sinclair Defendants' actions evidenced a reckless and callous disregard for, and deliberate indifference to, Plaintiff's constitutional rights.

224. As a direct and foreseeable consequence of this conspiracy, Plaintiff was deprived of his rights under the Fourth and Fourteenth Amendments to the United States Constitution.

225. As a direct and foreseeable consequence of these deprivations, Plaintiff has suffered economic loss, physical harm, emotional trauma, loss of liberty, loss of privacy, loss of education, and irreparable harm to his reputation.

226. As a further consequence of these deprivations, Plaintiff was required to retain counsel to represent him in the criminal proceedings pursued against him, and incurred expenses associated with defending against the unlawful criminal proceedings initiated and sustained by Defendants.

CAUSE OF ACTION 10: CONSPIRACY

IN VIOLATION OF 42 U.S.C. § 1985(3)

(Against City Defendants and Sinclair Defendants

in their individual and official capacities)

227. Plaintiff hereby incorporates the foregoing paragraphs.

228. City Defendants and the Sinclair Community College Defendants, are "persons" as the nomenclature is used in the text of 42 U.S.C. § 1985.

229. Under color of state law, City Defendants and Sinclair Defendants conspired and entered into express and/or implied agreements, understandings, or meetings of the minds among themselves for the purpose of depriving, either directly or indirectly, Plaintiff of the equal protection of the law and of their equal privileges and immunities under the law.

230. City Defendants and Sinclair Defendants' actions evidenced a reckless and callous disregard for, and deliberate indifference to, Plaintiff's constitutional rights.

231. As a direct and foreseeable consequence of this conspiracy, Plaintiff was deprived of his rights under the Fourth and Fourteenth Amendments to the United States Constitution.

232. As a direct and foreseeable consequence of these deprivations, Plaintiff has suffered economic loss, physical harm, emotional trauma, loss of liberty, loss of privacy, loss of education, and irreparable harm to his reputation.

233. As a further consequence of these deprivations, Plaintiff was required to retain counsel to represent him in the

*Nicholas Alahverdian v. State of Ohio, et al. - Complaint*     *April 15, 2013*

criminal proceedings pursued against him, and incurred

expenses associated with defending against the unlawful

criminal proceedings initiated and sustained by Defendants.

CAUSE OF ACTION 11:

CONSPIRACY IN VIOLATION OF 42 U.S.C. § 1986

(Against the State of Ohio, City Defendants, Sinclair

Defendants, and Attorney Defendants in their

individual and official capacities)

234. Plaintiff hereby incorporates the foregoing paragraphs.

235. The State of Ohio, City Defendants, Sinclair Defendants,

Attorney Defendants, and Wehner are "persons" as the

nomenclature is used in the text of 42 U.S.C. § 1986.

236. The State of Ohio, City Defendants, Sinclair Defendants,

Attorney Defendants, and Wehner had prior knowledge of the

wrongs conspired to be committed by Defendants Henderson,

Logan, Cook, Sexton, Gift, Quatman, Miller, Hupp, Dubel,

Greger, and Fricker.

237. The State of Ohio, City Defendants, Sinclair Defendants,

Attorney Defendants, and Wehner had the power to prevent or

aid in preventing the commission of the wrongs conspired to

be committed by Defendants Henderson, Logan, Cook, Sexton,

Gift, Quatman, Miller, Hupp, Dubel, Greger, and Fricker,

and which by reasonable diligence could have been

*Nicholas Alahverdian v. State of Ohio, et al. - Complaint*       *April 15, 2013*

prevented, but they neglected and/or refused to exercise
such power.

238. As a direct and proximate result of the neglect and/or
refusal of the State of Ohio, City Defendants, Sinclair
Defendants, Attorney Defendants, and Wehner to prevent or
to aid in preventing the commission of the wrongs conspired
to be committed by Defendants Henderson, Logan, Cook,
Sexton, Gift, Quatman, Miller, Hupp, Dubel, Greger, and
Fricker, the Plaintiff suffered injuries and damages as
alleged herein.

239. The State of Ohio, City Defendants, Sinclair Defendants,
Attorney Defendants, and Wehner's actions evidenced a
reckless and callous disregard for, and deliberate
indifference to, Plaintiff's constitutional rights.

240. As a direct and foreseeable consequence of this conspiracy,
Plaintiff was deprived of his rights under the Fourth and
Fourteenth Amendments to the United States Constitution.

241. As a direct and foreseeable consequence of these
deprivations, Plaintiff has suffered economic loss,
physical harm, emotional trauma, loss of liberty, loss of
privacy, loss of education, and irreparable harm to his
reputation.

*Nicholas Alahverdian v. State of Ohio, et al. - Complaint*     April 15, 2013

242. As a further consequence of these deprivations, Plaintiff
     was required to retain counsel to represent him in the
     criminal proceedings pursued against him, and incurred
     expenses associated with defending against the unlawful
     criminal proceedings initiated and sustained by Defendants.

<u>CAUSE OF ACTION 12:</u>

<u>MALICIOUS PROSECUTION AND CONSPIRACY</u>

<u>(Against State of Ohio, City Defendants,</u>

<u>and Sinclair Defendants)</u>

243. Plaintiff hereby incorporates the foregoing paragraphs.

244. Beginning on January 30, 2008, the State of Ohio, City
     Defendants, and Sinclair Defendants acting individually and
     in concert, instituted or participated in the institution
     of criminal proceedings against Plaintiff.

245. These proceedings were not supported by probable cause.

246. The State of Ohio, City Defendants, and Sinclair Defendants
     demonstrated malice, spite, ill-will, and wanton disregard
     for Plaintiff's rights by conspiring to manufacture and by
     manufacturing false and misleading police reports with the
     knowledge that these reports would be used to unjustly and
     unlawfully advance and perpetuate the criminal process in
     the Dayton Municipal Court against Plaintiff.

*Nicholas Alahverdian v. State of Ohio, et al. - Complaint*          *April 15, 2013*

247. The State of Ohio, City Defendants, and Sinclair Defendants demonstrated malice, spite, ill-will, and wanton disregard for Plaintiff's rights by conspiring to forbid Plaintiff from submitting a written statement or giving a recorded interview with the knowledge that the lack of a written statement or audio recording of an interview would be detrimental to the advancement and progress of the unjustly and unlawfully initiated criminal process in the Dayton Municipal Court against Plaintiff.

248. The State of Ohio, City Defendants, and Sinclair Defendants demonstrated malice, spite, ill-will, and wanton disregard for Plaintiff's rights by conspiring to manufacture and by manufacturing false and misleading investigative reports and notes with the knowledge that these investigative reports and notes would be used to unjustly and unlawfully advance and perpetuate the criminal process against Plaintiff.

249. The State of Ohio, City Defendants, and Sinclair Defendants further demonstrated malice, spite, ill-will, and wanton disregard for Plaintiffs' rights by attempting to hide photographs of the wall where the alleged assault took place, rather than disclosing the photographs of the location where no evidence was found. Only when complainant

Mary Grebinski mentioned the photos[19] of semen on the wall
did Plaintiff and his defense counsel learn that there were
photos of the location where the alleged assault took
place.

250. The State of Ohio, City Defendants, and Sinclair Defendants
demonstrated malice, spite, ill-will, and wanton disregard
for Plaintiffs' rights by failing to interview or attempt
to interview all witnesses with the purpose of avoiding the
acquisition of witness statements that would exonerate
Plaintiff.

251. The State of Ohio, City Defendants, and Sinclair Defendants
demonstrated malice, spite, ill-will, and wanton disregard
for Plaintiffs' rights by manipulating witness
identification procedures in order to perpetuate the
criminal proceedings against Plaintiff.

252. The State of Ohio, City Defendants, and Sinclair Defendants
demonstrated malice, spite, ill-will, and wanton disregard
for Plaintiffs' rights by making repeated false,
inflammatory, and misleading statements regarding the
Plaintiff.

---

[19] While Defendant Quatman stated in his testimony at then bench trial that there was
no evidence of semen on the wall, Quatman stated (albeit falsely) that the Plaintiff
admitted to masturbating and ejaculating (which was not true). Quatman did not bring
the photographs to the bench trial.

253. As a direct and foreseeable consequence of Defendants'
conduct, Plaintiff was unreasonably and unlawfully
subjected to indictment and criminal prosecution.

254. As a direct and foreseeable consequence of being subjected
to prosecution, Plaintiff has suffered economic loss,
physical harm, emotional trauma, loss of liberty, loss of
privacy, loss of education, and irreparable harm to his
reputation.

255. As a further consequence of these deprivations, Plaintiff
was required to retain counsel to represent him in the
criminal proceedings pursued against him, and incurred
expenses associated with defending against the unlawful
criminal proceedings initiated and sustained by Defendants.

<u>CAUSE OF ACTION 13:</u>

<u>OBSTRUCTION OF JUSTICE AND CONSPIRACY</u>

<u>(Against State of Ohio, City Defendants,</u>

<u>and Sinclair Defendants)</u>

256. Plaintiff hereby incorporates the foregoing paragraphs.

257. Between December 2007 and July 2011, the State of Ohio, the
City of Dayton, Ohio, Dayton Municipal Court, Henderson,
Logan, Cook, Sexton, WCMCCCD, Sinclair Community College,
Johnson, Gift, Quatman, Miller, and Hupp, acting
individually and in concert, engaged in acts that attempted

*Nicholas Alahverdian v. State of Ohio, et al. – Complaint*     *April 15, 2013*

to and did prevent, obstruct, impede, and hinder public and legal justice in the State of Ohio.

258. Defendant State of Ohio, the City of Dayton, Ohio, Dayton Municipal Court, Henderson, Logan, Cook, Sexton, WCMCCCD, Sinclair Community College, Johnson, Gift, Quatman, Miller, and Hupp engaged in this obstruction of justice by conspiring to manufacture and by manufacturing false and misleading police reports and investigation notes with the knowledge that these reports would be used to advance and perpetuate the criminal process against Defendants.

259. State of Ohio, the City of Dayton, Ohio, Dayton Municipal Court, Henderson, Logan, Cook, Sexton, WCMCCCD, Sinclair Community College, Johnson, Gift, Quatman, Miller, Hupp, Law Office of the Public Defender, Wehner, Dubel, Greger, and Fricker engaged in this obstruction of justice by conspiring to manufacture and by manufacturing false and misleading police reports and investigation notes with the knowledge that these reports would be used to advance and perpetuate the criminal process against Plaintiff.

260. State of Ohio, the City of Dayton, Ohio, Dayton Municipal Court, Henderson, Logan, Cook, Sexton, WCMCCCD, Sinclair Community College, Johnson, Gift, Quatman, Miller, and Hupp engaged in this obstruction of justice by attempting to

*Nicholas Alahverdian v. State of Ohio, et al. - Complaint*        *April 15, 2013*

hide and/or fail to collect and/or disclose evidence

including, but not limited to:

   a.   exculpatory evidence in photographs[20] of the scene

        where the alleged assault took place; and/or

   b.   Quatman's firing[21] from the Dayton Police Department;

        and/or

   c.   Quatman's substantiated pattern of dishonest

        behavior in his official capacity as a police

        officer; and/or

   d.   a written statement or audio and/or video recording

        of the interview with Plaintiff on January 30, 2008.

