# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT DAYTON

NICHOLAS ALAHVERDIAN,

                       :

       Plaintiff,                                Case No. 3:13-cv-113

                       :              District Judge Thomas M. Rose

    -vs-                                 Magistrate Judge Michael R. Merz

STATE OF OHIO, et al.,

                       :

       Defendants.

---

# REPORT AND RECOMMENDATIONS

---

This case is before the Court for initial review pursuant to 28 U.S.C. § 1915. Plaintiff was granted leave to proceed *in forma pauperis* under that statute. 28 U.S.C. §1915(e)(2), as amended by the Prison Litigation Reform Act of 1995 Title VIII of P.L. 104-134, 110 Stat. 1321(effective April 26, 1996)(the "PLRA"), reads as follows:

> Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that
> (A) the allegation of poverty is untrue; or
> (B) the action or appeal --
> (i) is frivolous or malicious;
> (ii) fails to state a claim upon which relief can be granted; or
> (iii) seeks monetary relief against a defendant who is immune from such relief.

A complaint is frivolous under this statute if it lacks an arguable basis either in law or in fact. *Denton v. Hernandez*, 504 U.S. 25 (1992); *Neitzke v. Williams*, 490 U.S. 319 (1989). In deciding whether a complaint is "frivolous," that is, the Court does not consider whether a plaintiff has good intentions or sincerely believes that he or she has suffered a legal wrong.

Rather the test is an objective one:  does the complaint have an arguable basis in law or fact?  The same analysis will be applied at the individual claim for relief level.  In other words, there may be portions of a complaint which meet the PLRA tests and other which do not.

It is appropriate for a court to consider this question *sua sponte* prior to issuance of process "so as to spare prospective defendants the inconvenience and expense of answering such complaints." *Neitzke,* 490 U.S. at 324*; McGore v. Wrigglesworth,* 114 F.3d 601 (6th Cir. 1997); *Franklin v. Murphy,* 745 F.2d 1221, 1226 (9th Cir. 1984).  The Court  "is not bound, as it usually is when making a determination based solely on the pleadings, to accept without question the truth of the plaintiff's allegations." *Denton v. Hernandez*, 504 U.S. 25, 32 (1992).  Dismissal is permitted under §1915(e) "if it appears beyond doubt that the plaintiff can prove no set of facts which would entitle him to relief." *Spruytte v. Walters*, 753 F.2d 498 (6th Cir. 1985), disagreed with by *Walker v. Mintzes*, 771 F.2d 920 (6th Cir. 1985); *Brooks v. Seiter*, 779 F.2d 1177 (6th Cir. 1985).

As Plaintiff was previously advised, at the time the Court analyzes the Complaint under § 1915(e)(2), it will also analyze whether any of the claims are barred by lack of subject matter jurisdiction.  Because federal courts are courts of limited jurisdiction, they are under an obligation to raise lack of subject matter jurisdiction *sua sponte*.  *McNutt v. General Motors Acceptance Corp.*, 298 U.S. 178, 182-83 (1935).  Issuing process and commanding a defendant to answer constitutes some exercise of the Court's power which is inappropriate to do if there is no subject matter jurisdiction.  Analysis of subject matter jurisdiction will include consideration whether any of the Defendants is immune from suit in federal court under the Eleventh Amendment.

**The Named Defendants**

The Complaint names as Defendants the following entities: the State of Ohio; the City of Dayton, Ohio; the Dayton Municipal Court; the Dayton Municipal Court Probation Services Department; the Warren County/Montgomery County Community College District ("WCMCCCD"); Sinclair Community College ("Sinclair"); David Roush & Associates, LLC; and the Law Office of the Montgomery County Public Defender. Individuals named as Defendants are The Honorable Carl S. Henderson, Judge of the Dayton Municipal ("Judge Henderson"); Kim M. DeMint, Judge Henderson's bailiff; Dayton prosecutors Deidre Logan, Stephanie Cook, and Andrew Sexton; Dayton Probation Officers Jennifer Alfaro and Dona Devoise-Pierce; Sinclair Community College President Steven Lee Johnson; Sinclair Community College Police Officers Charles J. Gift, Kenneth Quatman, Sean Miller, and Tom Hupp; Psychologists Lauren Cimperman and David Roush; Montgomery County Public defender D. K. Rudy Wehner and his assistant defender Julie Dubel; attorneys Lawrence J. Greger and Keith Fricker; Ohio Attorney General Richard Michael Dewine; and Montgomery County Sheriff Phil Plummer.

**Factual Background**

While rich in narrative, the Complaint is sparse on date and time allegations. As best the Court understands the timeline, however, this case arises out of a lunch date between Sinclair students Nicholas Rossi[1] and Mary Jane Grebinski[2] on January 30, 2008 (Complaint, Doc. No. 7,

---

[1] Plaintiff's adoptive name and the name he used at the time until resuming his birth name of Alahverdian sometime in 2010 (Complaint, Doc. No. 7, n. 1, PageID 198).

¶ 58, PageID 215.)  After lunch, Plaintiff and Grebinski engaged in some sexual contact on the Sinclair campus which involved at least kissing.[3]  After whatever happened concluded, Ms. Grebinski reported the matter to the Sinclair Campus Police who questioned Plaintiff about the matter.  *Id.* at ¶ 61, PageID 216.

In February, 2008, for conduct referenced above, Rossi was charged in the Dayton Municipal Court with one count of sexual imposition in violation of Ohio Revised Code § 2907.07 and one count of public indecency in violation of Ohio Revised Code § 2907.09.  *Id.* at ¶ 63, PageID 217.  He was appointed counsel, Assistant Montgomery County Public Defender Julie Dubel and entered a plea of not guilty.  *Id.* at ¶ 64.  Despite Rossi's alleged demand to Dubel for a jury trial, the case proceeded to bench trial before Judge Henderson on March 31, 2008, with Ms. Cook appearing on behalf of the State of Ohio.  *Id.* at ¶ 66.  Allegedly, Ms. Dubel refused to put Rossi on the stand and Judge Henderson prevented him from speaking in his own defense.  *Id.*

Rossi was convicted, given a suspended jail sentence, and a three-year term of probation, as well as being ordered to perform community service and undergo a psychological assessment by Defendant Lauren Cimperman.  *Id.* at ¶ 80, PageID 220-221.  Rossie appealed to the Montgomery County Court of Appeals which affirmed the conviction.  *State v. Rossi*, 2009 Ohio 1963, 2009 Ohio App. LEXIS 1641 (Ohio App. 2nd Dist. Apr. 17, 2009).