261. State of Ohio, the City of Dayton, Ohio, Dayton Municipal

     Court, Henderson, Logan, Cook, Sexton, WCMCCCD, Sinclair

     Community College, Johnson, Gift, Quatman, Miller, and Hupp

     engaged in this obstruction of justice by refusing^failing

     to interview or attempt to interview all witnesses with the

     purpose of avoiding the acquisition of witness statements

     that would exonerate Plaintiff.

_____

[20] The photographs were taken on January 30, 2008 - the date that complainant Mary Grebinski made her allegation to the Sinclair Police Department

[21] As stated previously, *Brady v. Maryland* holds that prosecutors are required to notify defendants and their attorneys whenever a law enforcement official involved in their case has a sustained record for knowingly lying in an official capacity. Quatman was terminated as a police officer of the City of Dayton in August 2004 because he was charged with "failing to be an actual resident of [...] Dayton, [...] in violation of the Dayton City Charter, [and] misusing a city vehicle and abusing sick leave privileges." Quatman was found guilty of all charges and was discharged from his position as a police officer. "The discharge order notified Quatman that he had ten days to file an appeal to the Civil Service Board. Quatman did not file an appeal[.]"

*Nicholas Alahverdian v. State of Ohio, et al. - Complaint*     April 15, 2013

262. State of Ohio, the City of Dayton, Ohio, Dayton Municipal

Court, Henderson, Logan, Cook, Sexton, WCMCCCD, Sinclair

Community College, Johnson, Gift, Quatman, Miller, and Hupp

engaged in this obstruction of justice by manipulating

witness identification procedures in order to perpetuate

the criminal proceedings against Plaintiff.

263. As a direct and foreseeable consequence of Defendants'

conduct, Plaintiff was unreasonably and unlawfully

subjected to an indictment and criminal prosecution that

were sustained by Defendants' continuing unlawful actions.

264. As a direct and foreseeable consequence of these

deprivations, Plaintiff has suffered economic loss,

physical harm, emotional trauma, loss of liberty, loss of

privacy, loss of education, and irreparable harm to his

reputation.

265. As a further consequence of these deprivations, Plaintiff

was required to retain counsel to represent him in the

criminal proceedings pursued against him, and incurred

expenses associated with defending against the unlawful

criminal proceedings initiated and sustained by Defendants.

<u>CAUSE OF ACTION 14:</u>

<u>INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS AND CONSPIRACY</u>

*Nicholas Alahverdian v. State of Ohio, et al. – Complaint*     *April 15, 2013*

<u>(Against State of Ohio, the City of Dayton, Ohio, Dayton</u>

<u>Municipal Court, Henderson, Logan, Cook, Sexton, WCMCCCD,</u>

<u>Sinclair Community College, Johnson,</u>

<u>Gift, Quatman, Miller, and Hupp)</u>

266.  Plaintiff hereby incorporates the foregoing paragraphs.

267.  Defendants State of Ohio, the City of Dayton, Ohio, Dayton
      Municipal Court, Henderson, Logan, Cook, Sexton, WCMCCCD,
      Sinclair Community College, Johnson, Gift, Quatman, Miller,
      and Hupp acted individually and in concert to manufacture
      inculpatory evidence and to conceal exculpatory evidence
      for the purpose of perpetuating a criminal action against
      Plaintiff, falsely charging him with sexual imposition and
      public indecency — charges that were calculated to shame,
      to humiliate, and to produce public condemnation of the
      Plaintiff.

268.  State of Ohio, the City of Dayton, Ohio, Dayton Municipal
      Court, Henderson, Logan, Cook, Sexton, WCMCCCD, Sinclair
      Community College, Johnson, Gift, Quatman, Miller, and Hupp
      repeatedly made false, insulting, offensive, and
      inflammatory statements about Plaintiff calculated to
      shame, to humiliate, and to produce public condemnation of
      the Plaintiff.

*Nicholas Alahverdian v. State of Ohio, et al. - Complaint*     *April 15, 2013*

269.  State of Ohio, the City of Dayton, Ohio, Dayton Municipal
      Court, Henderson, Logan, Cook, Sexton, WCMCCCD, Sinclair
      Community College, Johnson, Gift, Quatman, Miller, and
      Hupp, acting individually and in concert, disregarded
      defense witnesses and manipulated witness identification
      procedures with the intention of perpetuating criminal
      proceedings against Plaintiff.

270.  In combination with conduct described above, these actions
      evidenced a pattern of extreme and outrageous behavior
      pursued with the intent to cause Plaintiff to suffer severe
      emotional distress.

271.  Defendants' conduct had the direct and foreseeable
      consequence of marking Plaintiff as a violent criminal and
      registered sex offender in the minds of hundreds of
      thousands of people throughout Ohio all the way to
      Cambridge, Massachusetts and Providence, Rhode Island.

272.  Defendants' conduct had the further consequence of making
      Plaintiff into a public pariah, subjecting him to extreme[22]
      and sustained public[23] obloquy, causing him to endure death
      threats, taunts, and insults, and subjecting him to
      assaults by the local media in the Boston, Providence, and
      Ohio markets; as well as on the Internet.

_____

[22] See various mugshot websites with images

[23] See Sexton's statement to the press

273.   Despite Plaintiff invoking his constitutional right and
       demand to a jury trial, and despite Plaintiff's demand to
       testify in his own defense, the public will continue to
       assume that Plaintiff had a fair trial, while in fact, the
       essential elements of a trial by jury, that is, the right
       to cross-examine witnesses and the right to testify in
       one's own defense, were not afforded to the Plaintiff in
       violation of the Ohio and United States Constitutions.
       Defendants' conduct will continue to have deleterious
       effects on Plaintiff, who will forever be associated with
       the false allegations advanced by Defendants and repeatedly
       publicized by Sexton and the Dayton Municipal Court.

274.   As a result of Defendants' intentional and outrageous
       conduct, Plaintiff has suffered, suffers, and will continue
       to suffer from emotional and mental conditions generally
       recognized and diagnosed by trained professionals.

275.   As a direct and foreseeable consequence of those
       conditions, Plaintiff has suffered, suffers, and will
       continue to suffer from disabling emotional, mental, and
       physical harm.

        CAUSE OF ACTION 15: NEGLIGENCE BY SINCLAIR POLICE

          (Against WCMCCCD, Sinclair Community College,

            Johnson, Gift, Quatman, Miller, and Hupp)

276. Plaintiff hereby incorporates the foregoing paragraphs.

277. At the time of the Sinclair Police Statements described
     above, Defendants WCMCCCD, Sinclair Community College,
     Johnson, Gift, Quatman, Miller, and Hupp each owed
     Plaintiff a duty to use due care with respect to his public
     statements concerning the investigation of complainant
     Grebinski's claims.

278. At the time of the events alleged above, Defendants
     WCMCCCD, Sinclair Community College, Johnson, Gift,
     Quatman, Miller, and Hupp owed Plaintiff a duty to use due
     care with respect to the investigation of complainant
     Grebinski's allegations.

279. At the time they made their respective Sinclair Police
     Statements, Defendants Quatman and Miller each knew or
     should have known that such statements were false and
     inflammatory and likely to cause Plaintiff harm.

280. At the time WCMCCCD, Sinclair Community College, Johnson,
     and Gift committed the acts and omissions alleged above,
     they, as supervisors, knew or should have known that the
     conduct perpetrated by their subordinates violated or
     departed from Sinclair Police policies and procedures,
     violated or departed from professional standards of

conduct, violated constitutional rights, and were likely to cause Plaintiff harm.

281. In committing the aforementioned acts and/or omissions, WCMCCCD, Sinclair Community College, Johnson, and Gift negligently breached said duties to use due care, which directly and proximately resulted in the injuries and damages to the Plaintiff as alleged herein.

CAUSE OF ACTION 16: NEGLIGENT SUPERVISION, HIRING, TRAINING, DISCIPLINE, AND RETENTION BY WCMCCCD, SINCLAIR POLICE AND SINCLAIR COMMUNITY COLLEGE

(Against the Sinclair Defendants in their individual and official capacities)

282. Plaintiff hereby incorporates the foregoing paragraphs.

283. At the time of the events alleged above, each of the Sinclair Defendants owed Plaintiff a duty to use due care in the hiring, training, supervision, discipline, and retention of Sinclair Police personnel, including the personnel involved in the investigation of complainant Grebinski's claims.

284. The Sinclair Defendants negligently hired, retained, and supervised Defendant Quatman by concluding that Quatman's dishonorable termination from the Dayton Police Department was insufficient cause for Quatman's application for

*Nicholas Alahverdian v. State of Ohio, et al. - Complaint*     April 15, 2013

employment to be denied. Moreover, the Sinclair Defendants erroneously assumed that evidence affecting the credibility of Quatman as a witness was insufficient to tarnish his integrity as a police officer or a witness. The information about Quatman's termination from the Dayton Police Department is mentioned nowhere in the court record or the trial transcript, violating the *Brady* rule.

CAUSE OF ACTION 17: VIOLATIONS OF 42 U.S.C. § 1983

AND THE FOURTEENTH AMENDMENT

(*BRADY V. MARYLAND,* 373 U.S. 83 (1963))

(Against the City of Dayton, Dayton Municipal Court, Henderson, Logan, Cook, WCMCCCD, Sinclair, Johnson, Gift, and Quatman)

285. Plaintiff hereby incorporates the foregoing paragraphs.

286. Defendants City of Dayton, Dayton Municipal Court, Henderson, Logan, Cook, Sexton, WCMCCCD, Johnson, Gift, and Quatman are "persons" as the nomenclature is used in the text of 42 U.S.C. § 1983.

287. Defendants City of Dayton, Dayton Municipal Court, Henderson, Logan, Cook, WCMCCCD, Sinclair, Johnson, Gift, and Quatman failed to disclose to the defense attorney material information that was favorable to Plaintiff. This undisclosed information included Quatman's reasons for being terminated from the Dayton Police Department. This

*Nicholas Alahverdian v. State of Ohio, et al. - Complaint*      *April 15, 2013*

information included "failing to be an actual resident of
[...] Dayton, [...] in violation of the Dayton City
Charter, [and] misusing a city vehicle and abusing sick
leave privileges."[24]

288. Defendants City of Dayton, Dayton Municipal Court,
Henderson, Logan, Cook, WCMCCCD, Sinclair, Johnson, Gift,
and Quatman failed to disclose that there were photographs
taken of the scene where complainant Grebinski falsely
alleged that Plaintiff ejaculated on the wall and that no
evidence was found at that scene.

289. Acting with deliberate indifference by withholding these
material exculpatory and impeachment evidence prior to
trial, Defendants City of Dayton, Dayton Municipal Court,
Henderson, Logan, Cook, WCMCCCD, Sinclair, Johnson, Gift,
and Quatman violated Plaintiff's clearly established
Fourteenth Amendment right to due process of law as
interpreted the United States Supreme Court in *Brady v.
Maryland* and its progeny. This directly and proximately
caused Plaintiff to be wrongly convicted and to suffer the
injuries and damages outlined herein.

290. Upon information and belief, Henderson, Logan, Cook,
Johnson, Gift, and Quatman conspired, reached a mutual

---

[24] *Dayton v. Fraternal Order of Police,* 2006-Ohio-3854 at 4.

*Nicholas Alahverdian v. State of Ohio, et al. - Complaint*     *April 15, 2013*

understanding and acted in concert to violate Plaintiff's

civil rights.