While the appeal was pending, Rossi filed a motion for new trial in the Dayton Municipal Court which Judge Henderson denied because of his apparent understanding that he lacked jurisdiction to consider the motion while an appeal was pending.  *State v. Rossi*, 2010 Ohio 4534,

---

[2] Although Ms. Grebinski is the focus of many allegations made by Plaintiff in the Complaint, she is not named as a defendant.  Plaintiff has, however, sued her separately in this Court.  *Alahverdian v. Grebinski*, Case No. 3:13-cv-132.

[3] Kissing, at least on the mouth as the Court understands Plaintiff to allege happened here, constitutes "sexual contact" under Ohio Revised Code § 2907.01(B).

¶ 5, 2010 Ohio App. LEXIS 3828 (Ohio App. 2nd Dist. Sept. 24, 2010).  On April 24, 2009, after the conviction was affirmed, Rossi sought to have Judge Henderson vacate the denial of new trial.  *Id.* at ¶ 19.  Judge Henderson denied relief, Rossi appealed again, and the court of appeals remanded for consideration of the new trial motion on the merits.  *Id.* at ¶ 27.

On remand, Judge Henderson held an evidentiary hearing and denied the motion for new trial on the merits.  Rossi again appealed and the Second District Court of Appeals affirmed the denial.  *State v. Rossi*, 2012 Ohio 2545, 2012 Ohio App. LEXIS 2236 (Ohio App. 2nd Dist. June 8, 2012).

Sometime after the completion of this third appeal, Alahverdian[4] hired attorney Keith Fricker to represent him "in his absence, as being absent from Harvard classes is cause for dismissal from the University."  (Complaint, Doc. No. 7, ¶ 89, PageID 223.)  Fricker told Alahverdian that "it was not necessary to travel to Ohio for the hearing."  *Id.*  Alahverdian does not explain what sort of hearing was involved, but avers that afterwards Judge Henderson issued a "nationwide warrant" for Alahverdian's arrest.  (Complaint, Doc. No. 7, ¶ 90, PageID 224).  Alahverdian avers that he turned himself in to the Harvard University Police and then  was transported back to Ohio by Sinclair Police Officers.  *Id.* at ¶ 92.  After what Alahverdian characterizes as a re-sentencing hearing, Judge Henderson refused Plaintiff's request to be able to return to New England.  *Id.* at ¶ 97, PageID 226.

Alahverdian was assigned to supervision by Probation Officer Alfaro and met with her in December, 2012, and January, 2013, when she referred him to Defendant Roush for a psychosexual assessment.  *Id.* at ¶ 100.  Roush's assessment techniques, aside from the MMPI, are unacceptable to Alahverdian.  *Id.* ¶¶ 101-102.  In addition, Roush referred Alahverdian for a

---

[4] Plaintiff avers that he resumed his birth name sometime in 2010, although the Court of Appeals continued to refer to him by his adoptive name, the name under which he was convicted.

polygraph examination and reported to Alfaro that Plaintiff was not cooperating in treatment.  *Id.* at ¶¶ 103-105.  Alahverdian complains of attempts to collect Roush's fee.  *Id.* at ¶ 103. Furthermore, Alfaro allegedly imposed some conditions on him which Alfaro's supervisor apologized for.  *Id.* at ¶ 107, PageID 231.

Plaintiff summarizes his position as follows:

> Plaintiff brings this action due to an outrageous and blatant disregard for basic constitutional rights: the right to a trial by jury, the right to testify in one's own defense, and the right to be free from cruel and unusual punishment. Plaintiff was injured on January 30, 2008 and the injury has continued until the present time. Plaintiff is being forced to live in Ohio, far from Harvard University, his friends, an active U.S. District Court case, and the little family he has left. Plaintiff also suffered the loss of Harvard. An incredibly obvious miscarriage of justice has taken place, and this civil action is the Plaintiff's last chance at asserting his desire for justice so that the truth of his innocence may be illuminated.

(Complaint, Doc. No. 7, ¶ 108, PageID 231-232.)

Based on these facts, Plaintiff asserts the following claims for relief:

**Cause of Action 1:**  Malicious prosecution and seizure in violation of 42 U.S.C. § 1983 against the City of Dayton, Sinclair Community College, Logan Cook, Sexton, Gift, Quatman, and Hupp (Complaint, Doc. No. 7, ¶¶ 109-116, PageID 232-233.)

**Cause of Action 2:**  Concealment of evidence in violation of 42 U.S.C. § 1983 against the City of Dayton, Logan, Cook, WMCCCD, Sinclair, Johnson, Gift, Miller, and Quatman.  *Id.* at ¶¶ 117-129, PageID 234-237.

**Cause of Action 3:**  Fabrication of false evidence in violation of 42 U.S.C. § 1983 against Hupp, Quatman, and Miller in their individual capacities.  *Id.* at ¶ 130-137, PageID 237-239.

**Cause of Action 4:**  Making false public statements in violation of 42 U.S.C. § 1983 against Defendant Sexton.  *Id.* at ¶¶ 138-149, PageID 239-241.

**Cause of Action 5:**  Violations of 42 U.S.C. § 1983 against the "City Defendants" (defined as the City of Dayton at ¶ 12) and the "Sinclair Community College Defendants" (defined as Defendants WCMCCD, Sinclair, Johnson, Gift, Quatman, Miller and Hupp at ¶ 34) under the doctrine of *Monell v. New York City Dept. of Social Services,* 436 U.S. 658 (1978).  *Id.* at ¶¶ 150-177, PageID 241-250.

**Cause of Action 6:**  Supervisory Violations of 42 U.S.C. § 1983 against the City Defendants and the Sinclair Defendants "in the individual capacities."  *Id.* at ¶¶ 178-204, PageID 250-256.

**Cause of Action 7:**  Conspiracy in violation of 42 U.S.C. § 1983 against the City Defendants and the Sinclair Defendants in both their official and individual capacities.  *Id.* at ¶¶ 205-212, PageID 256-258.

**Cause of Action 8:**  Conspiracy in violation of 42 U.S.C. § 1985(2) – Obstruction of justice against the City Defendants and the Sinclair Defendants in their official and individual capacities.  *Id.* at ¶¶ 213-219, PageID 258-260.