291. In furtherance of the conspiracy, Defendants undertook

overt acts, including without limitation the following:

    a. Suppressed exculpatory evidence in favor of Plaintiff

       and fabricated inculpatory evidence against Plaintiff.

    b. Deliberately lost, forgot, or destroyed photographs

       that were favorable to the Plaintiff because there was

       no evidence of ejaculate in the hallway.

    c. Omitted from the record Quatman's tarnished personnel

       file in violation of 42 U.S.C. § 1983, the Fourteenth

       Amendment, and *Brady v. Maryland,* 373 U.S. 83 (1963).

292. Defendants' conspiracy directly caused the constitutional

deprivations suffered by Plaintiff including his false

arrest, malicious prosecution, unfair trial, wrongful

conviction and unlawful confinement, and all the other

grievous permanent damages and injuries set forth herein.

293. Since the *Brady v. Maryland* United States Supreme Court

decision was handed down, prosecutors have been forced to

include evidence affecting the credibility of the police

officer that is found in a police officer's personnel file.

Evidence that the officer has a sustained pattern of

untruthfulness is clearly exculpatory to the accused and

the defense team. Under the *Brady* rule, the defense has the right to examine all evidence that may be of an exculpatory nature.[25]

294. Today, *Brady* and its progeny impose on the prosecution a "duty to learn of"[26] and disclose to the defense all "favorable,"[27] "material"[28] information[29] "known to the others acting on the government's behalf in the case, including the police,"[30] a group commonly referred to as "the prosecution team."[31] The prosecution must proactively disclose this information at a time and in a manner to "allow the defense to use the favorable material effectively"[32] – which means well before trial because "the due process obligation under *Brady* disclose exculpatory information is [to] allow defense counsel an opportunity to investigate the facts of the case and, with the help of the

---

[25] In 1963 the Supreme Court ruled in *Brady v. Maryland* that the defense has the right to examine all evidence that may be of an exculpatory nature. This landmark case stands for the proposition that the prosecution will not only release evidence that the defendant might be guilty of a crime but also release all evidence that might show that the defendant is innocent as well.

[26] *Kyles v. Whitley*, 514 U.S. 419, 437 (1995.

[27] *Brady*, 373 U.S. at 87.

[28] *Id.* at 87.

[29] The prosecution has an obligation to disclose favorable information whether or not it has been documented and whether or not it is itself admissible if it may lead to admissible evidence.

[30] *Kyles*, 514 U.S. at 437.

[31] *See, e.g.,* Deputy Attorney General Guidance Memo, Step 1.A.

[32] *Lindsey v. United States,* 911 A.2d 824, 838 (D.C. 2006).

defendant, craft an appropriate defense."[33] *Brady* is the furthest thing from a technicality - it is a "rule of fairness"[34] derived from the motivating force behind the Court's decision, which was that the belief that "society wins not only when the guilty are convicted but when criminal trials are fair; our system [...] suffers when any accused is treated unfairly."[35] Moreover, the Supreme Court of the United States affirmed that a prosecutor should not be the "architect of a proceeding that does not comport with standards of justice."[36]

295. Defendant Quatman's termination from the Dayton Police Department constitutes negligent supervision and hiring practice because the facts leading up to the dishonorable dismissal are probative of Quatman's integrity and his ability to testify truthfully in a court of law. The

---

[33] *Perez v. United States,* 968 A.2d 39, 66 (D.C. 2009).

[34] *Curry v. United States,* 658 A.2d 193, 197 (D.C. 1995).

[35] *Brady,* 373 U.S. at 87.

[36] *Brady,* 373 U.S. at 87.

*Nicholas Alahverdian v. State of Ohio, et al. - Complaint*     April 15, 2013

Sinclair Defendants, however, did not assess the risk of dishonesty imputed to the hiring of Quatman.[37]

296. The Sinclair Defendants negligently supervised Defendant Quatman by failing to reject his application, but instead employ him and assign him to the police investigation into Grebinski allegations notwithstanding prior allegations of Quatman's misconduct with respect to his level of personal integrity and/or ability to be honest in his official capacity as a law enforcement officer.

297. The Sinclair Defendants negligently supervised Defendants Gift, Miller, Quatman, and Hupp, and failed to provide them with proper training, and failed to outline proper procedure to them in various respects relating to the

---

[37] *Brady* evidence includes any information that tends to cast doubt on the admissibility of the government's evidence. *Gaither v. United States,* 759 A.2d 791 (D.C. 2003); *Smith,* 666 A.2d at 1224–25 (information that could have undermined admission of statement as excited utterance "require[d] disclosure under *Brady*"); *James v. United States,* 580 A.2d 636 (D.C. 1990) (same); USAM § 9- 5.001.C.2 (requiring disclosure of information that "might have a significant bearing on the admissibility of prosecution evidence"); *see also* D. MASS. L. R. 116.2(A)(2) (requiring disclosure of any information that "tends to . . . cast doubt on the admissibility of evidence that the government anticipates offering in its case-in-chief").

Note: Furthermore, *Brady* evidence also includes acts of a witness that are probative of untruthfulness. *United States v. Cuffie,* 80 F.3d 514, 515 (D.C. Cir. 1996) (prosecution violated its *Brady* obligations where it failed to disclose fact of key witness's perjury in a Superior Court proceeding to expunge the arrest record of his cousin); *United States v. Quinn,* 537 F.Supp.2d 99, 109 (D.D.C. 2008) (government conceded and court held that when the prosecution "has information about a witness who it is planning to call in its case in chief that indicates the witness has lied to the government about material matters during the course of the investigation, that information is *Brady* material"); *Bennett v. United States,* 797 A.2d 1251, 1255-58 (D.C. 2002) (*Brady* violation because government suppressed information that key witness had lied to the police or the grand jury about an unrelated murder); DAG Guidance Memo, Step 1.B.7 (requiring review for potential disclosure "prior acts under Fed. R. Evid. 608"); *see also; Benn v. Lambert,* 283 F.3d 1040, 1055 (9th Cir. 2002) (*Brady* violation for failing to disclose prior acts of theft and lying by government witness and citing cases noting that such failures are material even if separate impeachment evidence concerning such a witness is disclosed.

appropriate conduct of criminal investigations, including

by way of example:

    a. the appropriate chain of command in criminal

       investigations;

    b. the reading of *Miranda* rights;

    c. the standards for collecting a written statement from

       the accused;

    d. interviewing all witnesses, even if their accounts may

       be favorable to the accused;

    e. the standards for police reports, investigator's

       notes, and other reports of investigations, including

       the timely and truthful preparation of such documents;

    f. the standards for probable cause.

298. The Sinclair Defendants further negligently supervised

Gift, Miller, Quatman, and Hupp by ignoring evidence

demonstrating the misconduct underlying the investigation,

and instead, continuing to allow Quatman and Miller to have

primary responsibility for the police investigation and

having Quatman and Miller continue to serve on that

investigation.

299. The Sinclair Defendants further negligently supervised

Quatman by ignoring the false statements in his incident

report, failing to retract such statements, failing to

*Nicholas Alahverdian v. State of Ohio, et al. - Complaint*       *April 15, 2013*

reprimand Quatman for such statements, and failing to
remove Quatman from his role as a police officer for the
Sinclair Police Department because of his inability to be
honest in his dealings as a police officer. To the
contrary, Quatman was allowed to testify in open court
during the bench trial with respect to his false
statements.

300. In committing the aforementioned acts or omissions, each
Sinclair Defendant negligently breached said duty to use
due care, which directly and proximately resulted in the
injuries and damages to Plaintiff as alleged herein.

<u>CAUSE OF ACTION 18:</u>

<u>NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS BY SINCLAIR POLICE</u>

<u>(Against Sinclair Defendants)</u>

301. Plaintiff hereby incorporates the foregoing paragraphs.

302. Gift, Quatman, Miller, Hupp and the Sinclair Defendants
acted individually and in concert to manufacture false
evidence and to conceal the evidence of Plaintiff's
innocence for the purpose of charging and prosecuting the
Plaintiff on charges of sexual imposition and public
indecency, which charges they knew or reasonably believed
were false and unsupported by probable cause.

*Nicholas Alahverdian v. State of Ohio, et al. - Complaint*      *April 15, 2013*

303. Gift, Quatman, Miller, Hupp and the Sinclair Defendants' conduct subjected Plaintiff to public obloquy, made him a pariah in Ohio, Massachusetts, and Rhode Island and forced him to endure harsh media scrutiny.

304. Gift, Quatman, Miller, Hupp and the Sinclair Defendants' conduct violated or departed from Sinclair Police policies and procedures.

305. Gift, Quatman, Miller, Hupp and the Sinclair Defendants were negligent in engaging in this conduct, from which it was reasonably foreseeable that Plaintiff would suffer emotional and psychological harm.

306. As a direct and foreseeable consequence of Gift, Quatman, Miller, Hupp and the Sinclair Defendants' conduct, Plaintiff has suffered and continues to suffer from diagnosable emotional and mental conditions causing disabling emotional, mental, and physical harm.

CAUSE OF ACTION 19: NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

BY SINCLAIR POLICE (SINCLAIR POLICE STATEMENTS)

(Against Gift, Quatman, Miller,

Hupp and the Sinclair Defendants)

307. Plaintiff hereby incorporates the foregoing paragraphs.

308. Quatman and the Sinclair Defendants acted individually and in concert to publish false and inflammatory statements

*Nicholas Alahverdian v. State of Ohio, et al. - Complaint*      April 15, 2013

accusing Plaintiff of criminal conduct, including sexual
imposition and public indecency, ignoring the evidence of
Plaintiff's innocence and that no crime had been charged,
let alone occurred. Specifically, Quatman and the Sinclair
Defendants falsely stated in the police report that the
Plaintiff "basically agreed with what Mary [Grebinski] said
except that she was the aggressor."

309. Quatman and the Sinclair Defendants' conduct subjected
Plaintiff to public obloquy, made him a pariahs in his
community, and forced him to endure harsh media scrutiny.

310. Quatman and the Sinclair Defendants' were negligent in
engaging in this conduct, from which it was reasonably
foreseeable that Plaintiff would suffer emotional and
psychological harm.

311. As a direct and foreseeable consequence of Quatman and the
Sinclair Defendants' conduct, Plaintiff has suffered,
suffers, and will continue to suffer from diagnosable
emotional and mental conditions causing disabling
emotional, mental, and physical harm.

## CAUSE OF ACTION 20: MEDICAL MALPRACTICE

### (Against the Psychologist Defendants (David Roush & Associates, LLC; David Henry Roush, Psy.D.; and Lauren Cimperman, Psy.D.))

312. Plaintiff hereby incorporates the foregoing paragraphs.

*Nicholas Alahverdian v. State of Ohio, et al. - Complaint*     April 15, 2013

313.  Defendants David Roush & Associates, LLC; David Henry
      Roush, Psy.D.; and Lauren Cimperman, Psy.D., acting
      directly and/or through their actual and/or apparent and/or
      ostensible agents and/or employees, intentionally deviated
      and departed from the standard of care applicable to like
      psychologists and/or other healthcare professionals and
      personnel in general under similar conditions and like
      surrounding circumstances as presented herein in their care
      and treatment of the Plaintiff. Defendants are liable under
      Ohio Adm. Code 4732-17-01(J)(2) for damages for personal
      injuries caused by the Defendants' negligence, fraud,
      misrepresentation, and deception.