**Cause of Action 9:**  Conspiracy in violation of 42 U.S.C. § 1985(2) – Witness tampering against the City Defendants and the Sinclair Defendants in their individual and official capacities.  *Id.* at ¶¶ 220-226, PageID 260-261.

**Cause of Action 10:**  Conspiracy in violation of 42 U.S.C. § 1985(3) against the City and Sinclair Defendants in their individual and official capacities.  *Id.* at ¶¶ 227-233, PageID 261-263.

**Cause of Action 11:**  Conspiracy in violation of 42 U.S.C. § 1986 against the State of Ohio, the City Defendants, the Sinclair Defendants, and the [City] Attorney Defendants (defined as Defendants Logan, Cook, and Sexton at ¶ 22) in their individual and official capacities.  *Id.* at ¶¶ 234-242, PageID 263-265.

**Cause of Action 12:**  Malicious prosecution and conspiracy against the State of Ohio, the City Defendants, and the Sinclair Defendants.  *Id.* at ¶¶ 243-255, PageID 265-268.

**Cause of Action 13:**  Obstruction of justice and conspiracy against the State of Ohio, the City Defendants, and the Sinclair Defendants.  *Id.* at ¶¶ 256-265, PageID 268-271.

**Cause of Action 14:**  Intentional infliction of emotional distress and conspiracy against the State of Ohio, the City of Dayton, the Dayton Municipal Court, Judge Henderson, and Defendants Logan, Cook, Sexton, WMCCCD, Sinclair, Johnson, Gift, Quatman, Miller, and Hupp.  *Id.* at ¶¶ 266-275, PageID 272-274.

**Cause of Action 15:**  Negligence by Sinclair Police against WMCCCD, Sinclair, Johnson, Gift, Quatman, Miller, and Hupp.  *Id.* at ¶¶ 276-281, PageID 274-276.

**Cause of Action 16:**  Negligent supervision, hiring, training, discipline, and retention by WMCCCD, Sinclair Police, and Sinclair against the Sinclair Defendants in their individual and official capacities.  *Id.* at ¶¶ 282-284,  PageID 276-277.

**Cause of Action 17:**  Violations of 42 U.S.C. § 1983 and the Fourteenth Amendment under *Brady v. Maryland*, 373 U.S. 83 (1963), against Dayton, the Dayton Municipal Court, Judge Henderson, and Defendants Logan, Cook, WCMCCD, Sinclair, Johnson, Gift, and Quatman, *Id.* at ¶¶ 285-300, PageID 277-284.

**Cause of Action 18:**  Negligent infliction of emotional distress by Sinclair Police against the Sinclair Defendants.  *Id.* at ¶¶301-306, PageID 284-285.

**Cause of Action 19:**  Negligent infliction of emotional distress by Sinclair Police by way of Sinclair police statements against Defendants Gift, Quatman, Miller, Hupp and the Sinclair Defendants.  *Id.* at ¶¶ 307-311, PageID 285-286.

**Cause of Action 20:**  Medical malpractice against David Roush and Associates, LLC, and

Defendants David Roush and Lauren Cimperman. *Id.* at ¶¶ 312-324, PageID 286-290.

**Cause of Action 21:** Violations of 42 U.S.C. § 1983 and the Fifth and Fourteenth Amendments by virtue of unconstitutional vagueness against Defendants the State of Ohio, Attorney General DeWine, and the City Defendants. *Id.* at ¶¶ 325-330, PageID 290-292.

**Cause of Action 22:** Violations of 42 U.S.C. § 1983 and the Third Amendment by denial of the right to trial by jury against the State of Ohio, the City of Dayton, Dayton Municipal Court, Judge Henderson, and Defendants Logan, Cook, Sexton, the Montgomery County Public Defender, Wehner, Dubel, and Attorney General DeWine. *Id.* at ¶¶ 331-364, PageID 292-304.

**Cause of Action 23:** Conspiracy to prevent access to the courts against State of Ohio, City of Dayton, Dayton Municipal Court, Judge Henderson, DeMint, Logan, Cook, Sexton, Law Office of the Public Defender, Wehner, Dubel, Greger, Fricker, DeWine and Sheriff Plummer. *Id.* at ¶¶ 365-372, PageID 305-308.

**Cause of Action 24:** Conspiracy to deny access to federal courts against Defendants State of Ohio, City of Dayton, Dayton Municipal Court, Probation Services, Judge Henderson, DeMint, Cook, Sexton, Alfaro, DeVoise-Pierce, David Roush & Associates, and Roush. *Id.* at ¶¶ 373-379, PageID 308-309.

**Cause of Action 25:** Conspiracy to falsely imprison for failure to pay Roush and Roush & Associates against Defendants State of Ohio, City of Dayton, Dayton Municipal Court, Dayton Municipal Court Probation Services, Henderson, DeMint, Logan, Cook, Sexton, Alfaro, DeVoise-Pierce, Roush & Associates, Roush, DeWine, and Montgomery County Sheriff Plummer. *Id.* at ¶¶ 381-385, PageID 309-311.

**Cause of Action 26:** Conspiracy to deny a jury trial against Defendants State of Ohio, City of Dayton, Dayton Municipal Court, Henderson, DeMint, Logan, Cook, Sexton, Law Office of the

Public Defender, Wehner, and Dubel.  *Id.* at ¶¶ 386-388, PageID 310-311.

**Cause of Action 27:**  Racketeer Influenced and Corrupt Organizations claim against City of Dayton, Dayton Municipal Court, Dayton Municipal Court Probation Services, Judge Henderson, DeMint, Logan, Cook, Sexton, Alfaro, Devoise-Pierce, WCMCCCD, Sinclair Community College, Johnson, Gift, Quatman, Miller, Hupp, Cimperman, Roush & Associates, Roush, and Plummer (collectively defined as the "RICO Defendants" at ¶ 390). *Id.* at ¶¶ 389-399, PageID 311-318.

**Cause of Action 28:**  Conspiracy to violate RICO against the RICO Defendants.  *Id.* at ¶¶ 400-404, PageID 318-319.

**Cause of Action 29**.  Ineffective assistance of counsel against Defendants Montgomery County Public Defender, Wehner, Dubel, Greger, and Fricker. *Id.* at ¶¶ 405-414, PageID 319-321.

**Cause of Action 30:**  Lack of jurisdiction of trial court against Defendants City of Dayton, Dayton Municipal Court, and Judge Henderson.  *Id.* at ¶¶ 415-417, PageID 321-322.