314.  Defendant David Roush & Associates, LLC and David Henry
      Roush, Psy.D. intentionally and/or negligently attempted to
      deceive Plaintiff in order to elicit information in
      violation of Ohio Adm. Code 4732-17-01(J)(2).

315.  Lauren Cimperman, Psy.D., intentionally and/or negligently
      misrepresented Plaintiff's medical and psychological
      condition, perjured a pre-sentence investigation, and
      attempted to deceive Plaintiff in order to elicit
      information in violation of Ohio Adm. Code 4732-17-01(J)
      (2).

*Nicholas Alahverdian v. State of Ohio, et al. - Complaint*        *April 15, 2013*

316. Defendants David Roush & Associates, LLC; David Henry
     Roush, Psy.D.; and Lauren Cimperman, Psy.D. failed to
     exercise that degree of skill, care and diligence as was
     required for the proper assessment and treatment of
     Plaintiff.

317. The deviations and departures from the standard of care
     required of psychologists and healthcare professionals in
     general under similar conditions and like surrounding
     circumstances proximately caused and/or contributed to
     cause Plaintiff to sustain permanent and irreversible
     injuries and deficits.

318. Had the standard of care been complied with by the
     Psychologist Defendants, that is, had the deviations and
     departures from the standard of care stated above not have
     occurred, then it is more likely than not, within a
     reasonable degree of medical probability, that Plaintiff's
     permanent and irreversible injuries and deficits would have
     been prevented.

319. As a direct and proximate result of the negligence of the
     Defendants, Plaintiff suffered permanent mental injuries
     and worsening and/or exacerbation of post-traumatic stress
     disorder.

*Nicholas Alahverdian v. State of Ohio, et al. - Complaint*      *April 15, 2013*

320. As a direct and proximate result of the negligence of the
     Psychologist Defendants, Plaintiff has required and will
     continue to require future medical care and therapies,
     medical equipment, adaptive devices and supplies and other
     related goods and services for his entire life.

321. As a direct and proximate result of the negligence of the
     Defendants, Plaintiff has lost the capacity to labor and to
     earn income, wages, and benefits in the future.

322. As a direct and proximate result of the negligence of the
     Psychologist Defendants, Plaintiff has endured and will
     continue to endure physical and mental pain and suffering,
     and disability.

323. As a direct and proximate result of the negligence of the
     Defendants, Plaintiff has incurred and will continue to
     incur expenses and costs of the care caused by Defendants'
     negligence.

324. Plaintiff is entitled to a recovery against the Defendants
     for all damages allowed by law as shown by the evidence
     upon the trial of this action, including, without
     limitation, damages for all past, present and future
     medical expenses and costs of care, equipment, supplies and
     related items incurred and to be incurred in treating
     Plaintiff as a proximate result of the negligence of the

Psychological Defendants and each of them, in an amount to
be proven at trial; and damages incurred by Plaintiff as a
proximate result of the negligence of the Defendants and
each of them, in an amount to be determined by the
enlightened conscience of the jury.

### CAUSE OF ACTION 21: VIOLATIONS OF 42 U.S.C. § 1983

### AND THE FIFTH AND FOURTEENTH AMENDMENTS

### (UNCONSTITUTIONAL VAGUENESS)

### (Against State of Ohio, DeWine and City Defendants)

325. Plaintiff hereby incorporates foregoing paragraphs.

326. The State of Ohio, DeWine and the City Defendants had a
duty under the Fifth and Fourteenth amendments to the
Constitution of the United States to ensure due process for
the Plaintiff. The State of Ohio, DeWine, and the City
Defendants had a responsibility to ensure that all laws in
the Ohio Revised Code were not vague and did not deprive
citizens of their rights without fair process, and did not
violate due process. The State of Ohio, DeWine, and the
City had a fiduciary duty to ensure that charges brought
against citizens were preceded by a "penal statute [...]
[that is] sufficiently explicit to inform those who are
subject to it what conduct on their part will render them
liable to the penalties... and a statute which either

*Nicholas Alahverdian v. State of Ohio, et al. - Complaint*     *April 15, 2013*

forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application violates the first essential of due process of law."[38]

327. O.R.C. 2907.06,[39] especially 2907.06(B)[40] is void for vagueness and constitutionally vague because, as was demonstrated in the trial and appellate courts in *State v. Rossi*, because "men [...] [did] necessarily guess at its meaning and differ as to its application."[41]

328. The action and inaction of the State of Ohio, Defendant DeWine, and the City Defendants, that is, charging Plaintiff with a crime that had an unconstitutionally vague

---

[38] *Connally v. General Construction Co.*, 269 U.S. 385, 391 (1926).

[39] O.R.C. 2907.06 Sexual imposition: (A) No person shall have sexual contact with another, not the spouse of the offender; cause another, not the spouse of the offender, to have sexual contact with the offender; or cause two or more other persons to have sexual contact when any of the following applies: (1) The offender knows that the sexual contact is offensive to the other person, or one of the other persons, or is reckless in that regard. (2) The offender knows that the other person's, or one of the other person's, ability to appraise the nature of or control the offender's or touching person's conduct is substantially impaired. (3) The offender knows that the other person, or one of the other persons, submits because of being unaware of the sexual contact. (4) The other person, or one of the other persons, is thirteen years of age or older but less than sixteen years of age, whether or not the offender knows the age of such person, and the offender is at least eighteen years of age and four or more years older than such other person. (5) The offender is a mental health professional, the other person or one of the other persons is a mental health client or patient of the offender, and the offender induces the other person who is the client or patient to submit by falsely representing to the other person who is the client or patient that the sexual contact is necessary for mental health treatment purposes. (B) No person shall be convicted of a violation of this section solely upon the victim's testimony unsupported by other evidence. (C) Whoever violates this section is guilty of sexual imposition, a misdemeanor of the third degree. If the offender previously has been convicted of a violation of this section or of section 2907.02, 2907.03, 2907.04, 2907.05, or 2907.12 of the Revised Code, a violation of this section is a misdemeanor of the first degree.

[40] Note: The word "corroboration" appears nowhere in O.R.C. 2907.06(b).

[41] *Connally v. General Construction Co.*, 269 U.S. 385, 391 (1926).

and/or void for vagueness corroboration requirement did not
comport with due process and/or the Fifth and Fourteenth
Amendments to the Constitution of the United States.

329. As a direct and proximate result of the aforesaid conduct
of the State of Ohio, Defendant DeWine, and the City
Defendants, Plaintiff was deprived of life, liberty, and
property without due process of law, and denied Plaintiff
the equal protection of the law.

330. Plaintiff claims damages for the injuries set forth above
and requests permanent and/or temporary injunctive relief
as outlined in the Prayer for Relief.

CAUSE OF ACTION 22: VIOLATIONS OF 42 U.S.C. § 1983

AND THE THIRD AMENDMENT

(RIGHT TO A TRIAL BY JURY)

(Against State of Ohio, City of Dayton, Dayton Municipal Court,

Henderson, Logan, Cook, Sexton, Law Office of the Public

Defender, Wehner, Dubel, and DeWine)

331. Plaintiff hereby incorporates the foregoing paragraphs.

332. Defendants State of Ohio, City of Dayton, Dayton Municipal
Court, Henderson, Logan, Cook, Sexton, Law Office of the
Public Defender, Wehner, Dubel, and DeWine had an
obligation, yet failed to provide for a trial by jury.
Notwithstanding the fact that Plaintiff did not waive his

right to trial by jury, Plaintiff was entitled to such and absent a jury trial, was deprived of his constitutional rights and injured as a direct and proximate result of said failure by Defendants.

333. Defendant Henderson abused his discretion as a trial court judge. Defendant Dayton Municipal Court lacked jurisdiction *ab initio* because Plaintiff was charged with a "serious crime" as opposed to a "petty crime" and was therefore entitled to a jury trial under Ohio and Federal law. Absent a waiver, the trial court lacked jurisdiction to try the Plaintiff.

**A. Is O.R.C. 2907.06 a "serious" or "petty" crime?**

334. Plaintiff, as he was charged with violating O.R.C. 2907.06, risked being required to register for fifteen (15) years as a sex offender. This requirement is so serious that even misdemeanor defendants, such as the Plaintiff, who could face relatively little jail time if convicted, are constitutionally entitled to a trial by jury.

335. An adult is required by Ohio law to register the following information with the Ohio Attorney General and/or the Sheriff's Office in the county in which the registrant resides:

   a. mailing addresses;

*Nicholas Alahverdian v. State of Ohio, et al. - Complaint*        *April 15, 2013*

   b. residences;

   c. fingerprints;

   d. photographs; and

   e. notification within 72 hours of moving.

336. In light of these factors, it is to be concluded that the
     potential being required to register as a sex offender
     reflects a legislative determination that the accused has
     been charged with "serious" crime(s).

337. In O.R.C. 2945.17 (entitled "Right to jury trial), it
     states that "at any trial, in any court, for the violation
     of any statute of this state, or of any ordinance of any
     municipal corporation, except as provided in divisions (B)
     and (C) of this section, the accused has the right to be
     tried by a jury." (B) The right to be tried by a jury that
     is granted under division (A) of this section does not
     apply to a violation of a statute or ordinance that is any
     of the following: (1) A violation that is a minor
     misdemeanor; (2) A violation for which the potential
     penalty does not include the possibility of a prison term
     or jail term and for which the possible fine does not
     exceed one thousand dollars."

338. In O.R.C. 1901.24 (entitled "Demand for jury trial"), it
     states that "a jury trial in a municipal court shall be

*Nicholas Alahverdian v. State of Ohio, et al. - Complaint*     *April 15, 2013*

demanded in the manner prescribed in the Rules of Civil
Procedure or the Rules of Criminal Procedure. [...] The
right of a person to a jury trial in a municipal court is
waived under the circumstances prescribed in the Rules of
Civil Procedure or the Rules of Criminal Procedure."

339. Thus, one is then directed to Rule 23 of the Ohio Rules of
Criminal Procedure, where it states: "In *serious offense
cases*[42] the defendant before commencement of the trial may
knowingly, intelligently and voluntarily waive in writing
his right to trial by jury. Such waiver may also be made
during trial with the approval of the court and the consent
of the prosecuting attorney. In *petty*[43] offense cases, where
there is a right of jury trial, the defendant shall be
tried by the court unless he demands a jury trial. Such
demand must be in writing and filed with the clerk of court
not less than ten days prior to the date set for trial, or
on or before the third day following receipt of notice of
the date set for trial, whichever is later. Failure to
demand a jury trial as provided in this subdivision is a
complete waiver of the right thereto." In Rule 2, we see
that a "'[s]erious offense' means any felony, and any
misdemeanor for which the penalty prescribed by law

_____

[42] Emphasis added.

[43] Emphasis added.

*Nicholas Alahverdian v. State of Ohio, et al. - Complaint*      *April 15, 2013*

includes confinement for more than six months" and that a "[p]etty offense" means a misdemeanor other than a serious offense."

340. Most misdemeanor charges don't carry enough time in jail to trigger the constitutional right to a jury trial. However, the potential for a misdemeanor defendant to face the registration requirement (and the subsequent maximum penalties for non-compliance) makes the charge serious enough to give the accused a jury trial automatically.

341. Most sex offender registrants are charged with felonies, which entitled them to an automatic jury trial in Ohio, but some, such as the Plaintiff, are charged with misdemeanors.