**Cause of Action 31:**  Legal malpractice against the Attorney Defendants (defined as including Defendants Montgomery County Public Defender, Wehner, Dubel, Greger, and Fricker at ¶ 44). *Id.* at ¶¶ 418-423, PageID 322-323.

**Cause of Action 32:**  Extortion against the City Defendants, the Dayton Probation Defendants, Roush, and Roush & Associates. *Id.* at ¶¶ 424426, PageID 323-324.

**Cause of Action 33:**  Blackmail against the City Defendants, the Dayton Probation Defendants, Roush, and Roush & Associates.  *Id.* at ¶¶ 427-429, PageID 324.

**Cause of Action 34**.  False swearing against Defendants WCMCCCD, Johnson, Gift, Quatman, Miller, and Hupp.  *Id.* at ¶¶ 430-433, PageID 324-325.

**Cause of Action 35:**  Lack of due process in the failure to record Alahverdian's statement

against Defendants WCMCCCD, Johnson, Gift, Quatman, Miller and Hupp.  *Id.* at ¶ 434-436, PageID 325.

**Cause of Action 36:**  Failure to read *Miranda* rights against Defendants WCMCCCD, Johnson, Gift, Quatman, Miller and Hupp.  *Id.* at ¶¶ 437-439, PageID 325-326.

**Cause of Action 37:**  Failure to provide full written statement of Mary Grebinski against Defendants WCMCCCD, Johnson, Gift, Quatman, Miller and Hupp.  *Id.* at ¶¶ 440-442, PageID 326.

**Cause of Action 38:**  Negligent failure to train police against Defendants WCMCCCD, Johnson, Gift, Quatman, Miller and Hupp. *Id.* at ¶¶ 443-445, PageID 326.

**Cause of Action 39:**  Negligent failure to train judges against the State of Ohio.  *Id.* at ¶¶ 446-448, PageID 327.

**Cause of Action 40**:  Failure to allow Plaintiff to testify in his own defense, cross-examine witnesses, and be tried by an impartial jury against the City of Dayton, Dayton Municipal Court, and Judge Henderson.  *Id.* at ¶¶ 449-451, PageID 327.

**Cause of Action 41:**  Failure to record an interview alleging a confession against Defendants WCMCCCD, Johnson, Gift, Quatman, Miller and Hupp.  *Id.* at ¶¶ 452-454, PageID 328.

**Cause of Action 42:**  Unconstitutionally hindering the right of a citizen to petition the government for a redress of grievances against Judge Henderson.  *Id.* at ¶¶ 455-457, PageID 328.

## Analysis

### The Eleventh Amendment

The first named Defendant is the State of Ohio.  The Eleventh Amendment to the United States Constitution provides:

> The judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State or by Citizens or Subjects of any Foreign State.

It was adopted to overrule the very unpopular decision in *Chisholm v. Georgia*, 2 Dall. 419 (1793).  It has been construed to bar suits against a State by its own citizens.  *Papasan v. Allain,* 478 U.S. 265, 276 (1986); *Hans v. Louisiana*, 134 U.S. 1 (1890);  *Edelman v. Jordan*, 415 U.S. 651 (1974);  *Florida Dep't. of State v. Treasure Salvors, Inc.*, 458 U.S. 670 (1982).  Congress has not abrogated state sovereign immunity in suits under 42 U.S.C. 1983. *Cowan v. University of Louisville School of Medicine*, 900 F.2d 936, 940-41 (6th Cir. 1990), *citing Quern v. Jordan,* 440 U.S. 332, 341 (1979).  Pursuant to the Eleventh Amendment, all claims against the State of Ohio must be dismissed without prejudice for lack of subject matter jurisdiction in this Court.

Contrary to Plaintiff's assertion (Complaint, Doc. No. 7, ¶ 14, PageID 202), the Dayton Municipal Court is not a department of the City of Dayton, but a municipal court created directly by state law, Ohio Revised Code § 1901.01.  Application of the Eleventh Amendment in a suit against a public agency turns on whether the agency can be characterized as an arm or alter ego of the State, or whether it should be treated instead as a political subdivision of the State.  *Hall v. Medical College of Ohio at Toledo,* 742 F.2d 299, 302 (6th Cir. 1984), *citing Mt. Healthy City*

*School Dist. Bd. of Educ. v. Doyle,* 429 U.S. 274, 280 (1977). As an arm of the State of Ohio, the Dayton Municipal Court cannot be sued in federal court by virtue of the Eleventh Amendment. The same is true of the Probation Department of the Dayton Municipal Court which is not a separate entity from that Court.  All claims against the Dayton Municipal Court and its Probation Department must be dismissed without prejudice for lack of subject matter jurisdiction in this Court.

### Heck v. Humphrey

Many of Alahverdian's claims turn on his assertion that he was unconstitutionally convicted of sexual imposition and public indecency in proceedings in the Dayton Municipal Court in 2008.

> [I]n order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a §1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. §2254.  A claim for damages bearing that relationship to a conviction or sentence that has *not* been so invalidated is not cognizable under §1983.

*Heck v. Humphrey,* 512 U.S. 477, 486-487(1994).  As of the date of this Report, Alahverdian's convictions remain final and unreversed.  They were first entered by the Dayton Municipal Court in 2008, then affirmed by the court of appeals in *State v. Rossi*, 2009 Ohio 1963, 2009 Ohio App. LEXIS 1641 (Ohio App. 2nd Dist. Apr. 17, 2009).  Nothing in the Complaint suggests that they have since been overturned.  Indeed, Alahverdian's website (www.nicholasalahverdian.com;

13

visited May 10, 2013) indicates that attorney Eric Allen filed a habeas corpus action on May 3, 2013, in the Ohio Supreme Court to overturn these two convictions. *Alahverdian v. Zeugner*, Ohio Supreme Court Case No. 13-0698.

Because the convictions remain outstanding, the doctrine of *Heck v. Humphrey* bars any action in this Court to recover damages based on the alleged invalidity of those convictions. On that basis, the Complaint should be dismissed without prejudice for failure to state a claim upon which relief can be granted in the absence of the overturning of the convictions.