342. The United States Constitution and the Ohio Constitution guarantees a jury trial to a misdemeanor defendant when the State files a charge that could subject the accused to registration as a sex offender, because the ultimate maximum penalty far exceeds the six month threshold. Additionally, there is a right to a trial by jury because the trial judge is required to compel a convicted defendant to register as a sex offender, and the statutory consequence is therefore uniformly applied.[44]

---

[44] See Derendal v. Griffith, 209 Ariz. 416, 425 (2005).

*Nicholas Alahverdian v. State of Ohio, et al. - Complaint*       *April 15, 2013*

343. This question of sex offender registration in misdemeanor cases mandating an automatic jury trial presents a constitutional of first impression and importance for Ohio and quite possibly for the United States of America.

**B. *Fushek v. Arizona* and its Relevance**

344. In *Fushek v. Arizona*, the Arizona Supreme Court accepted a case involving a Roman Catholic priest who was accused of molestation and demanded a jury trial. The jury trial guarantees are set forth in the Arizona Constitution and the Constitution of the United States. Section 24 of the Arizona Constitution is identical to the U.S. Constitution (the Sixth Amendment), which guarantees the right to a trial by jury "in all criminal prosecutions." The Arizona Supreme Court "construed it consistently with the U.S. Constitution to preserve the right to jury trial only for "serious" as opposed to "petty" crimes.[45]

345. The Arizona Supreme Court, in *Derendal,* looked to a United States Supreme Court case[46] to guide its analysis of whether an offense is "serious" under Section 24.

346. *Blanton,* quoting *Baldwin v. New York,* 399 U.S. 66, 68 (1970), stressed that the most relevant criterion for

---

[45] *Derendal,* 209 Ariz. at 420 paragraph 13, 104 P.3d at 151.

[46] *Blanton v. City of North Las Vegas*, 489 U.S. 538 (1989)

determining whether an offense is serious is "the severity of the maximum authorized penalty."

347. *Derendal* similarly noted that "we leave to the legislature primary responsibility for determining, through its decision as to the penalty that accompanies a misdemeanor offense, whether the offense qualifies as a 'serious offense.'" *** "When the legislature classifies an offense as a misdemeanor and punishable by no more than six months incarceration, we will presume that offense to be a petty offense that falls outside the jury requirement of Article 2, Section 24 of the Arizona Constitution." See *Blanton,* 489 U.S. at 543 (adopting similar presumption). Under that test, the misdemeanor charge that Fushek faced entitled him to a jury trial. Similarly, Plaintiff was entitled to a jury trial based on the legislative determination, by virtue of the felonious penalties and incarceration imputed to the ultimate maximum penalty of the misdemeanor charge, that he was charged with a "serious" and not a "petty" crime.

348. Similarly, O.R.C. 2907 carries a maximum incarceration period of less than six months. But the United States Supreme Court noted in *Blanton* that a legislature's view as to the seriousness of the crime can be reflected not only

*Nicholas Alahverdian v. State of Ohio, et al. - Complaint*        *April 15, 2013*

in the maximum authorized prison term, but also "in the other penalties that it attaches to the offense."[47]

349. Thus, in *Derendal*, the Arizona Supreme Court held that an offense carrying a maximum exposure to six months incarceration is jury trial eligible if the defendant can "demonstrate that additional [...] consequences that attend a misdemeanor conviction reflect a legislative determination that the offense is indeed "serious."[48]

350. A defendant attempting to rebut the presumption that a crime is petty must establish three things about an additional consequence:

   a. First, the penalty must arise directly from statutory law;[49]

   b. Second, the consequence must be severe; and

   c. Third, "[Arizona Supreme Court] will only consider those consequences that apply uniformly to all persons convicted of a particular offense."[50]

351. The first prong of that test was satisfied in *Fushek*. The sex offender registration arises from Arizona state statutes, as it does in Ohio, with Ohio state statutes.

---

[47] *Blanton,* 489 U.S. at 342.

[48] *Derendal,* 209 Ariz. at 422 p. 21, 104 P.3d at 153.

[49] *Blanton,* 489 U.S. at 543 n.8.

[50] *Derendal, Id.* at 423 p. 25, 104 P.3d at 154.

However, the parties in *Fushek* disagreed on application of the uniformity and severity prongs.

352. It is not only mandatory statutory consequences that satisfy the *Derendal* uniformity requirement. The uniformity requirement avoids the anomalous situation where some persons would be entitled to a jury trial and other would not, although charged with exactly the same substantive crime. Accordingly, the Arizona Supreme Court considered statutory consequences that apply to every person of said crime at the time of conviction.

353. Thus, because a judge is mandated to impose registration requirements on a convicted defendant, the uniformity requirement is met because a defendant facing allegations of a sexual nature faces sex offender registration as part of the sentencing court's disposition of the case. All defendants in such a position face those requirements. The maximum potential sentence determines whether a defendant has a right to a jury trial.

**C. Sex Offender Registration**

354. Sex offender registration is a sufficiently severe consequence to require a jury trial. Sex offender registration is such a grave consequence that it reflects a

*Nicholas Alahverdian v. State of Ohio, et al. - Complaint*          *April 15, 2013*

legislative determination that the offense is indeed
serious.

355. Sex offender registration arises from statutory law, and is
one that has punitive (in lieu of collateral) consequences.
The Ohio Supreme Court has recently determined that sex
offender registration is, in fact, punitive, in *State v.
Williams*.[51]

356. Sex offender registration is a statutory consequence
reflecting a legislative determination that the alleged
offenses, including O.R.C. 2907.06 et al., are serious. The
sanctions are sufficiently severe to trigger the right to a
jury trial under the Sixth Amendment.

357. The constitutional issues present in *Fushek* and *State v.
Rossi* are "rare situations"[52] in which the additional
statutory penalty, "viewed in conjunction with the maximum
authorized period of incarceration,"[53] reflects a

---

[51] The Ohio Supreme Court said in *State v. Williams*: {¶ 15} "`While protection of the
public is the avowed goal of R.C. Chapter 2950, we cannot deny that severe obligations
are imposed upon those classified as sex offenders. All sexual predators and most
habitual sex offenders are expected, for the remainder of their lives, to register
their residences and their employment with local sheriffs. Moreover, this information
will be accessible to all. The stigma attached to sex offenders is significant, and
the potential exists for ostracism and harassment, as the Cook court recognized. Id.,
83 Ohio St.3d at 418, 700 N.E.2d 570. Therefore, I do not believe that we can continue
to label these proceedings as civil in nature. These restraints on liberty are the
consequences of specific criminal convictions and should be recognized as part of the
punishment that is imposed as a result of the offender's actions.' State v. Wilson,
113 Ohio St.3d 382, 2007-Ohio-2202, 865 N.E.2d 1264, ¶ 45-46 (Lanzinger, J.,
concurring in part and dissenting in part)." Ferguson, 120 Ohio St.3d 7, 2008-
Ohio-4824, 896 N.E.2d 110, ¶ 45-47 (Lanzinger, J., dissenting). Following the
enactment of S.B. 10, all doubt has been removed: R.C. Chapter 2950 is punitive.

[52] *Blanton,* 489 U.S. 543.

[53] *Id.*

*Nicholas Alahverdian v. State of Ohio, et al. - Complaint*     *April 15, 2013*

legislative determination that the offense is indeed

serious. This is determined by the specific provisions of

sex offender registration statutes:

a.  Statutes do not provide for the termination of a

registration requirement imposed upon a defendant;

b.  Duration of sex offender registration requirement

makes this statutory consequence much more severe

than a comparatively short probation period;[54]

c.  Must provide names, mailing addresses, physical

addresses, fingerprints, photographs, and online

identifiers. Records must be annually updated, even

if no change has occurred;

d.  Must also provide moving notices, schools attended,

and the homeless must register more often;

e.  Employment and volunteer addresses must be reported;

f.  An offender who fails to register is guilty of a

felony, and an offender who does not keep

information updated is guilty of a felony. Those

offenses carry 1.5 and 2.5 year presumptive prison

sentences for first time offenders; and

_____

[54] *U.S. v. Nachtigal*, 507 U.S. 1, 5 (1993) (the Sixth Amendment does not require jury
trial when potential penalty is five years probation.)

*Nicholas Alahverdian v. State of Ohio, et al. - Complaint*     *April 15, 2013*

g.    Widespread publicity accompanies sex offender registration. All information (name, address, age, photograph, and conviction appear on the internet).

358.  Statutory requirements of warnings to various communities about the identities of and presence of sex offenders confirms that the Ohio legislature view sex offenses as serious crimes.

359.  Almost all other crimes for which sex offender registration is required involve felonies, recidivist behavior, or crimes against children. The requirement of sex offender registration for misdemeanors involving sex allegations strongly suggests that the Ohio legislature views such crimes as similar to these other plainly serious offenses.

**D. The Ohio Legislature has determined that O.R.C. 2907.06 is indeed a "serious" crime and triggers an automatic jury trial, and, absent a waiver, a trial court lacks jurisdiction to try the accused**

360.  The bill that adopted O.R.C. 2907.06 demonstrates that the legislature views misdemeanors regarding sex allegations as serious offenses. The importance that sex offender registration places on protecting the public reflects a legislative view that those who commit offenses with sex allegations have engaged in more than simple petty crimes.

*Nicholas Alahverdian v. State of Ohio, et al. - Complaint*          *April 15, 2013*

361. The U.S. Supreme Court noted in *Blanton* that the "judiciary should not substitute its judgment as to seriousness for that of a legislature,[55] which is far better equipped to perform the task."[56]

**E. The Ohio Supreme Court has determined that the Sex Offender Registration scheme is indeed punitive**

362. f

363. State of Ohio, City of Dayton, Dayton Municipal Court, Henderson, Logan, Cook, Sexton, Law Office of the Public Defender, Wehner, Dubel, and DeWine maliciously denied Plaintiff a jury trial after being accused of a serious crime.

364. Plaintiff was deprived of his constitutional rights and injured as a direct and proximate result of aforesaid failures by defendants.

CAUSE OF ACTION 23: CONSPIRACY TO PREVENT ACCESS TO THE COURTS

365. Plaintiff hereby incorporates foregoing paragraphs.

366. At all relevant times, Defendants State of Ohio, City of Dayton, Dayton Municipal Court, Henderson, DeMint, Logan, Cook, Sexton, Law Office of the Public Defender, Wehner,

---

[55] The judiciary must therefore defer to the legislative determination that misdemeanor crimes involving sex allegations are serious offenses and hold that because an allegation of sexual imposition exposes the defendant to sex offender registration, the U.S. Constitution, the Ohio Constitution, and the Rules of Criminal Procedure entitled the defendant to a trial by jury.[53] *Kennedy v. Mendoza-Martinez* (1963) 372 U.S. 144, 168-169, 83 S.Ct. 554, 9 L.Ed.2d 644).

[56] 489 U.S. at 541-42 (quoting *Landry v. Hoepfner* 840 F.2d 1201, 1209 (5th Cir. 1998)).

*Nicholas Alahverdian v. State of Ohio, et al. - Complaint*     *April 15, 2013*

Dubel, Greger, Fricker, and DeWine had the responsibility yet failed to permit and not infringe upon the Plaintiff to access the Courts.

367. Plaintiff was deprived of his constitutional rights and injured as a direct and proximate result of said failure by defendants.