**Judicial Immunity**

All of the acts alleged in the Complaint to have been done by Defendant Carl Henderson are alleged to have been done by him in his capacity as a judge of the Dayton Municipal Court. The common law absolute immunity of judges was first recognized in this country in *Bradley v. Fisher,* 80 U.S. 335 (1872). It was explicitly extended to actions under 42 U.S.C. § 1983 in *Pierson v. Ray,* 386 U.S. 547 (1967), and *Stump v. Sparkman*, 435 U.S. 349 (1978). The immunity is lost only when judges act in the clear absence of all jurisdiction. *Id.* at 362; *King v. Love*, 766 F.2d 962 (6th Cir. 1985); *Schorle v. City of Greenhills,* 524 F. Supp. 821, 828 (S.D. Ohio 1981). Only absence of subject matter jurisdiction vitiates immunity, not absence of personal jurisdiction. *Holloway v. Brush*, 220 F.3d 767 (6th Cir. 2000)(en banc). Limited jurisdiction judges are absolutely immune from damages for acts in excess but not in clear absence of jurisdiction. *Id.* While immunity does not encompass administrative acts of judges, *Forrester v. White*, 484 U.S. 219 (1988), it does extend even to a case where a judge is alleged to have ordered police to use excessive force to bring a public defender before the court since the

14

act allegedly done was within judicial capacity and in aid of jurisdiction. *Mireles v. Waco,* 502 U.S. 9 (1991). When a plaintiff alleges that a judge acted in a non-judicial capacity, the Sixth Circuit relies "on a functional analysis to determine which acts are protected, meaning that one must determine whether the actions are truly judicial acts or 'acts that simply happen to have been done by judges.'" *Mann v. Conlin*, 22 F.3d 100, 104 (6th Cir. 1994), *quoting Morrison v. Lipscomb*, 877 F.2d 463, 465 (6th Cir. 1989), *quoting Forrester*, 484 U.S. 219, 227 (1988). While subject matter jurisdiction may be narrowly construed for other purposes, when the issue is judicial immunity, it is to be broadly construed. *Duty v. City of Springdale, Arkansas,* 42 F.3d 460, 461 (8th Cir. 1994). Conversely, exceptions to judicial immunity are to be narrowly construed. *Adams v. McIlhany*, 764 F.2d 294, 298 (5th Cir. 1985). A judge does not act in the clear absence of all jurisdiction if he or she merely acts in excess of his or her authority. *Doe v. McFaul*, 599 F. Supp. 1421, 1431 (N.D. Ohio 1984).

All claims against Judge Henderson should be dismissed with prejudice as barred by the doctrine of absolute judicial immunity.

### Prosecutorial Immunity

All acts alleged in the Complaint to have been done by Defendants Logan, Cook, and Sexton are alleged to have been done by them in their capacity as prosecutors on behalf of the State of Ohio in the Dayton Municipal Court. Acts undertaken by a prosecutor in preparing for the initiation of judicial proceedings or for trial, and which occur in the course of his role as an advocate for the State, are entitled to the protections of absolute immunity. *Imbler v. Pachtman*, 424 U.S. 409 (1976); *Burns v. Reed*, 500 U.S. 478 (1991); *Buckley v. Fitzsimmons*, 509 U.S.

259 (1993); *Koubriti v. Convertino*, 593 F.3d 459 (6th Cir. 2010).  This absolute immunity does not extend to investigatory activity, advising police, or personnel matters.  *Burns.* It does apply to presenting allegedly false or defamatory testimony or making false or defamatory statements in judicial proceedings.  *Id.* Although failure to train subordinate prosecutors is an administrative matter, supervisory prosecutors are also absolutely immune on claims regarding what information to make available at trial [*Brady*].  *Van de Kamp v. Goldstein*, 555 U.S. 335 (2009).

All claims for actions taken by Defendants Logan, Cook, and Sexton in the prosecution of Alahverdian for the offenses in the Dayton Municipal Court must be dismissed with prejudice as barred by absolute judicial immunity.

## Failure to State a Claim Upon Which Relief Can Be Granted

The purpose of Fed. R. Civ. P. 12(b)(6) is to test whether, as a matter of law, the plaintiff is entitled to legal relief even if everything alleged in the complaint is true. *Mayer v. Mylod*, 988 F.2d 635, 638 (6th Cir. 1993), citing *Nishiyama v. Dickson County, Tennessee*, 814 F.2d 277, 279 (6th Cir. 1987).  Put another way, "[t]he purpose of a motion under Rule 12(b)(6) is to test the formal sufficiency of the statement of the claim for relief; it is not a procedure for resolving a contest about the facts or merits of the case."  Wright & Miller, FEDERAL PRACTICE AND PROCEDURE:  Civil 2d §1356 at 294 (1990).

The test for dismissal under Fed. R. Civ. P. 12(b)(6) has recently been re-stated by the Supreme Court:

> Factual allegations must be enough to raise a right to relief above the speculative level,  see 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216, pp. 235-236 (3d ed.2004)("[T]he pleading must contain something more ... than ... a statement of facts that merely

creates a suspicion [of] a legally cognizable right of action"), on the assumption that all the allegations in the complaint are true (even if doubtful in fact), *see, e.g., Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 508, n. 1, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002); *Neitzke v. Williams,* 490 U.S. 319, 327, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989)(" Rule 12(b)(6) does not countenance ... dismissals based on a judge's disbelief of a complaint's factual allegations"); *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974) (a well-pleaded complaint may proceed even if it appears "that a recovery is very remote and unlikely").

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

[W]hen the allegations in a complaint, however true, could not raise a claim of entitlement to relief, "'this basic deficiency should ... be exposed at the point of minimum expenditure of time and money by the parties and the court.'" 5 Wright & Miller § 1216, at 233-234 (quoting *Daves v. Hawaiian Dredging Co.*, 114 F. Supp. 643, 645 (D. Hawaii 1953) ); see also *Dura [Pharmaceuticals, Inc. v. Broudo*, 544 U.S. 336, 125 S.Ct. 1627, 161 L.Ed.2d 577 (2005)], at 346, 125 S.Ct. 1627, 161 L. Ed. 2d 577; *Asahi Glass Co. v. Pentech Pharmaceuticals, Inc* ., 289 F. Supp. 2d 986, 995 (N.D.Ill.2003) (Posner, J., sitting by designation) ("[S]ome threshold of plausibility must be crossed at the outset before a patent antitrust case should be permitted to go into its inevitably costly and protracted discovery phase").