    <u>CAUSE OF ACTION: DENIAL OF SUBSTANTIVE ACCESS TO THE COURTS</u>

368. Plaintiff hereby incorporates foregoing paragraphs.

369. At all relevant times, Defendants State of Ohio, City of Dayton, Dayton Municipal Court, Henderson, DeMint, Logan, Cook, Sexton, Law Office of the Public Defender, Wehner, Dubel, Greger, Fricker, DeWine, and Plummer had the responsibility yet failed to ensure that Plaintiff had access to the courts, including the Dayton Municipal Court. The aforesaid defendants all knowingly denied Plaintiff the right to substantively access the courts, specifically by:

        a.    Denying Plaintiff's constitutionally protected right to a jury trial;

        b.    Denying Plaintiff's constitutionally protected right to testify in his own defense;

        c.    Denying Plaintiff's constitutionally protected right to cross-examine all witnesses; and

      d.    Denying Plaintiff's constitutionally protected right to effective assistance of counsel, especially assisting most effectively by following Plaintiff's instructions and filing an appeal with the Ohio Supreme Court following Second Appellate District

*Nicholas Alahverdian v. State of Ohio, et al. - Complaint*     *April 15, 2013*

Judge Grady's forceful dissent in the 2009 appeal

before that Court.[57]

_____

[57] The following is Judge Grady's Dissent: GRADY, J., dissenting: R.C. 2907.06(B) prohibits conviction for a violation of R.C. 2907.06(A)(1)- (5) "solely upon the victim's testimony unsupported by other evidence." In State v. Economo (1996), 76 Ohio St.3d 56, the Supreme Court approved the use of circumstantial evidence to satisfy the extrinsic evidence requirement of R.C. 2907.06(B), holding, at p. 60: "The corroborating evidence necessary to satisfy R.C. 2907.06(B) need not be independently sufficient to convict the accused, and it need not go to every essential element of the crime charged. Slight circumstances or evidence which tends to support the victim's testimony is satisfactory. The corroboration requirement of R.C. 2907.06(B) is a threshold inquiry of legal sufficiency to be determined by the trial judge, not a question of proof, which is the province of the factfinder. See State v. Robinson, 83 Ohio St. at 143, 93 N.E. at 625." Circumstantial evidence is direct proof of one fact from which the existence of another fact which is in issue reasonably may be inferred. The fact at issue in Economo was whether the sexual contact concerning which the victim testified had taken place. The State introduced other evidence in the form of the defendant doctor's office records to show that he and the victim had an appointment that day. The victim's sister also testified and said that when the victim left the doctor's examining room she was "on the verge of crying." These circumstances were sufficient to corroborate the victim's testimony that the doctor engaged in sexual conduct during his examination of her. The fact that such conduct occurred in the course of a doctor/patient relationship supported an independent inference that the defendant knew it was unwelcome to the victim/patient or was reckless in that regard. R.C. 2901.01(A). In the present case, the only evidence the State offered to corroborate the victim's testimony was the testimony of Sinclair Community College Police Officer Kenneth Quatman, who testified concerning admissions Defendant Rossi made during their interview. He testified that Defendant said he was "dry humping" the victim in the stairwell of a college building, and that he touched her breasts, put his hands down her pants, touched her genitals, and ejaculated. When asked how their two versions differed, Defendant claimed that the alleged victim was the aggressor. (T. 44-45). Unlike in Economo, sexual contact, as that is defined in R.C. 2907.01(A), is not in issue in the present case. What is in issue is whether Defendant knew that the sexual contact that took place was offensive to the victim, or was reckless in that regard, which are alternative findings necessary to convict for a violation of R.C. 2907.06(A)(1). The State argues that the statements of the Defendant to which Officer Quatman testified are sufficient to satisfy R.C. 2907.06(B) because they are "slight circumstances" which tend to support the victim's testimony. Economo. But, however slight, in order to convict Defendant of an alleged R.C. 2907.06(A)(1) violation, the particular circumstances must be probative of whether the fact that Defendant knew his conduct was unwelcome to the victim. That surely may be inferred from her testimony, but not from the statements of the Defendant to which the officer testified. Economo does not, as the majority holds, stand for the proposition that R.C. 2907.06(B) is satisfied when corroborating evidence is offered concerning any one element of an alleged R.C. 2907.06(A)(1) Sexual Imposition offense. Economo instead holds that any one article of extrinsic evidence need not corroborate every statutory element of the offense. The terms in which that holding is expressed are unfortunately obscure, but the alternative meaning the majority attaches to those terms voids the requirement for criminal liability that R.C. 2907.06(B) imposes. We should not read the holding in Economo as doing that when the majority in that case did not expressly state that intention. In Economo, the corroborating evidence permitted an inference that the sexual contact the victim described in her testimony had occurred, and the fact that it occurred in the course of a doctor/patient relationship supported another, independent inference that the defendant doctor knew the sexual contact was unwelcome or was reckless in that regard. R.C.2907.06(A)(1). A like inference cannot be made on these facts. The fact that the alleged victim subsequently complained to Officer Quatman is not probative of Defendant's knowledge when the sexual contact took place that it was unwelcome to the victim.

*Nicholas Alahverdian v. State of Ohio, et al. - Complaint*        *April 15, 2013*

370.  The defendants caused an actual injury to the Plaintiff
      because he was denied access to the courts. The State of
      Ohio and City of Dayton offer inadequate legal access
      program and Plaintiff suffered an actual injury as a direct
      and proximate result of those inadequacies.

371.  The defendants maliciously denied Plaintiff the benefit of
      substantive and legal court proceedings. The defendants
      denied Plaintiff the benefit of effective counsel who truly
      would advocate for Plaintiff rather than advocating for the
      interests of defendants.

372.  Plaintiff was deprived of his constitutional rights and
      injured as a direct and proximate result of said failure by
      defendants.

CAUSE OF ACTION 24: CONSPIRACY TO DENY ACCESS TO FEDERAL COURTS

373.  Plaintiff hereby incorporates foregoing paragraphs.

374.  At all relevant times, Defendants State of Ohio, City of
      Dayton, Dayton Municipal Court, Probation Services,
      Henderson, DeMint, Cook, Sexton, Alfaro, DeVoise-Pierce,
      David Roush & Associates, and Roush, under color of law,
      conspired and entered into express and/or implied
      agreements, understandings, or meetings of the minds among
      themselves to deprive Plaintiff of his constitutional right
      to attend court proceedings in the United States District

Court for the District of Rhode Island regarding case 1:11-cv-00075 (*Alahverdian v. Rhode Island Department of Children, Youth and Families, et al.*).

375. The aforesaid defendants willfully participated in this illegal objective by various means, with the intent to further deprive Plaintiff of his constitutional rights, to restrict Plaintiff from attending Court to assist in the disposition of that case, and/or to coerce Plaintiff to pay Roush & Associates and Roush.

376. All aforesaid defendants' actions evidenced a reckless and callous disregard for, and deliberate indifference to, Plaintiff's constitutional rights.

377. As a direct and foreseeable consequence of this conspiracy, Plaintiff was deprived of his constitutional rights to access the United States Courts.

378. As a direct and foreseeable consequence of these deprivations, Plaintiff has suffered emotional trauma, loss of liberty, loss of privacy, and irreparable harm to his reputation.

379. Plaintiff was deprived of his constitutional rights and injured as a direct and proximate result of the behavior of the individual and collective conspirators.

CAUSE OF ACTION 25: CONSPIRACY TO FALSELY IMPRISON

*Nicholas Alahverdian v. State of Ohio, et al. - Complaint*          April 15, 2013

380. Plaintiff hereby incorporates foregoing paragraphs.

381. At all relevant times, Defendants State of Ohio, City of
     Dayton, Dayton Municipal Court, Dayton Municipal Court
     Probation Services, Henderson, DeMint, Logan, Cook, Sexton,
     Alfaro, DeVoise-Pierce, Roush & Associates, Roush, DeWine,
     and Montgomery County Sheriff Plummer had the
     responsibility yet failed to ensure that Plaintiff was not
     willfully detained.

382. At all relevant times, aforesaid Defendants were prohibited
     from conspiring to falsely and unlawfully imprison
     Plaintiff, without consent.

383. All aforesaid defendants willfully conspired to detain
     Plaintiff for failure to pay Roush and Roush & Associates.

384. All aforesaid defendants willfully conspired to detain
     Plaintiff in the State of Ohio while, earlier, they
     deprived him of his basic constitutional rights such as the
     right to a jury trial, the right to cross-examine
     witnesses, and the right to testify in his own defense.

385. Plaintiff was deprived of his constitutional rights and
     injured as a direct and proximate result of said failures
     by defendants.

               CAUSE OF ACTION 26: CONSPIRACY TO DENY A JURY TRIAL

386. Plaintiff hereby incorporates foregoing paragraphs.

*Nicholas Alahverdian v. State of Ohio, et al. - Complaint*       *April 15, 2013*

387.  Defendants State of Ohio, City of Dayton, Dayton Municipal
      Court, Henderson, DeMint, Logan, Cook, Sexton, Law Office
      of the Public Defender, Wehner, and Dubel had the
      responsibility yet failed to ensure that Plaintiff was
      ensured a trial by jury, as provided by the U.S.
      Constitution and the Ohio Constitution, because he was
      accused of a "serious" crime.

388.  Plaintiff was deprived of his constitutional rights and
      injured as a direct and proximate result of said failure by
      defendants.

        CAUSE OF ACTION 27: RACKETEER INFLUENCED AND CORRUPT

                            ORGANIZATIONS

389.  Plaintiff hereby incorporates foregoing paragraphs.

390.  At all relevant times, Defendants ("The Enterprise" or
      "RICO Defendants") City of Dayton, Dayton Municipal Court,
      Dayton Municipal Court Probation Services, Henderson,
      DeMint, Logan, Cook, Sexton, Alfaro, Devoise-Pierce,
      WCMCCCD, Sinclair Community College, Johnson, Gift,
      Quatman, Miller, Hupp, Cimperman, Roush & Associates,
      Roush, and Plummer conducted the affairs of an enterprise
      through a pattern of racketeering activity in violation of
      the Racketeer Influenced and Corrupt Organizations Act
      ("RICO"). 18 U.S.C. §§ 1862(c) and (d).

*Nicholas Alahverdian v. State of Ohio, et al. - Complaint*      April 15, 2013

391. The RICO Defendants and their co-conspirators are a group
     of person associated together in fact for the common
     purpose of carrying out an ongoing criminal enterprise, as
     described in the foregoing paragraphs of this Complaint;
     namely, through a multi-faceted campaign of lies, fraud,
     threats and official corruption, to coerce Plaintiff
     (without due process, a jury trial, or a testimony
     submitted in his own defense) into paying fines, being
     detained in lieu of payment of fines, payment of probation
     fees, being unlawfully detained, unlawfully forced to
     register as a sex offender, forced to pay sex offender
     registration fees, forced to live in the State of Ohio,
     forced to live in certain places as restricted by O.R.C. §
     2950, forced to pay a doctor and a polygraph artist under
     threat of violation of probation, and comply with virtually
     any demand made by them under threat of arrest.