*Twombly*, 550 U.S. at 558; *see also Association of Cleveland Fire Fighters v. City of Cleveland, Ohio,* 502 F.3d 545 (6th Cir. 2007). To survive a motion to dismiss under Rule 12(b)(6), the allegations in a complaint "must do more than create speculation or suspicion of a legally cognizable cause of action; they must show *entitlement* to relief." *Lambert v. Hartman*, 517 F.3d 433, 439 (6th Cir. 2008), quoting *League of United Latin Am. Citizens v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007)(emphasis in original).

*Twombly* overruled *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957), specifically disapproving of the proposition that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."

In *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), the Supreme Court made it clear that *Twombly* applies in all areas of federal law and not just in the antitrust context in which it was announced. Following *Iqbal*, district courts faced with motions to dismiss must first accept as true all of the factual allegations contained in a complaint. This requirement "is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Twombly*, 550 U.S. at 555. Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. *Twombly*, 550 U.S. at 556. Determining whether a complaint states a plausible claim for relief will be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. *Iqbal,* 556 U.S. 662, 678 (2009); *Tam Travel, Inc. v. Delta Airlines, Inc. (In re Travel Agent Comm'n Antitrust Litig.)*, 583 F.3d 896, 903 (6th Cir. 2009). Under *Iqbal*, a civil complaint will only survive a motion to dismiss if it "contain[s] sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face. ... Exactly how implausible is "implausible" remains to be seen, as such a malleable standard will have to be worked out in practice." *Courie v. Alcoa Wheel & Forged Prods.*, 577 F.3d 625, 629-630 (6th Cir. 2009).

> Two recent decisions have changed the long-standing rule of *Conley v. Gibson*, in which the Supreme Court stated, "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim . . . ." 355 U.S. 41, 45-46, 78 S. Ct. 99, 2 L. Ed. 2d 80 (1957). In *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007), the Supreme Court said that a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." In *Twombly*, the Court changed the standard applicable to Rule 12(b)(6) motions to dismiss Sherman Act claims by directing that Rule 12(b)(6) must be read in conjunction with Rule 8(a), which requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Acknowledging that material allegations must be accepted as true and construed in the light most favorable to the nonmoving party, the Court nevertheless held that complaints in which plaintiffs have failed to plead enough factual detail to state a claim that

is plausible on its face may be dismissed for failure to state a claim. 550 U.S. at 569-70. The Court explained that courts may no longer accept conclusory legal allegations that do not include specific facts necessary to establish the cause of action.

This new "plausibility" pleading standard causes a considerable problem for plaintiff here because defendants Scag and Louisville Tractor are apparently the only entities with the information about the price at which Scag sells its equipment to Louisville Tractor. This pricing information is necessary in order for New Albany to allege that it pays a discriminatory price for the same Scag equipment, as required by the language of the Act. This type of exclusive distribution structure makes it particularly difficult to determine whether discriminatory pricing exists.

*New Albany Tractor, Inc. v. Louisville Tractor, Inc.*, 650 F.3d 1046, 1050 (6th Cir. 2011).

[O]n the plausibility issue, the factual allegations in the complaint need to be sufficient "to give notice to the defendant as to what claims are alleged, and the plaintiff must plead 'sufficient factual matter' to render the legal claim plausible, i.e., more than merely possible." *Fritz v. Charter Twp, of Comstock*, 592 F.3d 718, 722 (6th Cir. 2010) (quoting *Iqbal*, 129 S. Ct. at 1949-50). Further, "a legal conclusion [may not be] couched as a factual allegation" and mere "recitations of the elements of a cause of action" are insufficient to withstand a motion to dismiss. *Id.* (quoting *Hensley Mfg. v. ProPride, Inc.*, 579 F.3d 603, 609 (6th Cir. 2009)).

*White v. Chase Bank USA, NA*, 2010 U.S. Dist. LEXIS 102908, *10 (S.D. Ohio Sept. 28, 2010)(Rice, J.).

The Sixth Circuit has recently held that to survive a Rule 12(b)(6) motion to dismiss, a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face," *Savoie v. Martin*, 673 F.3d 488 (6th Cir. 2012), quoting *Traverse Bay Area Intermediate Sch. Dist. v. Mich. Dept. of Educ.,* 615 F.3d 622, 627 (6th Cir. 2010), *quoting Bell Atlantic Corp. v. Twombly*, 550 U.S.544, 570 (2007), and that "[a]ll well-pled facts in the complaint must be accepted as true." *Savoie, supra,* citing, *Courie v. Alcoa Wheel & Forged Prods.,* 577 F.3d 625, 629 (6th Cir. 2009), citing *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). As noted at the outset of this Report,

the Court is to apply the Rule 12(b)(6) standard *sua sponte* when conducting a review under 28 U.S.C. § 1915(e)(2).

## 42 U.S.C. §§ 1985 & 1986

To be actionable under 42 U.S.C. §1985, a conspiracy must be based on some racial "or perhaps otherwise class-based, invidiously discriminatory animus." *Bray v. Alexandria Women's Health Clinic*, 506 U.S. 263 (1993); *Griffin v. Breckenridge,* 403 U.S. 88 (1971);  *Macko v. Bryon*, 641 F.2d 447 (6th Cir. 1981).   A class protected by §1985(3) must possess the characteristics of a discrete and insular minority, such as race, national origin, or gender. *Haverstick Enterprises v. Financial Federal Credit*, 32 F.3d 989 (6th Cir. 1994), *citing Hicks v. Resolution Trust Corp.*, 970 F.2d 378, 382 (7th Cir. 1992).

Alahverdian's Causes of Action 8, 9, and 10 do not allege any class-based animus and therefore must be dismissed for failure to state a claim upon which relief can be granted. Because 42 U.S.C. § 1986 refers only to the wrongs mentioned in § 1985, Plaintiff's Cause of Action 11 must also be dismissed on the same basis.

## 42 U.S.C. § 1983

42 U.S.C. §1983, R.S. §1979, was adopted as part of the Act of April 20, 1871, and reads, as amended:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any

> citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable.  For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia.

The statute creates a cause of action sounding essentially in tort on behalf of any person deprived of a constitutional right by someone acting under color of state law. *City of Monterey v. Del Monte Dunes at Monterey, Ltd.,* 526 U.S. 687, 709 (1999); *Memphis Community School District v. Stachura,* 477 U.S. 299 (1986); *Carey v. Piphus,* 435 U.S. 247 (1978).  The purpose of §1983 is to deter state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights and to provide relief to victims if such deterrence fails.  *Wyatt v. Cole*, 504 U.S. 158 (1992).  In order to be granted relief, a plaintiff must establish that the defendant deprived him of a right secured by the U.S.  Constitution and the laws of the United States and that the deprivation occurred under color of state law.  *See West v. Atkins,* 487 U.S. 42, 48 (1988); *Parratt v. Taylor*, 451 U.S. 527, 535 (1981); *Flagg Brothers Inc. v. Brooks*, 436 U.S. 149, 155 (1978).