392. The RICO Defendants and their co-conspirators have
     organized their operation into a cohesive group with
     specific and assigned responsibilities and a command
     structure, operating in the City of Dayton, Montgomery
     County, Ohio. They have recruited new members to their
     operation and have expanded the scope and nature of their
     activities. While the organization of the criminal

enterprise has changed over time, and its members may have held different roles at different times, the Enterprise has generally been structured to operate as a unit in order to accomplish the goals of the criminal scheme:

a. Defendants City of Dayton, Dayton Municipal Court and Henderson are responsible for oversight of the scheme to defraud and extort Plaintiff, and have directed other conspirators to take actions necessary to accomplish the overall aims of the criminal enterprise - namely, denying Plaintiff a jury trial, denying Plaintiff the right to testify in his own defense, denying Plaintiff the right to cross-examine witnesses, procuring sham criminal charges against Plaintiff, conducting a massive smear campaign designed to spread false and misleading information about Plaintiff, and obstructing Plaintiff's efforts to ensure his constitutional rights are upheld.

b. Defendants City of Dayton, Logan, Sexton and Cook have been primarily responsible for prosecuting the sham litigation in the Dayton courts, and have served as the heads of the criminal enterprise in Dayton and have planned and coordinated the Plaintiff's unlawful arrest and extradition from the Commonwealth of Massachusetts. They also were responsible for a massive smear campaign

in the Dayton media and submitted his mugshot to various
mugshot websites, so that now every time Plaintiff's name
is searched on the Internet, multiple copies of his
mugshot are shown.

c. Defendants Dayton Probation Services, DeMint, Alfaro,
DeVoise-Pierce, and Plummer are a portion of the
aforesaid Henderson's "private army," exerting unlawful
influence and threats of fines and confinement over
Plaintiff. They are representatives of Henderson, and
through him, they have made false statements to the
media, to the Plaintiff's family, to the Plaintiff's
friends, and to others.

d. Defendants WCMCCCD, Sinclair Community College, Johnson,
Gift, Quatman, Miller, and Hupp have been responsible for
coordinating the drafting of false, unsubstantiated
charges to the Dayton Municipal Court, and for the false
prosecution of Plaintiff.

e. Defendant Dayton Probation Services has a longstanding
history of corruption and embezzlement, including, but
not limited to, a former Dayton Municipal Court probation
officer pleading guilty to 16 third-degree felonies: one
count of theft in office of more than $5,000.00, 14
counts of tampering with government records, and one

*Nicholas Alahverdian v. State of Ohio, et al. - Complaint*      *April 15, 2013*

count of tampering with evidence. In total, in this
incident, over $90,000.00 in probationers' fees were
embezzled by a member and/or members of the Enterprise.

f. Defendants Cimperman, Roush & Associates, and Roush have
been primarily responsible for managing the caseload for
the RICO Defendants, serving as the organization and
individuals who determine that the Dayton Municipal
Court's orders are "clinically necessary." They profit
from the referrals received by Henderson, and
subsequently refer the Dayton Municipal Court's caseload
to other "service providers," who are, in turn, also
profiting.

393. The RICO Defendants and their co-conspirators constitute an
association-in-fact enterprise within the meaning of 18
U.S.C. §§ 1961(4) and 1962(c), referred to hereinafter as
the "Enterprise." Each of the RICO Defendants participated
in the operation or management of the Enterprise.

394. The RICO Defendants have engineered a wide-ranging campaign
of public attacks based on false and misleading statements,
trumped up criminal charges, a threatened and actual
fraudulent criminal judgment that was not accommodated by a
constitutionally-protected right to trial by jury,
investigations by government agencies, and ongoing

harassment and disruptions of privacy and education at
Harvard University, and have demanded the payment of
thousands of dollars in unjust fines and fees, and fifteen
years of registration as a sex offender before these
activities will cease, all with the intent and effect of
causing a reasonable fear and actual damage to the
Plaintiff's reputation, education, finances, and
constitutional rights.

395. As described herein, the RICO Defendants manufactured false
evidence against Plaintiff and are relying on that false
evidence in the sham Dayton Municipal Court prosecution
with the intent and effect of causing a reasonable fear and
actual damage to the Plaintiff's reputation, education,
finances, and constitutional rights.

396. As described herein, the RICO Defendants conspired with
each other to advance baseless criminal charges against
Plaintiff, who was responsible for reporting Defendant Hupp
to the Sinclair Police chain of command.

397. The RICO Defendants' actions are intended to induce fear in
Plaintiff, and actually will and/or have, among other
things: (1) continue to pursue a scheme of
misrepresentation to the great harm and public denigration
of Plaintiff, unless and until Plaintiff "satisfies"

probation requirements, sex offender treatment, and virtually any other order and/or decision made by the Enterprise; (2) continue to conspire with each other to have Plaintiff criminally prosecuted on trumped up charges and/or violations; and (3) secure a fraudulent judgment against Plaintiff seeking recognition and enforcement of the judgement to pay fines and fees ad nauseam. These actions, as described herein, have created a reasonable fear of harm and actual harm on the part of Plaintiff, including damage to his reputation, education, finances, and constitutional rights.

398. Accordingly, the RICO Defendants have unlawfully obstructed, delayed, and affected - and and attempted to obstruct, delay, and affect - constitutional rights, such as the right to a jury trial, the right to cross-examine witnesses, and the right to testify in one's own defense. The RICO Defendants have also unlawfully obstructed, delayed, and affected constitutional rights and due process by extortion, in that the RICO Defendants attempted to induce Plaintiff to consent to paying thousands upon thousands of dollars in fines, "treatment" costs, legal fees, registration fees, probationers' fees, and other costs through the wrongful use of actual and threatened

force, violence, and fear - including probation violations, imprisonment, conviction of felonies, and damage to his reputation, education, finances, and constitutional rights.

399. Plaintiff was deprived of his constitutional rights and injured as a direct and proximate result of said failure by defendants.

<u>CAUSE OF ACTION 28: CONSPIRACY TO VIOLATE RICO</u>

400. Plaintiff hereby incorporates foregoing paragraphs.

401. The RICO Defendants have unlawfully, knowingly, and willfully combined, conspired, confederated and agreed together and with others to violate 18 U.S.C. § 1962(c) as described above, in violation of 18 U.S.C. § 1962 (d).

402. Upon information and belief, the RICO Defendants knew that they were engaged in a conspiracy to commit the predicate acts, and they knew that the predicate acts were part of such racketeering activity, and the participation and agreement of each of them was necessary to allow the commission of this patter of racketeering activity. This conduct constitutes a conspiracy to violate 18 U.S.C. § 1962(c), in violation of 18 U.S.C. § 1962(d).

403. Upon information and belief, the RICO Defendants agreed to conduct or participate, indirectly or directly, in the conduct, management, or operation of the Enterprise's

affairs through a pattern of racketeering activity in violation of 18 U.S.C. § 1962(c).

404. As a direct and proximate result of the aforesaid conduct, commissions, and omissions by Defendants, Plaintiff was deprived of his constitutional rights and injured.

CAUSE OF ACTION 29: INEFFECTIVE ASSISTANCE OF COUNSEL

405. Plaintiff hereby incorporates foregoing paragraphs.

406. Plaintiff was entitled at all relevant times to effective assistance of counsel and effective assistance of counsel on appeal.

407. Plaintiff has a right to expect that his attorney will use every skill, expend every energy, and tap every legitimate resource in exercise of independent professional judgment on behalf of defendant and in undertaking representation.[58] Counsel owed Plaintiff a duty of loyalty, unhindered by the State and/or any other party's constitutionally deficient performance.

408. Defendants Law Office of the Public Defender, Wehner, Dubel, Greger, and Fricker were attorneys for the Plaintiff at various stages in *State v. Rossi* as stated herein. Each Defendant made unprofessional errors and had it not been for those unprofessional errors, the result of *State v.*

---

[58] *Frazer v. United States*, 18 F.3d 778, 779 (9th Cir. 1994); U.S.C.A. Const. Amend 6.

*Rossi* would have been different. Additionally, there were actual irreconcilable differences between each Attorney Defendant and Plaintiff.

409. Each Attorney Defendant was ineffective in investigation, discovery, and preparation at each stage of this case.

410. Each Attorney Defendants' performance was deficient and prejudiced Plaintiff.

411. Each Attorney Defendant committed serious errors that deprived Plaintiff of fair legal proceedings.

412. Defendants Greger, Fricker, Law Office of the Public Defender, Wehner, and Dubel had irreconcilable differences with the Plaintiff, provided bad advice, was not prepared within requisite range of competence by failing to conduct any discovery, did not perform within an objective standard of reasonableness, failed to investigate mitigating evidence, failed to object to factual errors, failed to subject prosecution's case to meaningful and adversarial testing, failed to file timely motions, failed to interview Plaintiff about the case at any time, failed to rely on anything that Plaintiff had to say but instead what Defendant Quatman wrote in the police report, failed to advocate Plaintiff's theory of the case, failed to be competent, failed to be prompt, failed to be diligent,

*Nicholas Alahverdian v. State of Ohio, et al. - Complaint*     April 15, 2013

failed to maintain adequate communication with Plaintiff.
The representation provided by aforesaid counsel was so
inadequate and deficient that it denied Plaintiff's Sixth
Amendment right. Furthermore, they failed to move to
suppress evidence, failed to call witnesses, conduct an
adequate investigation, raise legal issues at trial, assert
the right to a jury trial, introduce exculpatory evidence,
interview and cross-examine witness, permit the Plaintiff
to testify in his own defense, and also failed to request
exculpatory evidence from the prosecution.

413. Defendant Greger failed to preserve a digital copy of
exculpatory evidence.

414. Plaintiff was deprived of his constitutional rights and
injured as a direct and proximate result of said failure by
defendants.

    CAUSE OF ACTION 30: LACK OF JURISDICTION OF TRIAL COURT

415. Plaintiff hereby incorporates foregoing paragraphs.

416. Defendants City of Dayton, Dayton Municipal Court, and
Henderson did not have proper jurisdiction over Plaintiff
at any time. Aforesaid Defendants did not provide all of
the constitutional rights guaranteed by the U.S. and Ohio
Constitutions to the Plaintiff and therefore lacked proper
jurisdiction. Defendants had the obligation to ensure the

Plaintiff was tried by a jury, was allowed to testify in his own defense, and was allowed to cross-examine witnesses.

417. As a direct and proximate result of the aforesaid conduct, commissions, and omissions by Defendants, Plaintiff was deprived of his constitutional rights and injured.

<u>CAUSE OF ACTION 31: LEGAL MALPRACTICE</u>

418. Plaintiff hereby incorporates foregoing paragraphs.

419. At all times relevant, Plaintiff relied exclusively on the Attorney Defendants for advise and counsel regarding *State v. Rossi*. Defendants were obligated by the attorney-client relationship to fully, fairly and competently represent Plaintiff in all respects. At all times herein, Plaintiff was advised by the Attorneys and believed that he could rely on them for advice and trust their decisions. Indeed, Defendants held themselves out as experts in the matters for which they represented Plaintiff.

420. At all times during the period of Plaintiff representation by Attorneys, the most confidential, fiduciary relationship existed between them. Defendants were obligated by the attorney-client, fiduciary relationship to deal fairly, justly, and honestly with Plaintiff, to be loyal to him and to place Plaintiff's interests before their own interests.

*Nicholas Alahverdian v. State of Ohio, et al. - Complaint*       *April 15, 2013*

Defendants were further bound by the Rules of Professional Conduct as well as the Code statute regulating and controlling the conduct of lawyers.