Before a private person can be held liable under 42 U.S.C. § 1983, the court must determine that that person was a state actor – that his or her behavior over which suit is brought was effectively the action of the state.  "The principal inquiry in determining whether a private party's actions constitute 'state action' under the Fourteenth Amendment is whether the party's actions may be 'fairly attributable to the state.'  See *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982).  The Supreme Court has set forth three tests to determine whether the challenged conduct may be fairly attributable to the state in order to hold the defendants liable under section

21

1983.  These tests are:  (1) the public function test, *West v. Atkins,* 487 U.S. 42, 49-50 (1988); *Flagg Bros. v. Brooks,* 436 U.S. 149, 157 (1978);  (2) the state compulsion test, *Adickes v. S.H. Kress & Co*., 398 U.S. 144, 170 (1970);  and (3) the symbiotic relationship or nexus test, *Burton v. Wilmington Parking Auth.,* 365 U.S. 715, 721-26 (1961).   These tests are reiterated in *Brentwood Academy v. Tennessee Secondary Schools Athletic Association,* 180 F.3d 758, 763 (6th Cir. 1999); *Ellison v. Garbarino,* 48 F.3d 192, 195 (6th Cir. 1995).  In reversing the Sixth Circuit in *Brentwood Academy v. Tennessee Secondary Schools Athletic Association,* 531 U.S. 288 (2001), the Supreme Court adopted an additional pervasive entanglement test, *citing Evans v. Newton,* 382 U.S. 296 (1966).

Defense counsel in a criminal case do not act as state actors.  *Polk County v. Dodson* 454 U.S. 312 (1981).  In particular, while a criminal defendant has the right to effective assistance of counsel under the Sixth Amendment, *Strickland v. Washington,* 466 U.S. 668 (1984), failure to provide that assistance by a defense attorney is not actionable under 42 U.S.C. § 1983 because the defense counsel is not a state actor under those circumstances.  On that basis, claims against the Montgomery County Public Defender, D.K. Rudy Wehner, and his assistant Julie Dubel, as well as claims against Lawrence Greger and Keith Fricker, to the extent the alleged violations of Alahverdian's constitutional rights purportedly redressable under 42 U.S.C. § 1983 must be dismissed for failure to state a claim upon which relief can be granted.  This is true in particular of Cause  of Action 29.

## Negligent Infliction of Emotional Distress

Plaintiff purports to bring some of his claims under Ohio law, although his Complaint is

22

unclear which claims are federal and which are state.  This Court does have jurisdiction under 28 U.S.C. § 1367 over claims arising under Ohio law which are part of the same case or controversy as Plaintiff's federal claims.

When evaluating whether Alahverdian has successfully pled a claim for relief under Ohio law, this Court applies Ohio substantive  law in the analysis.  28 U.S.C. §1652; *Gasperini v. Center for Humanities, Inc.*, 528 U.S. 415, 427, n. 7 (1996); *Erie Railroad Co. v. Tompkins*, 304 U.S. 64 (1938), overruling *Swift v. Tyson*, 41 U.S. 1 (1841)(Story, J., holding that "the laws of the several states" in the Judiciary Act of 1789 means only the statutory law of the States).  In applying state law, the Sixth Circuit follows the law of the State as announced by that State's supreme court. *Savedoff v. Access Group, Inc.*, 524 F.3d 754, 762 (6th Cir. 2008);  *Ray Industries, Inc. v. Liberty Mut. Ins. Co.*, 974 F.2d 754, 758 (6th Cir. 1992);  *Miles v. Kohli & Kaliher Assocs.,* 917 F.2d 235, 241 (6th Cir. 1990).

Recovery for the tort of negligent infliction of emotional distress under Ohio law is limited to such instances as where one was a bystander to an accident or was in fear of physical consequences to his own person and where a plaintiff's claim does not arise out of such circumstances, the plaintiff fails to state a claim for negligent infliction of emotional distress. *High v. Howard,* 64 Ohio St.3d 82 (1992), *overruled on other grounds, Gallimore v. Children's Hospital Medical Center,* 67 Ohio St.3d 244 (1993);  *Strawser v. Wright,* 80 Ohio App. 3d 751 (Preble Cty. 1992). Ohio does not recognize a claim for negligent infliction of emotional distress based on plaintiff's fear of a non-existent physical peril.  *Heiner v. Moretuzzo*, 73 Ohio St. 3d 80 (1995).

> To state a claim for negligent infliction of emotional distress under Ohio law, the plaintiff must allege that he was aware of real physical danger to himself or another. *See King v. Bogner*, 88 Ohio App. 3d 564, 624 N.E.2d 364, 367 (Ohio Ct. App. 1993); *see also*

> *Heiner v. Moretuzzo,* 73 Ohio St. 3d 80, 1995 Ohio 65, 652 N.E.2d
> 664, 669 (Ohio 1995) (Ohio courts have limited "recovery for
> negligent infliction of emotional distress to instances where the
> plaintiff has either witnessed or experienced a dangerous accident
> or appreciated the actual physical peril").

*Doe v. SexSearch.com*, 551 F.3d 412, 417 (6th Cir. 2008).

Based on this standard, Causes of Action 18 and 19 do not state a claim under Ohio law upon which relief can be granted and they must be dismissed without prejudice on that basis.

### Asserted But Unrecognized Rights

To the extent individual defendants are sued as state actors who are public officials, they have the privilege of qualified immunity for acts done in the exercise of discretion in their offices.  Government officials performing discretionary functions are afforded a qualified immunity under 42 U.S.C. § 1983 as long as their conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  *Harlow v. Fitzgerald*, 457 U.S. 800 (1982); *Christophel v. Kukulinsky*, 61 F.3d 479, 484 (6th Cir. 1995); *Adams v. Metiva*, 31 F.3d 375, 386 (6th Cir. 1994); *Flatford v. City of Monroe*, 17 F.3d 162 (6th Cir. 1994).  The question is not the subjective good or bad faith of the public official, but the "objective legal reasonableness" of his or her action in light of clearly established law at the time the official acted.  *Anderson v. Creighton*, 483 U.S. 635 (1987).