421. During the period of representation, Defendants failed to exercise reasonable care, skill, and diligence in performing legal services for Plaintiff and were negligent in their representation of Plaintiff as stated herein.

422. Additionally, during the period of representation, each Defendant breached their fiduciary and ethical duties to Plaintiff, made affirmative misrepresentations and fraudulent statements to Plaintiff and to the Dayton Municipal Court and the Second Court of Appeals, failed to disclose and purposefully withheld material information from Plaintiff and placed their own interests before those of the Plaintiff, as stated herein.

423. Plaintiff was deprived of his constitutional rights and injured as a direct and proximate result of said failure by defendants.

## CAUSE OF ACTION 32: EXTORTION

424. Plaintiff hereby incorporates foregoing paragraphs.

425. The City Defendants, Dayton Probation Defendants, Roush & Associates, and Roush, at all relevant times, extorted and/or attempted and/or conspired to extort monies from the

Plaintiff under threat of arrest, imprisonment and
violation and/or revocation of probation.

426. Plaintiff was deprived of his constitutional rights and
injured as a direct and proximate result of said failure by
defendants.

<u>CAUSE OF ACTION 33: BLACKMAIL</u>

427. Plaintiff hereby incorporates foregoing paragraphs.

428. The City Defendants, Dayton Probation Defendants, Roush &
Associates, and Roush, at all relevant times, blackmailed
and/or attempted and/or conspired to blackmail the
Plaintiff under threat of arrest, imprisonment and
violation and/or revocation of probation.

429. Plaintiff was deprived of his constitutional rights and
injured as a direct and proximate result of said failure by
defendants.

<u>CAUSE OF ACTION 34: FALSE SWEARING</u>

430. Plaintiff hereby incorporates foregoing paragraphs.

431. Defendants WCMCCCD, Johnson, Gift, Quatman, Miller, and
Hupp were engaged in a culture of condoning constitutional
rights, and this has been discussed in the instant case and
other cases filed against Defendants.

432. Aforesaid Defendants were negligently trained in police
matters and this led to Defendant Quatman falsely swearing

*Nicholas Alahverdian v. State of Ohio, et al. - Complaint*        *April 15, 2013*

in a police incident report and furthering that false

statement in the Dayton Municipal Court, leading to the

Plaintiff's unjust conviction.

433. Plaintiff was deprived of his constitutional rights and

injured as a direct and proximate result of said failure by

defendants.

### CAUSE OF ACTION 35: NO AUDIO RECORDING AND/OR WRITTEN STATEMENT

### (LACK OF DUE PROCESS)

434. Plaintiff hereby incorporates foregoing paragraphs.

435. Defendants WCMCCCD, Johnson, Gift, Quatman, Miller, and

Hupp had the responsibility yet failed to record, with

audio and/or video instruments, a statement from the

Plaintiff. This allowed Defendants to further an unjust

investigation and allowed Defendant Quatman to falsely

state that Plaintiff had made a confession.

436. Plaintiff was deprived of his constitutional rights and

injured as a direct and proximate result of said failure by

defendants.

### CAUSE OF ACTION 36: MIRANDA RIGHTS

437. Plaintiff hereby incorporates foregoing paragraphs.

438. Defendants WCMCCCD, Johnson, Gift, Quatman, Miller, and

Hupp had the responsibility to read Plaintiff his Miranda

rights.

439. Plaintiff was deprived of his constitutional rights and injured as a direct and proximate result of said failure by defendants.

<u>CAUSE OF ACTION 37: FAILURE TO PROVIDE FULL WRITTEN STATEMENT OF</u>

<u>MARY GREBINSKI</u>

440. Plaintiff hereby incorporates foregoing paragraphs.

441. Defendants WCMCCCD, Johnson, Gift, Quatman, Miller, and Hupp had the responsibility to provide the full four page written statement of complainant Grebinski. Only the first and third pages were provided, and they were marked "page one" and "page two" by Quatman.

442. Plaintiff was deprived of his constitutional rights and injured as a direct and proximate result of said failure by defendants.

<u>CAUSE OF ACTION 38: NEGLIGENT FAILURE TO TRAIN POLICE</u>

443. Plaintiff hereby incorporates foregoing paragraphs.

444. Defendants WCMCCCD, Johnson, Gift, Quatman, Miller, and Hupp had the responsibility to train and be trained, and they failed to do so, resulting in a gross miscarriage of justice inflicted upon Plaintiff.

445. Plaintiff was deprived of his constitutional rights and injured as a direct and proximate result of said failure by defendants.

CAUSE OF ACTION 39: NEGLIGENT FAILURE TO TRAIN JUDGES

446. Plaintiff hereby incorporates foregoing paragraphs.

447. Defendant State of Ohio had the responsibility yet failed to train its judges (specifically Defendant Henderson) that constitutional rights are to be upheld at all times, and that these rights include, but are not limited to, the right to trial by jury, the right to cross-examine witnesses, and the right to testify in one's own defense.

448. Plaintiff was deprived of his constitutional rights and injured as a direct and proximate result of said failure by defendant.

CAUSE OF ACTION 40: FAILURE TO ALLOW PLAINTIFF TO TESTIFY IN HIS OWN DEFENSE, CROSS-EXAMINE WITNESSES, AND BE TRIED BY AN IMPARTIAL JURY

449. Plaintiff hereby incorporates foregoing paragraphs.

450. Defendants City of Dayton, Dayton Municipal Court, and Henderson had the responsibility but failed to allow the Plaintiff to testify in his own defense, cross-examine witnesses, and be tried by an impartial jury.

451. Plaintiff was deprived of his constitutional rights and injured as a direct and proximate result of said failure by defendant.

## CAUSE OF ACTION 41: FAILURE TO RECORD AN INTERVIEW ALLEGING A "CONFESSION"

452. Plaintiff hereby incorporates foregoing paragraphs.

453. Defendants WCMCCCD, Johnson, Gift, Quatman, Miller, and Hupp negligently and recklessly failed to record the interview alleging a "confession" by the Plaintiff. As a result, Quatman's testimony "corroborating" the unsubstantiated and contradictory statements and testimony of Grebinski was used, in an effort to unjustly and without due process, convict the Plaintiff.

454. Plaintiff was deprived of his constitutional rights and injured as a direct and proximate result of said failure by defendant.

## CAUSE OF ACTION 42: UNCONSTITUTIONALLY HINDERING THE RIGHT OF A CITIZEN TO PETITION THE GOVERNMENT FOR A REDRESS OF GRIEVANCES

455. Plaintiff hereby incorporates foregoing paragraphs.

456. Defendant Henderson, at all relevant times, threatened to imprison Plaintiff and/or hold him in contempt for calling Ohio State Legislators and the Judicial Commission.

457. Plaintiff was deprived of his constitutional rights and injured as a direct and proximate result of said failure by defendant.

## PRAYER FOR RELIEF

458. WHEREFORE, to redress the injuries proximately and directly caused by Defendants' conduct as stated herein, and to prevent the substantial risk of irreparable injury to other persons at Sinclair Community College, in the City of Dayton, and/or in the State of Ohio as a result of the policies, customs, practices, and supervisory misconduct alleged herein, Plaintiff hereby requests the following relief:

    a. the issuance of an Order and Permanent Injunction ("Permanent Injunction") that:

        i.    appoints an independent monitor (the "Monitor"), to be determined by the Court, who shall oversee certain activities of the Sinclair Police Department for a period of ten (10) years, and who shall report to the Court on an annual basis regarding Defendants' compliance or non-compliance with the terms of the Permanent Injunction;

        ii.   authorizes the Monitor to establish, review, and enforce all policies applicable to the management of the Sinclair Police Department;

iii.    provides the Monitor with the authority to hire, fire, and promote all Sinclair Police officials, including the Chief of Police;

iv.    establishes an independent citizen Police Review Committee, composed of three members selected by the Court, which shall review and hear publicly complaints of misconduct by Sinclair students against Sinclair Police personnel and make recommendations to the Monitor as to discipline or innocence;

v.    orders that all eyewitness identification arrays, lineups, and similar procedures conducted by the Sinclair Police Department, whether formal or informal, and/or of suspects or "witnesses," conform to the provisions of General Order No. 4077 and be recorded by videotape;

vi.    orders that the Sinclair Police Department provide proper training, based on materials and plans approved by the Monitor, to all current and new personnel (the "Remedial Training") on the following matters:

1.   the appropriate chain of command in
     criminal investigations;

2.   prohibiting threats, inducements, or
     intimidation of witnesses;

3.   disregarding witnesses that are
     favorable to the accused;

4.   the standards for police reports,
     investigator's notes, and other
     reports of investigations, including
     the timely and truthful preparation
     of such documents;

5.   the standards for probable cause;

vii.   orders the Sinclair Police Department to
       implement a policy requiring Sinclair Police
       personnel to present exculpatory evidence;

viii.  enjoins the Sinclair Police Department from
       targeting students of Sinclair for selective
       enforcement of the criminal laws, and from
       refusing to protect the legal and
       constitutional rights of students of Sinclair
       Community College;

ix.    requires the City of Dayton and/or Sinclair to
       pay all costs relating to the Monitor, Police

Review Committee, and Remedial Training for the
duration of the Permanent Injunction; and

f. damages in an amount to be established at trial as
compensation for constitutional deprivations; past and
future economic loss, physical harm, emotional trauma,
loss of privacy, and loss of reputation; loss of
education; and expenses associated with defending
against the criminal proceedings initiated and
sustained by Defendants' unlawful conduct;

g. damages in an amount to be established at trial to
punish Defendants for outrageous conduct pursued out
of actual malice that recklessly and callously
disregarded and was deliberately indifferent to
Plaintiffs' constitutional rights, to discourage them
from engaging in similar conduct in the future, and to
deter others similarly situated from engaging in
similar misconduct;

h. an award of attorneys' fees, including attorneys' fees
pursuant to 42 U.S.C. § 1988(b);

i. an award for reasonable and customary costs, expenses,
and interest incurred in pursuit of this action;

j. a declaration, pursuant to 28 U.S.C. § 2201, that
Plaintiff is entitled to a jury trial, because a crime

that requires 15 years of sex offender registration is a "serious" and not a "petty" crime;

k. a declaration, pursuant to 28 U.S.C. § 2201, that Ohio Revised Code 2907.06, in whole or in part, is unconstitutionally vague and/or void for vagueness;

l. temporary and/or permanent injunctive relief pursuant to Fed. R. Civ. P. 65 temporarily and/or permanently enjoining Defendants and their officers, employees and agents, assignees and anyone else acting in concert with them from contacting the Plaintiff, implementing any sentence imposed by the trial court (which lacked jurisdiction *ab initio),* and/or restricting Plaintiff's ability to reside anywhere with the exception of the State of Ohio, until this Court determines the merits and enters judgment on Alahverdian's claims against the Defendants in this action; and

m. whatever additional relief the Court may deem proper.

JURY DEMAND

Plaintiff hereby DEMANDS a trial

by jury on all claims so triable.


Dated: April 15, 2013

                                    Respectfully submitted,
                                    **NICHOLAS ALAHVERDIAN, PRO SE**


                        By: _____
                                    Nicholas Alahverdian
                                    77 Redder Avenue
                                    Harrison Township, OH 45405
                                    Tel. (617) 453-8399
                                    Plaintiff Pro Se