Qualified immunity analysis involves three inquiries: (i) "whether, based upon the applicable law, the facts viewed in the light most favorable to the plaintiffs show that a constitutional violation has occurred;" (ii) "whether the violation involved a clearly established constitutional right of which a reasonable person would have known;" and (iii) "whether the

plaintiff has offered sufficient evidence to indicate that what the official allegedly did was objectively unreasonable in light of the clearly established constitutional rights." *Radvansky v. City of Olmsted Falls*, 395 F.3d 291, 302 (6th Cir. 2005), *quoting  Feathers v. Aey*, 319 F.3d 843, 848 (6th Cir. 2003). Qualified immunity must be granted if the plaintiff cannot establish each of these elements. *Williams ex rel. Allen v. Cambridge Bd. of Educ.*, 370 F.3d 630, 636 (6th Cir. 2004).

In order for the violated right to be clearly established, the contours of the right must be sufficiently clear that a reasonable official would understand that what he or she is doing violates that right;  in light of pre-existing law, the unlawfulness of the official's action must be apparent. *Anderson*, 483 U.S. at 640.  The right must be defined at the appropriate level of specificity to determine whether it was clearly established at the time the defendants acted.  *Wilson v. Layne*, 526 U.S. 603, 615 (1999), *citing Anderson.*  The test is whether the law was clear in relation to the specific facts confronting the public official when he acted;  the constitutional right must not be characterized too broadly without considering the specific facts of the case.  *Guercio v. Brody*, 911 F.2d 1179 (6th Cir. 1990).  The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.  *Russo v. City of Cincinnati,* 953 F.2d 1036, 1042 (6th Cir. 1992).  Although the very action in question need not have previously been held unlawful, its unlawfulness must be apparent in light of pre-existing law.  *Id.* An action's unlawfulness can be apparent from direct holdings, specific examples described as prohibited, or from the general reasoning that a court employs.  *Burchett v. Kiefer*, 310 F.3d 937 (6th Cir. 2002), *citing Hope v. Pelzer,* 536 U.S. 730 (2002).

In deciding qualified immunity questions, district courts were for some years required to apply a two-part sequential analysis, first determining whether the alleged facts, taken in the light

most favorable to the party asserting the injury, show that the officer's conduct violated a constitutional right, and then deciding if the right was clearly established at the time the officer acted. *Brosseau v. Haugen*, 543 U.S. 194 (2004), *Estate of Carter v. City of Detroit,* 408 F.3d 305, 310-11 (6th Cir. 2005), and *Klein v . Long,* 275 F.3d 544 (6th Cir. 2001), *both citing Saucier v. Katz*, 533 U.S. 194, 201 (2001). However, the two-step process is no longer mandated in light of experience with its use; trial judges are now permitted to use their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first. *Pearson v. Callahan*, 555 U.S. 223 (2009). Therefore a district court is free to consider these two qualified immunity questions in whatever order is appropriate. *Moldowan v. City of Warren*, 570 F.3d 698, 720 (6th Cir. 2009).

Alahverdian's Complaint alleges a number of rights which were not clearly established as of the time he alleges they were violated.

Alahverdian is adamant about his right to trial by jury, but neither of the offenses of which he was convicted carries a possible jail sentence in excess of six months confinement. Under the Sixth Amendment, the distinction between petty and serious offenses is drawn at six months' confinement, *Duncan v. Louisiana*, 391 U.S. 145 (1968). See Annotation at 103 L. Ed. 2d 1000. Thus the Supreme Court has held there is no jury trial right for a petty offense of DUI. *Blanton v. City of North Las Vegas,* 489 U.S. 538 (1989); *United States v. Nachtigal,* 507 U.S. 1(1993). Aggregation of multiple petty offenses with an aggregate maximum sentence in excess of six months does not give rise to a jury trial right. *Lewis v. United States*, 518 U.S. 322 (1996); *United States v. Brown*, 71 F.3d 845 (11th Cir. 1996); *United States v. Lewis,* 65 F.3d 252 (2nd Cir. 1995). Alahverdian believes these two offenses should be classified as serious offenses with a constitutional entitlement to jury trial, but no such right was clearly established at the time of

26

his trial in 2008. All claims dependent on an asserted constitutional right to trial by jury for these two offenses in 2008 must be dismissed for failure to state a claim upon which relief can be granted.

In Cause of Action 35, Alahverdian asserts a deprivation of due process by failure to record his statements to Sinclair Police. A similar claim is made in Cause of Action 41. No such constitutional right was recognized as of January-February, 2008. These Causes of Action must be dismissed for failure to state a claim upon which relief can be granted.

In Cause of Action 30, Alahverdian asserts that the City of Dayton, the Dayton Municipal Court, and Judge Henderson "did not have proper jurisdiction over Plaintiff at any time." (Complaint, Doc. No. 7, ¶ 416, PageID 321.) The Dayton Municipal Court has jurisdiction to hear misdemeanor cases brought by the State of Ohio for acts committed within the territorial boundaries of the City of Dayton. Ohio Revised Code § 1901.02. The acts alleged against Alahverdian occurred at Sinclair Community College within the City of Dayton. No failure to provide "all the constitutional rights guaranteed by the U.S. and Ohio Constitutions" would deprive that court of jurisdiction. Cause of Action 30 must be dismissed for failure to state a claim upon which relief can be granted.

**Conclusion**

Fed. R. Civ. P. 8 requires "a short and plain statement of the claim showing that the pleader is entitled to relief." The Complaint in this case is 139 pages and 458 paragraphs long. It is exceptionally prolix, particularly in its needless and confusing reincorporation at the beginning of each Cause of Action of all the prior allegations. It may be that amongst all of

these words there are some claims for relief upon which it would be proper for this Court to assert jurisdiction by issuing process, but the current Complaint does not meet Rule 8 standards and, as set forth above, contains a number of claims which cannot go forward.

It is therefore respectfully recommended that the Complaint be dismissed without prejudice to the filing of an amended complaint which meets the standards of Rule 8 and which omits claims over which this Court has no jurisdiction or which do not state a claim upon which relief can be granted.

May 10, 2013.

s/ *Michael R. Merz*
United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(d), this period is extended to seventeen days because this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(C), (D), (E), or (F). Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within fourteen days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140 (1985).